Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:    (310) 712-6600

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:    (650) 461-5600

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone: (310) 979-9190

*Attorneys for Plaintiff Pepperdine University*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEPPERDINE UNIVERSITY,<br><br>                  Plaintiff,<br><br>        v.<br><br>NETFLIX, INC. and WARNER BROS. ENTERTAINMENT INC.,<br><br>                  Defendants. | Case No. 25-1429<br><br>**COMPLAINT FOR:**<br>**[1] TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br>**[2] CONTRIBUTORY TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br>**[3] FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125]**<br>**[4] TRADEMARK DILUTION [15 U.S.C. § 1125]**<br>**[5] FALSE ADVERTISING [15 U.S.C. § 1125]**<br>**[6] VIOLATION OF CAL. BUS. & PROF. CODE § 17247**<br>**[7] VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br>**[8] VIOLATION OF CAL. BUS. & PROF. CODE § 17500**<br>**[9] COMMON LAW UNFAIR COMPETITION**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Pepperdine University ("Pepperdine") brings this action against Netflix, Inc. ("Netflix") and Warner Bros. Entertainment Inc. ("Warner Bros.") for injunctive relief and damages and alleges, upon knowledge as to itself and its conduct and upon information and belief as to other matters, as follows:

**INTRODUCTION**

1.      Defendants Netflix, Warner Bros., and their associates have taken valuable intellectual property from Pepperdine, including utilizing Pepperdine's registered trademarks without permission, for unauthorized use in Defendants' new series, *Running Point*, which is slated for release on February 27, 2025.  The series is a raunchy comedy that follows an ambitious protagonist appointed as president of a Los Angeles basketball team—called the "Waves"—whose logo and branding and colors are strikingly similar to Pepperdine's Los Angeles basketball team—also called the "Waves"—a name utilized by and associated with Pepperdine for more than 85 years and protected in this precise field of use by registered trademarks.[1]

2.      While Defendants could have chosen any number of names for their purportedly fictional team, and used any number of color combinations for their uniforms, they chose instead to usurp Pepperdine's trademarked name in its registered field of use for a team in Pepperdine's home town, they chose to appropriate Pepperdine's color palette, and they even chose to promote a specific player number—the number 37, reflecting the year of Pepperdine's founding—that as Defendants well know is the number worn by Pepperdine's mascot, is the number on "Waves" merchandise sold by Pepperdine, and is promoted broadly.  In short, by conduct that is necessarily willful, irresponsible, or both, in connection with their marketing, advertising, promotion, and offering for sale their series *Running Point,* Defendants have infringed and intend to continue to infringe Pepperdine's trademarks protecting the Pepperdine WAVES marks and Pepperdine's other valuable intellectual property rights, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and California law.  As shown by the many images set out below, Defendants have engaged in blatant copying and their infringement is undeniable.

---

[1] *See* Jean Bently & Brookie Mcilvaine, NETFLIX: TUDUM (Jan. 30, 2025) https://www.netflix.com/tudum/articles/mindy-kaling-kate-hudson-series-news.

COMPLAINT

3. Defendants' infringement here is particularly pernicious given the juxtaposition between Pepperdine's religious and moral values and those depicted in Defendants' series. Founded in 1937, Pepperdine is a prestigious, non-profit Christian university with top-ranked undergraduate and graduate programs. And its athletics programs are no exception. Since its founding, Pepperdine's athletic teams—the "Waves"—have excelled in various National Collegiate Athletic Association ("NCAA") sports. The Waves have won the Division I-AAA Athletic Directors Association All-Sports Trophy five times and have ten NCAA Division I team championships in five different sports. Its men's basketball team began competing in the 1938-1939 season, and its basketball program has since become very successful. The men's basketball team currently competes at the Division I level of the NCAA, and it has at least 33 former players that have been drafted by the NBA and one former player inducted into the Naismith Memorial Basketball Hall of Fame.

4. Pepperdine's school colors—Pepperdine Blue and Pepperdine Orange—and the name for its athletics team—the Waves—were adopted in 1937, the year of its founding. The name of its athletics teams, the "Waves," was chosen to differentiate from other schools' penchant for animal names.

5. For more than eight decades, Pepperdine has been a Los Angeles institution of higher learning "committed to the highest standards of academic excellence and Christian values, where students are strengthened for lives of purpose, service, and leadership." Among other things, students, faculty, donors, and sponsors choose Pepperdine because of its mission, its high standard of academic and athletic excellence, and its values. Pepperdine's 830-acre campus is located in Malibu, in Los Angeles County, and is just 29 miles from Downtown Los Angeles.

6. Pepperdine owns several registered trademarks protecting the Pepperdine WAVES name, brand, and reputation. Its marks are famous—they are widely recognized by the general public and are instantly associated with the University and its programs and services through decades of use, extensive marketing and financial investment, national exposure, and unsolicited press recognition. Pepperdine promotes the University and its programs using the marks, sells and authorizes for sale merchandise bearing the marks, and competes in various sports using the marks.

7.    When Defendants released and promoted the trailer for *Running Point* on January 30, 2025, Pepperdine (and others) were immediately astounded at the striking correlations in branding between the fictional Los Angeles Waves and the real Los Angeles-based Pepperdine Waves.  The uses are too many and too close to be coincidental.  Defendants' "Waves" share the exact same name, use strikingly similar branding, have the exact same color combinations (blue, orange and white), promote the player number of Pepperdine's well-known mascot and year of the university's founding (37), and are in the same city, along with several other similarities.  Pepperdine does not want any affiliation or association with the "Waves" featured in *Running Point*—especially considering the series (and the apparent mismanagement of the fictional team) do not align with Pepperdine's culture or values.

