UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:25-cv-01429-CV (ADSx) | Date February 26, 2025 |
| Title *Pepperdine University v. Netflix, Inc., et al.* | |

Present: The Honorable  Cynthia Valenzuela, United States District Judge

| Jessica Cortes | Laura Elias |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [2]

## I. PROCEDURAL BACKGROUND

On February 20, 2025, Plaintiff Pepperdine University ("Pepperdine") filed a complaint (Doc. # 1, "Compl.") and a Motion for Temporary Restraining Order (Doc. # 2, "Motion") against Defendants Netflix, Inc. ("Netflix") and Warner Bros. Entertainment, Inc. ("Warner Bros."). The Complaint alleges (1) trademark infringement, (2) contributory trademark infringement, (3) false designation of origin, (4) trademark dilution, (5) false advertising, (6) violation of Cal. Bus. & Prof. Code § 17247, (7) violation of Cal. Bus. & Prof. Code § 17200, (8) violation of Cal. Bus. & Prof. Code § 17500, and (9) common law unfair competition.

Pepperdine requests a temporary restraining order ("TRO") enjoining Defendants from:

1. Continuing to show the trailer for the *Running Point* series or otherwise promoting the series with materials that refer to the team depicted in the series as the Waves or otherwise uses any of the federally registered trademarks Reg. Nos. 2,668,597, 2,903,783, and 2,967,811;

2. Showing or displaying any episodes of the *Running Point* series unless they are first edited to remove all references to the team depicted in the series as the Waves and eliminate all uses of the federally registered trademarks Reg. Nos. 2,668,597, 2,903,783, and 2,967,811;

3. Using any title, name, service mark, trademark, trade name, or domain name that is confusingly similar to federally registered trademarks Reg. Nos. 2,668,597, 2,903,783, and 2,967,811, in the advertising, distribution, showing, streaming, marketing, selling, promotion, and/or sale of *Running Point* or related goods or services;

4. Merchandising, marketing, advertising, selling, or offering to sell any merchandise including any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to the federally registered trademarks Reg. Nos. 2,668,597, 2,903,783, and 2,967,811, including but not limited to the use of the name "Waves," in connection with *Running Point* or related goods or services;

5. Using, registering, or reserving any domain name, social media name, or similar domain or social networking name or page that includes federally registered trademarks Reg. Nos. 2,668,597, 2,903,783, and 2,967,811, including but not limited to the use of the name "Waves"; and

6. Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by this temporary restraining order.

(Motion at 1-2). On February 20, 2025, the Court issued an Order requiring Pepperdine to serve Defendants with the summons, Complaint, and all papers related to the Motion. Doc. # 10. The Court ordered Defendants to file an opposition by February 24, 2025, at 5:30 p.m., and set a hearing for February 25, 2025 at 1:30 p.m. *Id.*

On February 21, 2025, Pepperdine filed two Proofs of Service (Doc. ## 14, 15), indicating that Netflix and Warner Bros. had been personally served with the relevant pleadings/documents.

On February 24, 2025, Defendants filed their Opposition (Doc. # 18). On February 25, 2025, Pepperdine filed a Motion for Leave to File Reply (Doc. # 20),

which the Court granted. Doc. # 21. On the same day, Defendants filed a Request for Leave to File Sur-Reply (Doc. # 22), which the Court granted. Doc # 24. Having considered the briefing and the Parties' arguments at the February 25, 2025 hearing, and for the reasons discussed below, the Motion is **DENIED**.

## II.  FACTUAL BACKGROUND

Pepperdine is a Christian university located in Malibu. Declaration of Sean Burnett in Support of Pepperdine's Motion for Temporary Restraining Order ("Burnett Decl."), ¶¶ 3-4 (Doc. # 2-12). Pepperdine's athletic teams have been known as the "Waves" since the University's founding in 1937. *Id.*

Pepperdine has three relevant trademarks registered with the United States Patent and Trademark Office: U.S. Reg. No. 2,668,597, which was issued on December 31, 2002; U.S. Reg. No. 2,967,811, which was issued on July 12, 2005; and U.S. Reg. No. 2,903,783, which was issued on November 16, 2004. Declaration of Aviv S. Halpern in Support of Pepperdine's Motion for Temporary Restraining Order ("Halpern Decl."), ¶ 2, Exs. A, B, C (Doc. ## 2-2, 2-3, 2-4, 2-5). Each of these three trademarks relates to the Pepperdine "WAVES" marks (the "Marks").[1]

Warner Bros. has created a television series titled *Running Point*, which was first pitched to Warner Bros. in August 2020. Declaration of Brett Paul in Support of Defendants' Opposition to Motion for Temporary Restraining Order ("Paul Decl."), ¶ 3 (Doc. # 18-3). Warner Bros. began production of *Running Point* in February 2024 and plans to release the series on Netflix's streaming platform on February 27, 2025. *Id.*

*Running Point* is an "original comedic television series" created by Mindy Kaling and Warner Bros., which was developed for the streaming service Netflix. *Id.* ¶ 2. The fictional series is about a "very dysfunctional family" who owns and manages a "high-profile, multi-billion-dollar basketball franchise and arguably the most famous professional team in all of sports, the Los Angeles Waves." *Id.* ¶ 4. The series takes inspiration from the life story of Jeanie Buss, the owner and president of the Los Angeles Lakers. *Id.* ¶ 3.