8.    On discovery of Defendants' unauthorized use of Pepperdine's registered trademarks, Pepperdine promptly reached out to Defendants through several avenues—including phone calls and email correspondence from Pepperdine's General Counsel followed by a cease-and-desist letter and further follow-up.  But to no avail.  Pepperdine is thus left with no choice but to protect its name, trademarks, and reputation in court.

## PARTIES, JURISDICTION AND VENUE

9.    This is a civil action against Defendants for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1124(c), and various violations of California statutory and common law.

10.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1311 and 1338 as it involves an action arising under the federal Lanham Act.

11.    This Court has personal jurisdiction over Defendants, both of which are doing business in and/or headquartered in this District.

12.    Plaintiff Pepperdine is a prestigious, not-for-profit, Christian university with top-ranked undergraduate and graduate programs with more than 9,000 students in its five colleges

1    and schools.  It is based in Malibu, California, which is in Los Angeles County.  Pepperdine is the

2    sole registered owner of the asserted trademarks.

3            13.      Defendant Netflix is a Delaware corporation.  Netflix is one of the world's leading

4    entertainment services providing streaming services for television series, films, and games across

5    a wide variety of genres and languages.  Netflix, in connection with its streaming services, plans

6    to host and stream the upcoming comedy series *Running Point* on its platform beginning February

7    27, 2025.  Netflix released the trailer for *Running Point* on or about January 30, 2025, and has

8    promoted the series on its website, social media platforms, in the press, and published the trailer

9    on YouTube.  Netflix has a major office facility in Hollywood, California, and conducts substantial

10   business operations in this District, including promotion and publication of the series, *Running*

11   *Point*.

12           14.      Defendant Warner Bros. is a Delaware corporation with its principal place of

13   business at 4000 Warner Boulevard, Burbank, California, 91522.  Warner Bros. is a fully

14   integrated entertainment company and has operations including creation, production, distribution,

15   licensing and marketing of all forms of entertainment.  Warner Bros. has promoted *Running Point*

16   on its social media platforms and website.  On information and belief, Warner Bros. is one of the

17   production companies involved with *Running Point*.

18           15.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(d) because

19   Pepperdine's claims arise in this District, both Netflix and Warner Bros. may be found in this

20   District, and both are subject to personal jurisdiction here.

21                                    **ASSERTED MARKS**

22           16.      Pepperdine is the registered owner of U.S. Reg. Nos. 2,668,597, which was issued

23   on December 31, 2002; 2,967,811, which was issued on July 12, 2005; and 2,903,783, which was

24   issued on November 16, 2004.  A true and correct copy of the U.S. Registration Certificates and

25   their declarations of incontestability, and notices of acknowledgement are attached as **Exhibits A,**

26   **B**, and **C**, respectively.  All of the Asserted Trademarks are incontestable within the meaning of

27   Section 15 of the Lanham Act, 15 U.S.C. § 1065.

28

17. Pepperdine also owns common law trademark rights (together with the registered trademarks, the "Asserted Trademarks") in at least (1) the use of the "Waves" name, as well as (2) the use of its distinctive school colors, especially in conjunction with athletics and athletic merchandise, and/or in conjunction with other symbols that are associated with and identify the university—including the "Waves" team name and the number "37."[2]

## FACTUAL BACKGROUND

### A.    THE PEPPERDINE WAVES AND THE NUMBER 37

18. Since its founding in 1937, Pepperdine's athletic teams have been called the "Waves." Its athletics programs quickly gained national recognition, and the Pepperdine Waves have won ten NCAA team championships in five different sports. The Pepperdine Waves men's basketball team won the College Basketball Invitational Championship in 2021. The Waves have also sent many of their former players to compete in a variety of sports at the professional level, with some even qualifying for inclusion in Halls of Fame. For example, 33 former Pepperdine Waves basketball players have been drafted to the NBA, with six of those players having played for the Los Angeles Lakers.

19. In addition to its distinctive team name, Pepperdine also has distinctive school colors, which it adopted in 1937, that are inextricably linked to Pepperdine's spirit, tradition, and brand. Its primary school colors are Pepperdine Blue and Pepperdine Orange, with white as a secondary color.[3] These distinctive colors represent a brand identity that dates back to the university's founding. Pepperdine uses these colors in, among other things, its marketing, advertising, merchandise, and official communications. Over the years, through consistent and prominent use, including at sporting events, graduation ceremonies, and various community gatherings, these colors have come to signify and identify Pepperdine's brand.

---

[2] *See, e.g., Official Colors*, PEPPERDINE UNIVERSITY https://community.pepperdine.edu/imc/resources/style-guide/official-colors/ (last accessed Feb. 19, 2025).
[3] *Official Colors*, PEPPERDINE UNIVERSITY https://community.pepperdine.edu/imc/resources/style-guide/official-colors/ (last accessed Feb. 19, 2025).

20.    Pepperdine also incorporates its long history into its branding. To commemorate the year of its founding, Pepperdine gives the number 37 special prominence in its athletic material—including on its mascot and for giveaway promotions or prizes, among other things.




21.    The 37 jersey is frequently worn by Pepperdine's mascot (Willy the Wave), alumni, dance team, and sporting event attendees. It is used to represent and immediately identify Pepperdine. It is widely publicized, and it has become a staple feature of Pepperdine's branding—especially in combination with Pepperdine's school colors.