Defendants released the trailer for *Running Point* on January 30, 2025, at which point Pepperdine declares it first learned about Defendants' use of its Marks.

---

[1] Pepperdine also alleges it owns common law trademarks relevant to this action, but does not address the infringement of those rights in its Motion. Motion at 13 n.3. The Court will therefore not address those trademarks.

*See* Declaration of Sean Burnett in Support of Pepperdine's Motion for Temporary Restraining Order ("Burnett Decl."), ¶ 14 (Doc. # 2-12). Pepperdine asserts that the *Running Point* series infringes on its Waves Marks because the fictional Los Angeles Waves team uses the word "WAVES" with a "strikingly similar font." Motion at 14. Pepperdine also asserts that the colors used by the fictional Los Angeles Waves team are similar to those used by Pepperdine, and the marks are used in similar contexts (i.e., in athletics). *Id.* at 5. Further, Pepperdine asserts that an image in the *Running Point* trailer includes a framed jersey with the number "37," similar to that worn by Pepperdine's mascot and denoting Pepperdine's founding year. *Id.* at 8.

Pepperdine asserts that the story depicted in *Running Point* does not align with Pepperdine's values. *Id.* at 9-10. Specifically, Pepperdine is concerned that the series' themes of "excessive alcohol and substance use, sexual innuendo and imagery, foul language," and other offensive themes will negatively impact Pepperdine's reputation. *Id.* at 10, 19-20.

### III.   LEGAL STANDARD

TROs are analyzed in substantially the same way as preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

### IV.   DISCUSSION

Pepperdine argues that it is likely to succeed on its claims for trademark infringement and false designation of origin under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).[2] Motion at 12-13. Pepperdine bases these claims solely on its three registered trademarks. Motion at 13 n.3.

---

[2] Pepperdine does not address the other claims in its Complaint in the Motion. Motion at 13 n.2. The Court will therefore not address those claims.

A.     The *Rogers* Test

As a threshold matter, the Court must consider whether the test created by *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) applies. Under *Rogers*, courts have held that "First Amendment concerns sometimes require a heightened showing for a trademark infringement claim to proceed." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027 (9th Cir. 2024).

*Rogers* applies in cases where the allegedly infringing use of a trademark is part of an expressive work protected by the First Amendment. *Id.* at 1028. "If the defendant meets this burden, the Lanham Act does not apply unless the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source of the content of the work." *Id.* (quotations omitted).

However, as the Supreme Court made clear in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 152 (2023), the *Rogers* test does not apply where "an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." 599 U.S. at 153.

In *Jack Daniel's*, the Supreme Court found that the *Rogers* test did not apply to a trademark dispute between the maker of Jack Daniel's whiskey and the maker of a dog toy named "Bad Spaniels" which resembled a bottle of Jack Daniel's whiskey and allegedly infringed upon Jack Daniel's trademarks. *Jack Daniel's*, 599 U.S. at 140. The Supreme Court found that although the "Bad Spaniels" product included "expressive content," and used the marks at issue to "parody" or "make fun" of Jack Daniel's, it still used the marks as a designation of the source of the good. *Id.* at 153-58.

B.     Guidance on When *Rogers* Applies

Additional case law highlights the distinction made by the *Jack Daniel's* Court. As explained in *Jack Daniel's*, The Ninth Circuit properly applied the *Rogers* test when Mattel sued a band over the song "Barbie Girl," finding that the band did not use the Barbie name as a "source identifier," as it did not speak to the song's origin. *Id.* at 154 (citing *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900-02 (2002). The *Jack Daniel's* Court also highlighted *University of Ala. Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (2012), in which the court applied the *Rogers* test when a sports artist depicted the Crimson Tide's trademark football uniforms to "memorialize" a notable event in "football history," and *Louis Vuitton*

*Malletier S. A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012), in which the court applied the *Rogers* test when a character in a movie described his luggage as a "Louis Vuitton." *Id.* at 154-55. The Court found that all three cases used a trademark "not to designate a work's source, but solely to perform some other expressive function. *Id.* at 154.

In a recent decision in the Central District of California, the court applied the *Rogers* test in a lawsuit involving the use of the plaintiff's marks on the defendant's book. *Haas Automation, Inc. v. Steiner*, No. 24-CV-03682-AB-JC, 2024 WL 4440914, at *6 (C.D. Cal. Sept. 25, 2024). The court found that although the book included the mark on its front cover, back cover, and on several pages, the mark was "not used to tell the consumer who published the book or the source of the book." *Id.* at *1, *6. Rather, the mark told the consumer what the book was about and who the author worked for. *Id.* at *6.