Complaint



22.    In fact, many of these distinctive features of Pepperdine's brand were displayed prominently in close proximity to Jeanie Buss—one of the producers of *Running Point* and the person on whose life it is purportedly based—and her team.  For years, Pepperdine maintained a conference room in Staples Center (now Crypto.com Arena)—the home of the Lakers and accessible to the Lakers' owner, Jeanie Buss—where an image of a Pepperdine basketball player sporting the WAVES mark, Pepperdine's distinctive school colors, and images of Malibu were prominently displayed.





23.     Incorporating these features, Pepperdine has expended significant resources on its branding—achieving nationwide (or at least region-wide) recognition.  Of note, Pepperdine has spent significant expenditures on marketing, advertising, and branding.  It has substantial sales of merchandise bearing the trademarks, including "Waves," the color palette and often the number "37," which it sells online directly and through third parties, and directly through at least two brick-and-mortar stores in different areas in Los Angeles.  A sample of items bearing Pepperdine's protected marks sold through one of those stores are included in **Exhibit D** attached hereto.

24.     From its longstanding and consistent use of these distinctive features and its national (or at least regional) market penetration, Pepperdine owns common law rights in at least the use of the "Waves" name, and in the use of its school colors, especially in conjunction with athletics and athletic merchandise, and/or in conjunction with other symbols that are associated with and identify the university—including the "Waves" team name and the number "37".

25.     To further protect its name, brand, and reputation, Pepperdine also owns several registered trademarks.  And Plaintiff is careful to ensure that its trademarks are used in ways that align with its mission and values.  As a result, Pepperdine's trademarks and brand have become associated with the university's core mission and values, and the WAVES mark has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Pepperdine.

26.     Pepperdine owns an incontestable trademark on the Principal Register in the United States Patent and Trademark Office for the service mark "WAVES".  This federally registered mark, Reg. No. 2,668,597, is in continued use by Pepperdine.  Among other things, this registration is for "education and **entertainment services**, namely, . . . **arranging and conducting athletic events** and tournaments, exhibitions, conferences, live performances and festivals, in class 41."

1
2
3

# WAVES

4
5
6
7
8
9
10
11
12
13
14

27.    Pepperdine has used the WAVES mark in commerce throughout the United States continuously since 1937 in connection with, among other things, its recruitment, marketing, and athletics programs, including its basketball program.  As seen in the images below, this includes use of the mark on athletic gear during competitions and tournaments, where Pepperdine's athletes have performed in front of tens of thousands of people (if not more) per year, as well as in Pepperdine's marketing content on social media, where Pepperdine has thousands of followers. Pepperdine has most often used this mark with a few designs displaying its colors (blue, orange, and white), including with orange lettering on a white background; orange lettering on a blue background; blue lettering on an orange background; and white lettering on a blue background. Pepperdine uses this mark on buildings, sports facilities, and public displays.

15
16
17
18
19
20
21

 

22
23
24
25
26
27

 

28



28.     Pepperdine's WAVES mark is distinctive both to the consuming public and to likely viewers of sports-related movies and shows.

29.     Pepperdine also owns an incontestable trademark on the Principal Register in the United States Patent and Trademark Office for the service and trademark for a wave illustration including the WAVES mark.  This federally registered mark, Reg. No. 2,903,783, is in continued use by Pepperdine.  Among other things, this registration is for "clothing . . . in class 25" and "education and **entertainment services**, namely, . . . **arranging and conducting athletic events** and tournaments, exhibitions, conferences, live performances and festivals, in class 41."



30.     Pepperdine has used this trademark continuously in commerce throughout the United States in connection with its recruitment, marketing, and athletics program.  Pepperdine has most often used this mark in its marketing content on social media and in its merchandising material containing the mark.



31.     Pepperdine also owns an incontestable trademark on the Principal Register in the United States Patent and Trademark Office for the service and trademark for the "PEPPERDINE WAVES" mark.  This federally registered mark, Reg. No. 2,967,811, is in continued use by Pepperdine.  This registration is for "clothing . . . in class 25" and "education and **entertainment services**, namely . . . **arranging and conducting athletic events** and tournaments, exhibitions, conferences, live performances and festivals, in class 41."



32.     Pepperdine has used this trademark in commerce throughout the United States as well continuously in connection with, among other things, its recruitment, marketing, and athletics program, scoreboards at games, as well as with its offerings of merchandise.

-12-



33.     The Asserted Trademarks are nationally identified and recognized through decades of use, extensive marketing, national exposure, and unsolicited press recognition.

34.     The Asserted Trademarks are widely recognized by the general public. As a result of its distinctiveness and widespread use and promotion throughout the United States, the Asserted Trademarks are famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and became famous prior to Defendants' acts alleged herein.

**B.    DEFENDANTS' *RUNNING POINT* SERIES USES PEPPERDINE'S MARKS**

35.     Defendants have advertised *Running Point* as a fictionalized comedy series that "is inspired by the personal and professional dynamic between the family owners and front office

team that together run one of the most iconic franchises in all of sports: the Los Angeles Lakers."[4] Defendants have promoted the film, pointing to its connection to famed owner of the Los Angeles Lakers, Jeanie Buss, stating "Buss's involvement was crucial, as the series is a fictionalized take on the Lakers leader's groundbreaking story."[5]

36.    On information and belief, the *Running Point* series involves an ambitious protagonist—Isla Gordon—who is unexpectedly appointed president of a famous professional basketball franchise, the Los Angeles Waves.  And, according to the trailer, the series follows the "fucked up family that runs it."[6]  As depicted by the trailer, this story includes themes of alcohol and substance use, sexual innuendo and imagery, foul language, as well as other offensive themes that are anathema to the values that Pepperdine stands for and promotes.