A New York court similarly applied *Rogers* in a case involving a television series' alleged trademark infringement. *JTH Tax LLC d/b/a Liberty Tax v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 330-40 (S.D.N.Y. 2023). In *JTH Tax*, the plaintiff was a tax preparation service doing business under the name Liberty Tax Service. *Id.* at 323. The defendants produced and distributed the television show, *Better Call Saul*, which depicted a fictional tax preparation business called "Sweet Liberty Tax Services." *Id.* The Court found that the mark was not used "to identify the source" of the television show or any of the defendants' products, and therefore found that the defendants had not used the marks "as their own identifying trademark." *Id.* at 332-33.

On the other hand, the court in *Punchbowl* found that *Rogers* did not apply when two companies both used the word "Punchbowl" in their business name. 90 F.4th 1022. The Ninth Circuit reasoned that although the companies operated in different industries, the second company, which had news products titled Punchbowl News and Punchbowl Press, used the trademarked term, "Punchbowl," to "identify and distinguish" their news products, and therefore used the mark as a mark. *Id.* at 1031-32.

Similarly, in *Mar Vista Entertainment, LLC v. THQ Nordic AB*, No. 2:23-cv-06924-MEMF (SSC), 2024 WL 3468933 (C.D. Cal. July 8, 2024), the court found that *Rogers* was inapplicable in a dispute between the owner of the rights to the *Alone in the Dark* videogame franchise, and entities who released a horror film titled

*Alone in the Dark*. The court found that the owners of the horror film selected the name *Alone in the Dark* to mislead consumers about the source of the film. *Id.* at *4.

### C. The *Rogers* Test is Applicable Here

Here, Defendants are not using the Waves Marks as source identifying marks. Defendants' only product at issue is the *Running Point* series, and there is no showing that Defendants have suggested that Pepperdine is the source of the series. Rather, the series will be broadcast on Netflix and the series' title cards confirm that Netflix, Warner Bros., and Mindy Kaling are responsible for the series. Declaration of Tracey Pakosta in Support of Defendants' Opposition to Motion for Temporary Restraining Order ("Pakosta Decl."), ¶ 2 (Doc. # 18-2); Paul Decl. ¶ 2.

Defendants also do not use the Waves mark in the series' title, and include an express statement that the series is a fictional work, and "[a]ny similarity to any actual persons . . . events, firms and institutions or other entities, is coincidental and unintentional." Paul Decl. ¶ 12. The use of the Waves Marks in the series is simply expressive and is a plot point in the series. The use of the Marks does not speak to the source of the series. Ultimately, on this record, there is no evidence that any viewer would be misled regarding the source of the series.

The Court therefore finds that the *Rogers* test is applicable here.

Under *Rogers*, "the Lanham Act does not apply unless the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Punchbowl, Inc.*, 90 F.4th at 1028 (quoting *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (2018)). "Neither prong is easy to meet." *Id.*

As to the first prong, Defendants' use of the Waves Marks is artistically relevant to the *Running Point* series. The Ninth Circuit has stated that "the level of artistic relevance under *Roger*'s first prong need only exceed zero." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 268 (9th Cir. 2018). Defendants explain that the "Waves" name "was chosen as a nod to the real-life Lakers, whose team name also alludes to a body of water." Paul Decl. ¶ 5. The name also evokes the Los Angeles area and the "Southern California 'vibe,' associated with beaches, sun, surfing, and waves." *Id.* ¶ 6. This explanation is sufficient to provide that the use of the "Waves" name had at least some level of artistic relevance.

As to the second prong, Defendants' use of the Waves Marks does not explicitly mislead consumers as to the source of the work. As previously stated, the *Running Point* series will be broadcast on Netflix, and the series' title cards confirm that Netflix, Warner Bros., and Mindy Kaling are responsible for the series. Neither Pepperdine nor the Waves Marks appear in the title cards for the series. There is therefore no implicit, let alone explicit statement that misleads the consumer as to the source of the series.

Because Defendants' use of the Waves Marks is artistically relevant, and the use of the Marks does not explicitly mislead consumers as to the source of the series, the Lanham Act does not apply, and Pepperdine cannot succeed on its claims for trademark infringement and false designation of origin.

The Court need not address the remaining *Winter* factors, as Pepperdine has not met its burden of establishing a likelihood of success on the merits. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (stating that the Winter test requires a plaintiff to "make a showing on all four prongs").

## V.     CONCLUSION

For the foregoing reasons, Pepperdine's Motion for a Temporary Restraining order is **DENIED**. Pepperdine may file a regularly noticed motion for a preliminary injunction if it has the evidence to do so. The Parties shall abide by the briefing schedule set forth in the Local Rules and the Court's Standing Order.

**IT IS SO ORDERED.**