37.    But even though the series was based on the Lakers, and Ms. Buss—the owner of the Lakers—was also involved in producing the series, the team depicted in the series does not use any Lakers colors or branding.  Rather than use Lakers trademarks, Lakers colors, or other intellectual property that Ms. Buss controls and has the ability to license or use, Defendants inexplicably chose to appropriate the intellectual property of another Los Angeles team and take Pepperdine's name, trademarks, colors, and other identifying characteristics and associate them with their purportedly fictitious team.

38.    Throughout the trailer, and, on information and belief, throughout the series, Defendants depict a team called the "Waves" using strikingly similar logos, branding, and colors to the Pepperdine Waves.  For example, a screenshot of Defendants' *Running Point* trailer[7] shares no less than six similarities to Pepperdine's mark including (1) use of a similar font for the word "WAVES"; (2) orange lettering of the word "WAVES"; (3) white outlining around the orange lettering; (4) blue border around the orange and white combination; (5) use of the word "WAVES"

---

[4] Nellie Andreeva, *LA Lakers-Inspired Office Comedy Series Ordered by Netflix from Mindy Kaling, Elaine Ko & Jeanie Buss*, Deadline (June 18, 2021), https://deadline.com/2021/06/los-angeles-lakers-office-comedy-series-netflix-mindy-kaling-elaine-ko-jeanie-buss-1234777634/.

[5] Jean Beatley & Brookie Mcilvaine, *Basketball Comedy Running Point Tips Off in February:  Watch the Trailer*, Tudum by Netflix (Jan. 30, 2025), https://www.netflix.com/tudum/articles/mindy-kaling-kate-hudson-series-news.

[6] *Running Point* | Official Trailer | Netflix, YouTube (Jan. 30, 2025), at 0:08, https://www.youtube.com/watch?v=thA5bHMjOI4 (hereinafter "Trailer").

[7] *Id.* at 1:53.

in a similar context—on athletic-style clothing to connect the name with a sport, namely basketball; and (6) use of the same overall color scheme (blue, orange, and white). Fulsome screen captures taken from the *Running Point* trailer here and elsewhere in the complaint are attached at **Exhibit E**. This is only one screenshot of the nearly three-minute trailer and the "coincidences" in use are already numerous. The "WAVES" logos in the below screen capture are identical or nearly identical to Pepperdine's WAVES mark, as identified in the image appearing next to Defendants' use.

 

| Defendants' Use | Pepperdine's Mark |

39.    In another iteration, the WAVES mark appears in orange text with white outlining, then a thicker, blue border. The number of similarities between the images below cannot be overstated. In only the second screenshot taken of the *Running Point* trailer in the first 11 seconds,[8] a mark identical to Plaintiffs' once again appears, this time in connection with champagne being sprayed across a locker room.

---

8 *Id.* at 0:11.



| Defendants' Use | Pepperdine's Mark |

40.     As another example, the logo used in the basketball court in the series looks nearly identical to Pepperdine's own court, which displays its WAVES mark prominently.  When comparing the *Running Point* trailer's gym[9] to Pepperdine's own gym, one can once again identify numerous similarities between the two images, including orange text depicting "WAVES" in all capital letters with white and blue outlining, directly behind a basketball hoop.  One could easily mistake the Defendants' use for the often-televised Pepperdine court.




Defendants' Use                          Pepperdine's Mark

41.     What's more, the other team logos in the *Running Point* series are also nearly identical to Pepperdine's WAVES marks.  For example, in the side-by-side comparison below, the "Waves" logo depicted in the Defendants' trailer shows a blue and white wave next to orange text with white outlining, with the wave starting at the bottom left of the logo and circling around to

---

[9] *Id.* at 0:16.

the right.  The logo in that screen capture[10] is virtually identical (or at least strikingly similar to) Pepperdine's mark, as shown on the right in color with a blue wave appearing next to orange text with white outlining, with the wave beginning at the bottom left and circling around to the right.




Defendants' Use                                                Pepperdine's Mark

### C.   OTHER "COINCIDENCES" APPEAR DESIGNED TO INVOKE AN ASSOCIATION BETWEEN THE SERIES AND PEPPERDINE'S BRAND

42.    In addition to the use of Pepperdine's marks, the context in which Defendants use Pepperdine's marks in Defendants' trailer, and, on information and belief, in Defendants' series, appear designed to invoke an association with Pepperdine and Pepperdine's marks.

43.    For example, the "Waves" in Defendants' series refers to a basketball team. Pepperdine's basketball team is called the "Waves."

44.    The "Waves" in Defendants' series are based in Los Angeles.  Pepperdine's Waves are based in Los Angeles.

45.    The "Waves" conference room in Defendants' series has a framed, blue, orange, and white "37" jersey.[11]  As discussed above, the "37" jersey holds special prominence as part of Pepperdine's brand, especially in conjunction with its school colors.  It is the jersey that Pepperdine's mascot, Willy the Wave, wears, and it is the numbered jersey most frequently used in Pepperdine's athletic marketing and advertising, as discussed above.

---

[10] *Id.* at 0:37.
[11] *Id.* at 1:05.

SULLIVAN & CROMWELL LLP                                                          COMPLAINT



Defendants' Use             Pepperdine's Mark

46.    Defendants' series also utilizes the scenic beauty of Malibu in its trailer,[12] including images of the coast, and Pepperdine is well-known because of its location and access to the stunning view of the Pacific from Malibu.



Image from the *Running Point* trailer.       Image from Pepperdine University.

47.    Taken together, it is clear that Defendants have not only infringed Pepperdine's marks, but sought to capitalize on its brand:  a successful, Los Angeles basketball team named the "Waves," sporting the colors blue, orange, and white, alongside the number "37."

**D.    THE SIMILARITIES HAVE CAUSED AND ARE LIKELY TO CAUSE CONFUSION**

48.    Defendants' infringing acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' portrayal and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' series originates from, is associated with, is affiliated with, or is otherwise authorized by Pepperdine.

---

[12] *Id.* at 0:11.

49.     It is difficult to *not* draw similarities between the scenes portrayed in Defendants' trailer and that of Pepperdine's WAVES marks and common law trademarks.

50.     Separately, the use of Pepperdine's marks is unlawful and in violation of Pepperdine's rights.  Taken together, the similarities between Defendants' use of the marks, in connection with their focus on Los Angeles and beach imagery, their use of the colors blue, orange, and white, and their use of the number "37," all point to willful and deliberate efforts not only to infringe on Pepperdine's marks, but to cause confusion as to the origin of the Waves in *Running Point*.

51.     In fact, Defendants' use of Pepperdine's marks has already resulted in actual confusion.  Shortly after the release of the *Running Point* trailer on January 30, 2025, a user on the social media platform X (formerly known as Twitter) pointed out the similarities between the Pepperdine Waves logo and the *Running Point* use of the protected mark, stating "[d]id nobody at Netflix think to check whether someone (anyone!) already held a trademark on that particular WAVES logo in blue and orange?"

E.    **DEFENDANTS HAVE MARKETED THE SERIES TO SIMILAR
        CONSUMERS**

52.    On information and belief, Defendants have intentionally marketed the *Running Point* series to, among others, sports fans and consumers of sports media.  Even more specifically, the series is likely to attract basketball fans—the very type of consumer that is likely to draw an (unwanted) association between the "Waves" depicted in the series and the Pepperdine Waves based, in large part, on the strikingly similar WAVES mark.

53.    Based on the manner in which Hollywood often promotes its product, Pepperdine reasonably anticipates that Defendants may seek to promote the series by, among other things, selling merchandise.  Pepperdine reasonably believes that any such merchandise is likely to include athletics wear or other apparel containing Pepperdine's WAVES mark and thereby further infringe Plaintiff's rights and exacerbate consumer confusion about the source of origin for those products.

54.    This reasonable belief is buttressed by the fact that Netflix operates a "Netflix Official Merch Shop," which sells direct-to-consumer merchandise and products based on Netflix series that they promote and stream.[13]  The shop offers t-shirts, sweatshirts, hats, water bottles, and other items for sale, bearing marks and images from shows that Netflix offers on its streaming services.

F.    **DEFENDANTS' USE DOES NOT ALIGN WITH PEPPERDINE'S
        VALUES**

55.    Defendants' infringing use of Pepperdine's marks is inapposite to the values and Christian morals that have built Pepperdine's reputation in the community and nationwide.

56.    In the under three-minute trailer of the Defendants' series, numerous examples of risqué, inappropriate, and illegal behavior are depicted and celebrated.

57.    There is a plethora of references to alcohol and illegal uses of substances, with images of alcohol shown no less than three times in the two minute and forty-three second trailer. Not only does alcohol use frequent the short trailer, but actor Kate Hudson's character is heard

---

[13] Netflix, *Netflix Shop*, Netflix, https://www.netflix.shop/ (last visited Feb. 18, 2025).

stating that she "might have a Xani on the plane."[14]  Excessive alcohol and illegal drug use are not consistent with Pepperdine's values, nor are they consistent with its athletic programming.  Indeed, as an alcohol- and drug-free university, with few exceptions, it is a violation of Pepperdine's Student Code of Conduct for any student to be in the presence of alcohol, controlled substances, or drug-related paraphernalia on any of Pepperdine's campuses.

 

Images from Defendants' *Running Point* trailer.

58.    In addition, the *Running Point* trailer goes on to depict sexually charged images and dialogue including phrases such as "I seen your titties on the internet so I can't really take you serious"[15] and "everyone is horny for everyone they work with."[16]  The trailer even includes a topless photo of Kate Hudson with Pepperdine's WAVES mark shown prominently.

---

[14] *Id.* at 2:20.
[15] *Id.* at 2:14.
[16] *Id.* at 1:41.

-21-

1
2
3
4
5
6
7
8
9
10
11
12



Defendants' Use

13    59.    Culminating in further misrepresentations of Pepperdine's marks in connection

14  with topics wholly inconsistent with its values are images of violent altercations (pictured below)

15  and the use of foul and derogatory language such as "you are the biggest bitch,"[17] and "I should

16  be a crappy interior designer like all my shitty friends from high school."[18]

17
18
19
20
21
22
23
24
25
26

Image from Defendants' *Running Point* trailer.

27
28

[17] *Id.* at 1:49.
[18] *Id.* at 2:05.

-22-

COMPLAINT

60.     And that is just the *trailer* for the show.  It is not difficult to imagine the extent to which Pepperdine's reputation will be irreparably harmed by the use of its marks in connection with the full series.  Pepperdine does not wish to be tied to the messages and imagery of *Running Point*.  Defendants' improper uses of the Asserted Trademarks are likely to cause an unwanted association with Pepperdine's brand and image, as well as dilute, tarnish, and disparage Pepperdine's reputation and marks.  This will additionally harm Pepperdine's ability to recruit students, athletes, and faculty and pursue its overall mission.

### G.     DEFENDANTS KNEW OR SHOULD HAVE KNOWN ABOUT THE ASSERTED TRADEMARKS.

61.     Defendants and their associates knew or should have known of the Asserted Trademarks before production of *Running Point*.

62.     As an initial matter, any search of registered trademarks would have identified Pepperdine's marks.  Moreover, a simple web search for "what basketball teams are in Los Angeles" reveals the Pepperdine Waves.  Even the most limited of due diligence would have revealed a basketball team bearing the same name, the same marks, the same color palettes, and in the same city.



63.     And running a simple Google search for "Los Angeles waves basketball," immediately results in numerous Pepperdine Waves-related articles and sources.  Had Defendants conducted even a simple search on the name of their "fictional" team, they would have been on notice of the well-publicized and popular Pepperdine Waves marks and basketball team.

64.    Additionally, as discussed above, Pepperdine prominently displayed several of the Asserted Trademarks for years in a conference room in Staples Center—the home of the Lakers and accessible to Jeanie Buss and her team.

65.    Further, on information and belief and based on self-reported data from alumni, several Pepperdine alumni have gone on to work at Netflix (at least 46 alumni), Warner Brothers (at least 79 alumni), and the Lakers (at least 6 alumni)—not to mention alumni athletes that played for the Lakers.

66.    Moreover, Defendants were informed of the Asserted Trademarks and their infringement after the release of the *Running Point* trailer.

67.    In an effort to protect the Asserted Trademarks, when Pepperdine first learned of Defendants' use of its intellectual property on January 30, 2025, Pepperdine's General Counsel contacted Defendants in an attempt to stop the unauthorized use.

68.    On February 12, 2025, Pepperdine's outside counsel sent Defendants (and other entities potentially associated with *Running Point*) a cease-and-desist letter, attached as **Exhibit F**. After reasonable inquiry, Pepperdine has no evidence that Defendants have complied or intend to comply with the demands set out in Pepperdine's counsel's cease-and-desist letter.

69.     Among other things, the cease-and-desist letter explained that Pepperdine does not wish to be associated with the series, as it does not align with Pepperdine's culture or values. Further, the use of Pepperdine's WAVES mark and the portrayal of the "Waves" in the series infringes, tarnishes, and disparages Pepperdine's brand.

70.     Pepperdine's counsel sent a follow up letter on February 17, 2025, making clear that the matter was of immediate importance and that if Defendants and their associates did not address the matter promptly, Pepperdine would be forced to take action to protect its marks and interests.  A copy of that letter is attached as **Exhibit G**.

71.     The only response Pepperdine has received was from an attorney acting on behalf of Warner Bros., who contacted Pepperdine's General Counsel generally stating that the show does not infringe on Pepperdine's trademarks.   Pepperdine's General Counsel continued to communicate informally with counsel from Warner Bros. in an effort to resolve this issue, but was unsuccessful in reaching an amenable solution.  At Pepperdine's request in a further effort to resolve the matter, counsel from Warner Bros. first offered a viewing of several full episodes of *Running* Point but subsequently withdrew the offer. *See* generally Exhibit H.

## **FIRST CAUSE OF ACTION**

### **(Trademark Infringement under 15 U.S.C. § 1114**

### **Against All Defendants)**

72.     Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

73.     Pepperdine's Asserted Trademarks are distinctive and have become well-known and associated with its university and prestigious athletics program.  This is a result of the extensive use of the marks, as well as advertising and sales of merchandise bearing the Asserted Trademarks.

74.     Defendants did not use the Asserted Trademarks in commerce until decades after Pepperdine began using the marks in connection with its University athletics programs.

75.     After identifying the unauthorized use of the its marks in the *Running Point* trailer, but before the release date set for the series, Pepperdine promptly informed Defendants that they

were using Pepperdine's owned WAVES marks in an unauthorized manner. Defendants have not indicated that they intend to take any actions to remedy their unauthorized uses but instead plan to release *Running Point* as scheduled without change.

76.    Defendants have advertised *Running Point* using marks that are confusingly similar to the Asserted Trademarks, including on the Netflix website,[19] Netflix social media accounts,[20] the Warner Bros. website,[21] Warner Bros. social media accounts,[22] and YouTube.[23]

77.    Defendants have used marks that are confusingly similar to the Asserted Trademarks on clothing and costumes, t-shirts and jerseys worn by players, gym advertising materials, as depicted in *Running Point*. These uses infringe on Pepperdine's class 25 rights on clothing using or bearing the marks.

78.    Defendants have further used marks that are confusingly similar to the Asserted Trademarks in promotional materials, fictionalized athletic events and games, and in images advertising *Running Point*. These uses further infringe on Pepperdine's class 41 rights for use of the marks in entertainment services and in arranging and conducting athletic events and tournaments.

79.    As described above, Defendants are using in commerce, through their promotion and publication of the *Running Point* trailer, without Pepperdine's authorization or consent and in an explicitly misleading manner, Pepperdine's Asserted Trademarks in connection with the advertisement, offering for sale, and/or sale of *Running Point*. Defendants have infringed the Asserted Trademarks and intend to continue to infringe by releasing *Running Point* as planned on February 27, 2025.

80.    Defendants' unlawful use of the Asserted Trademarks reflects their intent to trade upon the goodwill of Pepperdine's marks by causing confusion and mistake among customers and

---

[19] Jean Beatley & Brookie Mcilvaine, *Basketball Comedy Running Point Tips Off in February: Watch the Trailer*, Tudum by Netflix (Jan. 30, 2025), https://www.netflix.com/tudum/articles/mindy-kaling-kate-hudson-series-news.
[20] Netflix (@netflix) | Instagram, https://www.instagram.com/p/C7AI2U2Onvc/ (Jan. 30, 2025); Netflix, Facebook, https://www.facebook.com/warnerbrostv/videos/running-point-trailer/1663604560932958/ (Jan. 30, 2025).
[21] *Running Point*, Warner Bros., https://www.warnerbros.com/tv/running-point.
[22] Warner Bros. (@warnerbrostv) | Instagram, https://www.instagram.com/warnerbrostv/reel/DFdS8dSP_mr/ (Jan. 30, 2025).
[23] *Running Point* | Official Trailer | Netflix, YouTube (Jan. 30, 2025), https://www.youtube.com/watch?v=thA5bHMjOI4.

COMPLAINT

the public, and to deceive the public into believing that *Running Point*'s use is associated with, sponsored by, or approved by Pepperdine when it is not. Defendants' unauthorized use of Pepperdine's marks is likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1114.

81.    Defendants' acts of infringement have caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

82.    Defendants' acts of infringement have caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill. Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

83.    Defendants' acts of infringement were and are willful and deliberate.

## SECOND CAUSE OF ACTION

### (Contributory Trademark Infringement under 15 U.S.C. § 1114

### Against All Defendants)

84.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

85.    Defendants entered into an apparent or actual partnership or joint venture for purposes of producing, broadcasting, and promoting *Running Point*, as evidenced by their coordinated marketing of the series, and, based on information and belief, worked together to produce and promote *Running Point* for the benefit of Netflix, Warner Bros., and their associates.

86.    Based on information and belief, Warner Bros. was able to, and did, exercise control over, and willfully, deliberately, and intentionally induced Defendant Netflix, to infringe the Asserted Trademarks.

87.    Based on information and belief, Netflix has similarly been able to, and did, exercise control over, and willfully, deliberately, and intentionally induced Warner Bros., Instagram, Facebook, YouTube and others, to infringe the Asserted Trademarks by promoting and hosting the *Running Point* trailer on their platforms.

88.    Defendants' contributory infringement has caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

89.    Defendants' contributory infringement has caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

90.    Defendants' conduct was and is willful and deliberate.

### THIRD CAUSE OF ACTION

### (False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A)

### Against All Defendants)

91.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 90 as if fully set forth herein.

92.    By misappropriating the Asserted Trademarks, Defendants have misrepresented to the relevant consuming public that Pepperdine has endorsed and/or is affiliated with *Running Point*, thereby creating a likelihood of confusion as to whether *Running Point* is associated with, sponsored by, or approved by Pepperdine, and it is not.

93.    As a result of the allegations set forth herein, Defendants have created a likelihood of injury to Pepperdine's reputation and to the reputation and goodwill of the Asserted Trademarks, especially due to the explicit and derogatory nature of the *Running Point* series.

94.    Defendants' misappropriation has caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

95.    Defendants' misappropriation has caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

96.    Defendants' conduct was and is willful and deliberate.

**<u>FOURTH CAUSE OF ACTION</u>**

**(Trademark Dilution under 15 U.S.C. § 1125(c)**

**Against All Defendants)**

97.     Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 96 as if fully set forth herein.

98.     By virtue of the nearly eight decades of use, popularity, and success of the Pepperdine Waves, the Asserted Trademarks are famous and have been famous long before Defendants used the marks in *Running Point*.

99.     Defendants use of Pepperdine's Asserted Trademarks in advertising and promotion of *Running Point* and in *Running Point* itself has been for Defendants' commercial gain and dilutes the quality of and tarnishes the public image of Pepperdine's Asserted Trademarks and is likely to cause actual dilution of those marks, thereby impairing Pepperdine's capability of identifying and distinguishing Pepperdine's goods and services, including WAVES merchandise.

100.     Defendants' references to substance use, violence, sexually explicit imagery and dialogue, and foul language in conjunction with their improper use of Pepperdine's Asserted Trademarks, links the themes of the show to Pepperdine in inappropriate and disparaging ways, harming Pepperdine's reputation and belittling the upstanding values it upholds.

101.     Defendants' acts have caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

102.     Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

103.     Defendants' conduct was and is willful and deliberate.

## FIFTH CAUSE OF ACTION

### (False Advertising under 15 U.S.C. § 1125

### Against All Defendants)

104.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 103 as if fully set forth herein.

105.    In violation of 15 U.S.C. § 1125, Defendants' marketing, advertising, promotion, and possible publication of *Running Point*, as described above, and the unauthorized use of Pepperdine's Asserted Trademarks in these actions in commerce, are an express and/or implied implication that their infringing work was associated with, endorsed by, or approved by Pepperdine, and therefore constitutes false advertising.

106.    Consumers are likely to be misled and/or deceived into believing that the Defendants' use of the Asserted Trademarks in *Running Point* is associated with, endorsed by, or approved by Pepperdine, when this use, is in fact, not.

107.    Defendants, both proficient and sophisticated corporations, knew or should have known that their representations and conduct in their use of the Asserted Trademarks were false or likely to mislead.

108.    Defendants' acts have caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

109.    Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill.    Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

110.    Defendants' conduct was and is willful and deliberate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CAUSE OF ACTION

### (Violation of Cal. Bus. & Prof. Code § 17247, Trademark Dilution

### Against All Defendants)

111.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 110 as if fully set forth herein.

112.    Due to the decades of use, popularity, and success of the Pepperdine Waves, the Asserted Trademarks have been famous long before Defendants used the marks in *Running Point*.

113.    Defendants' use of the Pepperdine's Asserted Trademarks in advertising and promoting *Running Point*, as well as within *Running Point* itself, has been for their commercial gain.  This use dilutes the quality and tarnishes the public image of the Pepperdine's Asserted Trademarks, likely causing actual dilution.  This impairs Pepperdine's ability to identify and distinguish its goods and services, including WAVES merchandise, from those of the Defendants.

114.    Defendants' acts have caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

115.    Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

116.    Defendants' conduct was and is willful and deliberate.

## SEVENTH CAUSE OF ACTION

### (Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

### Against All Defendants)

117.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 116 as if fully set forth herein.

118.    The foregoing acts and conduct of Defendants constitute deceptive business practices that are both unlawful and unfair under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").

119.    Business and Professions Code section 17206 imposes civil liability of not more than $2,500 for each violation for any act of unfair competition, as defined in Business and Professions Code section 17200, and entitles Plaintiff to disgorgement, injunctive relief, and an award of attorneys fees.

120.    Defendants engaged in, and continue to engage in, unlawful business practices in violation of the UCL through their violations of both statutory and common law trademark infringement, dilution, false advertising, and unfair competition.

121.    *First*, as alleged above, Defendants have infringed and intend to continue to infringe Pepperdine's Asserted Trademarks protecting the Pepperdine Waves and are using these marks in a television series completely antithetical to the values and beliefs on which Pepperdine's reputation is based.

122.    *Second*, as alleged above, Defendants have violated and continue to violate the Lanham Act, 15 U.S.C. § 1051 *et seq.* in connection with Defendants' marketing, advertising, promotion, and offering for sale its series *Running Point*.

123.    As a direct and proximate result of Defendants' unfair and unlawful conduct, Pepperdine has been harmed and Defendants have been unjustly enriched, for which restitution and/or disgorgement is appropriate.

124.    Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

125.    Defendants' conduct was and is willful and deliberate.

## **EIGHTH CAUSE OF ACTION**

### **(Violation of Cal. Bus. & Prof. Code False Designation of Origin § 17500 *et seq.***

### **Against All Defendants)**

126.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 125 as if fully set forth herein.

-32-

127.   By misusing the Pepperdine marks, the Defendants have falsely represented to the relevant public that Pepperdine endorses or is affiliated with *Running Point*, creating confusion about whether *Running Point* is associated with, sponsored by, or approved by Pepperdine, which it is not.

128.   As evidenced by the allegations stated herein, Defendants have harmed Pepperdine's reputation and the reputation and goodwill of the Asserted Trademarks, particularly because of the explicit and derogatory nature of the *Running Point* series, which includes themes of sexual imagery and content, alcohol and substance use and abuse, violence, and foul language, all of which are antithetical to Pepperdine's mission and Christian values.

129.   Defendants knew or should have known their express and/or implied representations and conduct were false or likely to mislead.

130.   Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine's reputation and goodwill.   Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

131.   Defendants' conduct was and is willful and deliberate.

## NINTH CAUSE OF ACTION

### (California Common Law Unfair Competition

### Against All Defendants)

132.   Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 131 as if fully set forth herein.

133.   Through their use of nearly identical and confusingly similar variations of the Asserted Trademarks, Defendants have willfully and without the permission or authorization of Pepperdine, the owner of the Asserted Trademarks, appropriated the trademark property of Pepperdine.   Because of this, Defendants have irreparably harmed Pepperdine's investment and goodwill in its marks and reputation.

134.    By virtue of the allegations contained herein, Defendants actions are likely to have caused confusion, mistake, or deception as to the source of *Running Point*'s use of protected marks. These actions by Defendants have caused damage and irreparable injury to Pepperdine.

**DEMAND FOR RELIEF**

WHEREFORE, Pepperdine respectfully requests that the Court enter judgment against the Defendants as follows:

**A.**    For entry of a temporary restraining order, preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 prohibiting Defendants and each of their agents, owners, shareholders, partners, employees, attorneys, assigns, and all others from committing further infringing acts including:

a.    Using any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to Pepperdine's Asserted Trademarks in the advertising, distribution, showing, streaming, marketing, selling, promotion, and/or sale of *Running Point* or related goods or services;

b.    Engaging in any further acts of infringement;

c.    Engaging in any acts constituting unfair competition;

d.    Engaging in any activity likely to dilute the distinctiveness of Pepperdine's Asserted Trademarks;

e.    Making, implying, or displaying statements or representations that are likely to lead the public to believe that Pepperdine in any way approved or endorsed the unlawful use of the Asserted Trademarks in *Running Point* or its affiliated materials and merchandise;

f.    Aiding, assisting, or abetting any other individual or entity in doing any act prohibited under any claim alleged herein;

g.    Merchandising, marketing, advertising, selling, or offering to sell any merchandise including any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to the Asserted Trademarks in connection with *Running Point* or related goods or services;

h.    Registering of any copyright, trademark, or other intellectual property right including any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to the Asserted Trademarks;

i.    Using, registration, or reservation of any domain name, social media name, or similar domain or social networking name or page that includes the Asserted Trademarks;

**B.**    For an award to Pepperdine of treble its actual damages for trademark infringement under 15 U.S.C. § 1117(a);

**C.** For an order that Defendants account to and pay over to Pepperdine all profits derived from its infringing use of the Asserted Trademarks;

**D.** For an order directing Defendants to engage in corrective advertising to disclaim any association between Pepperdine and *Running Point*, to remedy the actual and potential customer confusion in the marketplace due the Defendants' unlawful acts; and

**E.** For an award of attorneys' fees and costs, prejudgment interest, and such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Pepperdine respectfully requests a jury trial on all issues so triable.

Dated: February 20, 2025

*/s/Andrei Iancu*
Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:     (310) 712-6600

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:     (650) 461-5600

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone: (310) 979-9190

*Attorneys for Plaintiff Pepperdine University*

-36-

COMPLAINT