Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:  (650) 461-5600

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone:  (310) 979-9190

*Attorneys for Plaintiff Pepperdine University*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEPPERDINE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,WARNER BROS. ENTERTAINMENT INC., and KALING INTERNATIONAL, INC.,<br><br>Defendants. | Case No. 2:25-cv-01429-CV-ADS<br><br>**FIRST AMENDED COMPLAINT FOR:**<br>**[1] TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br>**[2] CONTRIBUTORY TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br>**[3] FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125]**<br>**[4] FALSE ADVERTISING [15 U.S.C. § 1125]**<br>**[5] VIOLATION OF CAL. BUS. & PROF. CODE § 14247**<br>**[6] VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br>**[7] VIOLATION OF CAL. BUS. & PROF. CODE § 17500**<br>**[8] COMMON LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Pepperdine University ("Pepperdine") brings this action against Netflix, Inc. ("Netflix"), Warner Bros. Entertainment Inc. ("Warner Bros."), and Kaling International, Inc. ("Kaling International") (together, "Defendants"), for injunctive relief and damages and alleges, upon knowledge as to itself and its conduct and upon information and belief as to other matters, as follows:

## **INTRODUCTION**

1. Defendants Netflix, Warner Bros., and Kaling International have taken valuable intellectual property from Pepperdine, including utilizing Pepperdine's registered trademarks without permission, for unauthorized use in Defendants' new series, *Running Point*, which was released on February 27, 2025. The series is a raunchy comedy that follows an ambitious protagonist appointed as president of a Los Angeles basketball team—called the "Waves"—whose logo and branding and colors are strikingly similar to Pepperdine's Los Angeles basketball team—also called the "Waves"—a name utilized by and associated with Pepperdine for more than 85 years and protected in this precise field of use by registered trademarks.[1]

2. Although Defendants could have chosen any number of names for their purportedly fictional team, and used any number of color combinations for their uniforms, they chose instead to usurp Pepperdine's trademarked name in its registered field of use for a team in Pepperdine's home town, they chose to appropriate Pepperdine's color palette, and they even chose to promote a specific player number—the number 37, reflecting the year of Pepperdine's founding—that, as Defendants well know, is the number worn by Pepperdine's mascot, is the number on "Waves" merchandise sold by Pepperdine, and is promoted broadly by Pepperdine.

3. In short, by conduct that is necessarily willful, irresponsible, or both, in connection with their marketing, advertising, promotion, offering for sale, and

---

[1] *See* Jean Bently & Brookie Mcilvaine, NETFLIX: TUDUM (Jan. 30, 2025) https://www.netflix.com/tudum/articles/mindy-kaling-kate-hudson-series-news.

FIRST AMENDED COMPLAINT

streaming or showing their series *Running Point,* Defendants have infringed and intend to continue to infringe Pepperdine's trademarks protecting the Pepperdine WAVES marks and Pepperdine's other valuable intellectual property rights, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and California law.

4.      As shown by the many images set out below, Defendants have engaged in blatant copying and their infringement is undeniable.  Defendants have not just misappropriated Pepperdine's marks and colors, but they use them intentionally for the purpose of identifying their series to the public.  They advertise and promote the series as being about the Los Angeles Waves (or in many cases, just the "Waves").  The entire series is about the Waves team, its dysfunction, its management, its players and the woman who runs it.  Pepperdine's WAVES mark is displayed and talked about pervasively throughout the series—appearing on jerseys, t-shirts, court floors, walls, posters, a stadium and elsewhere—and is in fact a source-identifier for the series itself.  If there were any doubt about this, one need look no further than the Instagram page of Defendant Kaling International, where Mindy Kaling, the creator of the show (but not an actor who appears in it), is pictured wearing a t-shirt almost identical to ones Pepperdine sells with the infringing WAVES mark emblazoned across her chest, above the tag line "Home of the Los Angeles WAVES" followed by basketball and wave emojis.



5.      Ms. Kaling's effort to identify her company and her series as the "Home of the Los Angeles Waves" through social media undeniably reflects Defendants'

-3-

FIRST AMENDED COMPLAINT

attempt to misappropriate Pepperdine's WAVES mark and use it in classic trademark fashion as an identification of source. As does the fact that Defendants featured the same WAVES mark as one of just three marks—Netflix and Running Point being the two others—on the tickets for the series' premiere:

 

6.    Defendants' infringement here is particularly pernicious given the juxtaposition between Pepperdine's religious and moral values and those depicted in Defendants' series. Founded in 1937, Pepperdine is a prestigious, non-profit Christian university with top-ranked undergraduate and graduate programs. Its athletics programs are long-standing and successful. Since its founding, Pepperdine's athletic teams—the "Waves"—have excelled in various National Collegiate Athletic Association ("NCAA") sports. The Waves have won the Division I-AAA Athletic Directors Association All-Sports Trophy five times and have ten NCAA Division I team championships in five different sports. Its men's

-4-

basketball team began competing in the 1938-39 season, and its basketball program has since become very successful.  The men's basketball team currently competes at the Division I level of the NCAA, and it has at least 33 former players that have been drafted by the NBA and one former player inducted into the Naismith Memorial Basketball Hall of Fame.

7.     Pepperdine's school colors—Pepperdine Blue and Pepperdine Orange—and the name for its athletics teams—the Waves—were adopted in 1937, the year of its founding.  The "Waves" name was chosen to differentiate from other schools' penchant for animal names.

8.     For more than eight decades, Pepperdine has been a nationally-known institution of higher learning located in Los Angeles "committed to the highest standards of academic excellence and Christian values, where students are strengthened for lives of purpose, service, and leadership."  Among other things, students, faculty, donors, and sponsors choose Pepperdine because of its mission, its high standard of academic and athletic excellence, and its values.  Pepperdine's 830-acre campus is located in Malibu, in Los Angeles County.  Pepperdine Alumni include well-known actors such as Michelle Monaghan, Tia and Tamera Mowry, and Eric Christian Olsen; prominent business executives and politicians such as Rick Caruso, James Hahn and Michelle Steel; judges such as The Honorable Andre Birotte; and professional athletes such as former Lakers player and Sacramento Kings coach Doug Christie, former Rams quarterback Jim Everett, and professional golfer Sahith Theegala (who appears, alongside his Waves-embroidered golf bag, in multiple seasons of Netflix's own *Full Swing* series).

9.     Pepperdine owns several registered trademarks protecting the Pepperdine Waves name, brand, and reputation.  Its marks are widely recognized by the general public and are instantly associated with the University and its programs and services through decades of use, extensive marketing and financial investment, national exposure, and unsolicited press recognition.  Pepperdine promotes the

-5-

University and its programs using the marks, sells and authorizes for sale merchandise bearing the marks, and competes in various sports using the marks.

10. When Defendants released and promoted the trailer for *Running Point* on January 30, 2025, Pepperdine (and others) were immediately astounded at the striking correlations in branding between the fictional Los Angeles Waves and the real Los Angeles-based Pepperdine Waves. The uses are too many and too close to be coincidental. Defendants' "Waves" share the exact same name, use strikingly similar branding, have the exact same color combinations (blue, orange, and white), promote the same player number of Pepperdine's well-known mascot and year of the university's founding (37), and are in the same city, along with several other similarities. Pepperdine does not want any affiliation or association with the "Waves" featured in *Running Point*—especially considering that many of the activities depicted in the series do not align with Pepperdine's culture or values.

11. Prior to initiating this action, Pepperdine sought to raise its concerns to Defendants and resolve them, but was unsuccessful. Defendants have proceeded with releasing the series with full knowledge of Pepperdine's marks and concerns. Pepperdine thus had no choice but to bring this action to protect its name, trademarks, and reputation.

12. In addition, Defendants have recently announced their plan to create and release a second season of *Running Point*. Again, this is with full knowledge of Pepperdine's marks and concerns.

13. Thus, Pepperdine seeks damages for Defendants' infringement and misuse of its intellectual property that has already occurred, and an injunction to prevent the further misuse through continued showing of those episodes and the release of a second season of the show that utilizes and associates itself with Pepperdine's marks.

-6-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

**PARTIES, JURISDICTION AND VENUE**

14.    This is a civil action against Defendants for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and various violations of California statutory and common law.

15.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1311 and 1338 as it involves an action arising under the federal Lanham Act.

16.    This Court has personal jurisdiction over Defendants Netflix, Warner Bros., and Kaling International, each of which is doing business in and/or is headquartered in this District.

17.    Plaintiff Pepperdine is a prestigious, not-for-profit, Christian university with top-ranked undergraduate and graduate programs with more than 9,000 students in its five colleges and schools.  It is based in Malibu, California, which is in Los Angeles County.  Pepperdine is the sole registered owner of the asserted trademarks.

18.    Defendant Netflix is a Delaware corporation.  Netflix is one of the world's leading entertainment services providing streaming services for television series, films, and games across a wide variety of genres and languages.  Netflix, in connection with its streaming services, began hosting and streaming the comedy series *Running Point* on its platform on February 27, 2025.  Netflix released the trailer for *Running Point* on or about January 30, 2025, and has promoted the series on its website, social media platforms, in the press, and published the trailer on YouTube.  Netflix has a major office facility in Hollywood, California, and conducts substantial business operations in this District, including promotion and publication of the series, *Running Point*.

19.    Defendant Warner Bros. is a Delaware corporation with its principal place of business at 4000 Warner Boulevard, Burbank, California, 91522.  Warner

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

Bros. is a fully integrated entertainment company and has operations including creation, production, distribution, licensing and marketing of all forms of entertainment.  Warner Bros. has promoted *Running Point* on its social media platforms and website.  On information and belief, Warner Bros. is one of the production companies involved with *Running Point*.

20.    Defendant Kaling International is a production company founded by Mindy Kaling in 2012.  Kaling International is one of the producers of *Running Point*.  On information and belief, Jeanie Buss, owner of the Los Angeles Lakers and also a producer of *Running Point*, pitched the idea of *Running Point* to Ms. Kaling five years ago, and Ms. Kaling was personally involved in the decisions to use the "Waves" name and other identifying characteristics for the team around which *Running Point* revolves.

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(d) because Pepperdine's claims arise in this District, all of the Defendants may be found in this District, and all are subject to personal jurisdiction here.

## ASSERTED TRADEMARKS

22.    Pepperdine is the registered owner of U.S. Reg. Nos. 2,668,597, which was issued on December 31, 2002; 2,967,811, which was issued on July 12, 2005; and 2,903,783, which was issued on November 16, 2004.  A true and correct copy of the U.S. Registration Certificates and their declarations of incontestability, and notices of acknowledgement are attached as **Exhibits A, B**, and **C**, respectively.  All of the Asserted Trademarks are incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

23.    Pepperdine also owns common law trademark rights (together with the registered trademarks, the "Asserted Trademarks") in at least (1) the use of the "Waves" name, as well as (2) the use of its distinctive school colors, especially in conjunction with athletic programs and athletic merchandise, and/or in conjunction

-8-

with other symbols that are associated with and identify the university—including the "Waves" team name and the number "37."[2]

## FACTUAL BACKGROUND

### A.    THE PEPPERDINE WAVES AND THE NUMBER 37

24.    Since its founding in 1937, Pepperdine's athletic teams have been called the "Waves." Its athletics programs quickly gained regional and national recognition, and the Pepperdine Waves have won ten NCAA team championships in five different sports. The Pepperdine Waves men's basketball team won the College Basketball Invitational Championship in 2021. The Waves have also sent many of their former players to compete in a variety of sports at the professional level, with some even qualifying for inclusion in Halls of Fame. For example, 33 former Pepperdine Waves basketball players have been drafted to the NBA, with six of those players having played for the Los Angeles Lakers.

25.    In addition to its distinctive team name, Pepperdine also has distinctive school colors, which it adopted in 1937, that are inextricably linked to Pepperdine's spirit, tradition, and brand. Its primary school colors are Pepperdine Blue and Pepperdine Orange, with white as a secondary color.[3] These distinctive colors represent a brand identity that dates back to the university's founding. Pepperdine uses these colors in, among other things, its marketing, advertising, merchandise, and official communications. Over the years, through consistent and prominent use, including at sporting events, graduation ceremonies, and various community gatherings, these colors have come to signify and identify Pepperdine's brand.

26.    Pepperdine also incorporates its long history into its branding. To commemorate the year of its founding, Pepperdine gives the number 37 special

---

[2] *See, e.g.*, *Official Colors*, PEPPERDINE UNIVERSITY https://community.pepperdine.edu/imc/resources/style-guide/official-colors/ (last accessed Feb. 19, 2025).
[3] *Official Colors*, PEPPERDINE UNIVERSITY https://community.pepperdine.edu/imc/resources/style-guide/official-colors/ (last accessed Feb. 19, 2025).

-9-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

prominence in its athletic material—including on its mascot and for giveaway promotions or prizes, among other things.

 

27.    The 37 jersey is frequently worn by Pepperdine's mascot (Willie the Wave), alumni, dance team, and sporting event attendees.  It is used to represent and immediately identify Pepperdine.  It is widely publicized, and it has become a staple feature of Pepperdine's branding—especially in combination with Pepperdine's school colors and WAVES marks.

 

-10-

FIRST AMENDED COMPLAINT



28.    Defendants knew or should have known of Pepperdine's marks. Defendants are based in the same city as Pepperdine and have many ties to Malibu itself.    Indeed, Ms. Kaling herself has a beach house in Malibu not far from Pepperdine's campus and Ms. Buss was married on the beach in Malibu.    Pepperdine alumni not only work for Defendants, but have been featured in their original series, such as Netflix's *Full Swing*.    And many of the distinctive features of Pepperdine's brand—including a Pepperdine basketball player sporting the WAVES mark and Pepperdine's distinctive school colors—were displayed prominently in a conference room Pepperdine maintained in Staples Center (now Crypto.com Arena)—the home of Ms. Buss's Los Angeles Lakers.

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT



 

Pepperdine also hosted the NCAA Men's Basketball Tournament at Crypto.com Arena in 2024 and prior years, at which time, Pepperdine's WAVES marks were prominently displayed in the arena, as shown below.[4]



[4] *West Regional Ticket Information*, PEPPERDINE (April 5, 2023), https://pepperdinewaves.com/sports/2023/4/5/sports-m-baskbl-spec-rel-westregional-html.aspx.

-12-

29.    Pepperdine is the only team in collegiate or professional basketball to be named "Waves," and the only basketball team in Los Angeles named "Waves." Had Defendants done even the most basic search they would have learned that the WAVES brand belongs to Pepperdine.

30.    Incorporating its marks and other distinctive features, Pepperdine has expended significant resources on its branding—achieving nationwide (or at least region-wide) recognition. Of note, Pepperdine has spent significant expenditures on marketing, advertising, and branding. It has substantial sales of merchandise bearing the trademarks, including "Waves," the color palette and often the number "37," which it sells online directly and through third parties, and directly through at least two brick-and-mortar stores in different areas in Los Angeles. A sampling of items bearing Pepperdine's protected marks sold through one of those stores is included in **Exhibit D** attached hereto.

31.    From its longstanding and consistent use of these distinctive features and its national (or at least regional) market penetration, Pepperdine owns common law rights in at least the use of the "Waves" name, and in the use of its school colors, especially in conjunction with athletics and athletic merchandise, and/or in conjunction with other symbols that are associated with and identify the university— including the "Waves" team name and the number "37".

32.    To further protect its name, brand, and reputation, Pepperdine also owns several registered trademarks. And Plaintiff is careful to ensure that its trademarks are used in ways that align with its mission and values. As a result, Pepperdine's trademarks and brand have become associated with the university's core mission and values, and the WAVES mark has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Pepperdine.

33.    Pepperdine owns an incontestable trademark on the Principal Register in the United States Patent and Trademark Office for the service mark "WAVES". This federally registered mark, Reg. No. 2,668,597, is in continued use by

-13-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

Pepperdine.    Among other things, this registration is for "education and **entertainment services**, namely, . . . **arranging and conducting athletic events** and tournaments, exhibitions, conferences, live performances and festivals, in class 41" (emphasis added).

# WAVES

34.    Pepperdine has used the WAVES mark in commerce throughout the United States continuously since 1937 in connection with, among other things, its recruitment, marketing, and athletics programs, including its basketball program.  As seen in the images below, this includes use of the mark on athletic gear during competitions and tournaments, where Pepperdine's athletes have performed in front of tens of thousands of people (if not more) per year, as well as in Pepperdine's marketing content on social media, where Pepperdine has thousands of followers. Pepperdine has most often used this mark with a few designs displaying its colors (blue, orange, and white), including with orange lettering on a white background; orange lettering on a blue background; blue lettering on an orange background; and white lettering on a blue background.  Pepperdine uses this mark on buildings, sports facilities, and public displays.

-14-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT










-15-

FIRST AMENDED COMPLAINT

35.    Pepperdine's WAVES mark is distinctive both to the consuming public and to likely viewers of sports-related movies and shows.

36.    Pepperdine also owns an incontestable trademark on the Principal Register in the United States Patent and Trademark Office for the service and trademark for a wave illustration including the WAVES mark.  This federally registered mark, Reg. No. 2,903,783, is in continued use by Pepperdine.  Among other things, this registration is for "clothing . . . in class 25" and "education and **entertainment services**, namely, . . . **arranging and conducting athletic events** and tournaments, exhibitions, conferences, live performances and festivals, in class 41" (emphasis added).



37.    Pepperdine has used this trademark continuously in commerce throughout the United States in connection with its recruitment, marketing, and athletics program.  Pepperdine has most often used this mark in its marketing content on social media and in its merchandising material containing the mark.



38.    Pepperdine also owns an incontestable trademark on the Principal Register in the United States Patent and Trademark Office for the service and

-16-

trademark for the "PEPPERDINE WAVES" mark.  This federally registered mark, Reg. No. 2,967,811, is in continued use by Pepperdine.  This registration is for "clothing . . . in class 25" and "education and **entertainment services**, namely . . . **arranging and conducting athletic events** and tournaments, exhibitions, conferences, live performances and festivals, in class 41" (emphasis added).



39.     Pepperdine has used this trademark in commerce throughout the United States as well continuously in connection with, among other things, its recruitment, marketing, and athletics program, scoreboards at games, as well as with its offerings of merchandise.



-17-

FIRST AMENDED COMPLAINT



40. The Asserted Trademarks are nationally (or at least regionally) identified and recognized through decades of use, extensive marketing, national exposure, and unsolicited press recognition.

41. The Asserted Trademarks are widely recognized by the general public. As a result of their distinctiveness and widespread use and promotion throughout the United States, the Asserted Trademarks are famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and became famous prior to Defendants' acts alleged herein.

### B. DEFENDANTS' *RUNNING POINT* SERIES USES PEPPERDINE'S MARKS

42. Defendants have promoted *Running Point* as a series about a woman who is unexpectedly appointed president of a basketball franchise identified as the Los Angeles Waves. The trailer describes the series as involving the Waves and the "fucked up family that runs it."[5] The story revolves around the Waves, its management and its players, and includes themes of alcohol and substance use, sexual innuendo and imagery, foul language, as well as other offensive themes that are anathema to the values that Pepperdine stands for and promotes.

---

[5] *Running Point* | Official Trailer | Netflix, YouTube (Jan. 30, 2025), at 0:08, https://www.youtube.com/watch?v=thA5bHMjOI4 (hereinafter "Trailer").

-18-

43.    But even though the series was purportedly based on the Lakers and Ms. Buss, the owner of the Lakers, the team depicted in the series is not identified as the Lakers and does not use any Lakers colors or branding.  Rather than use Lakers trademarks, Lakers colors, or other intellectual property that Ms. Buss controls and presumably has the ability to license or use, Defendants inexplicably chose to identify their team using Pepperdine's WAVES trademarks, Pepperdine's colors, and Pepperdine's other identifying characteristics.

44.    The team that is the basis for Defendants' series is called the "Waves" and is identified using strikingly similar logos, branding, and colors to the Pepperdine Waves.  For example, the marks used by Defendants share no less than six similarities to Pepperdine's mark, including (1) use of a similar font for the word "WAVES"; (2) orange lettering of the word "WAVES"; (3) white outlining around the orange lettering; (4) blue border around the orange and white combination; (5) use of the word "WAVES" in a similar context—on athletic-style clothing to connect the name with a sport, namely basketball; and (6) use of the same overall color scheme (blue, orange, and white).  Fulsome screen captures taken from the *Running Point* trailer here and elsewhere in the complaint are attached at **Exhibit E**. The "WAVES" logos in the below screen captures are identical or nearly identical to Pepperdine's WAVES mark, as identified in the images appearing next to Defendants' use.

-19-

FIRST AMENDED COMPLAINT





Defendants' Use

Pepperdine's Mark




Defendants' Use

Pepperdine's Mark

45.    In another iteration, the WAVES mark appears in orange text with white outlining, then a thicker, blue border.  The number of similarities between the images below cannot be overstated.  In the first 11 seconds of the *Running Point* trailer,[6] a mark identical to Plaintiffs' once again appears, this time in connection with champagne being sprayed across a locker room.

---

[6] *Id.* at 0:11.

-20-

FIRST AMENDED COMPLAINT




Defendants' Use                              Pepperdine's Mark

46.    As another example, the logo used to identify the Waves' basketball court in the series is nearly identical to Pepperdine's own court, which displays its WAVES mark prominently.  The use of an almost identical WAVES mark in similar colors positioned behind the basket to identify the home of the team depicted in Defendants' series is inherently confusing with the way Pepperdine uses its WAVES marks to identify the home of its own team, the real Waves.




Defendants' Use                              Pepperdine's Mark

47.    Defendants' use of Pepperdine's marks in the series and in promotion of the series, which are incorporated by reference, is pervasive.  The use of these marks by Defendants is classic trademark use.  It identifies the series and its subject matter.  The series is about the Waves.  The series and its producers are the "Home

-21-

of" the Waves.  The marks are used as source-identifiers—something producer Mindy Kaling's own social media postings make clear.

48.    Although Defendants' misappropriation continues throughout the series, other examples of Defendants' infringing, nearly identical uses of Pepperdine's marks as reflected in the *Running Point* trailer are shown in the images below, which illustrate the various color combinations used for the WAVES mark, both by Pepperdine and Defendants.



Defendants' Use



Pepperdine's Mark



Defendants' Use



Pepperdine's Mark

-22-

FIRST AMENDED COMPLAINT




Defendants' Use                              Pepperdine's Mark

49.    To further assist in identifying the Waves in *Running Point*, Defendants also use a logo that is nearly identical to Pepperdine's WAVES marks.  In the side-by-side comparison below, the "Waves" logo used by Defendants shows a blue and white wave next to orange text with white outlining, with the wave starting at the bottom left of the logo and circling around to the right.  That logo[7] is virtually identical (or at least strikingly similar) to Pepperdine's mark, as shown on the right in color with a blue wave appearing next to orange text with white outlining, with the wave beginning at the bottom left and circling around to the right.





Defendants' Use                              Pepperdine's Mark

---

[7] *Id.* at 0:37.

-23-

### C.    OTHER "COINCIDENCES" APPEAR DESIGNED TO INVOKE AN ASSOCIATION BETWEEN THE SERIES AND PEPPERDINE'S BRAND

50.    In addition to using Pepperdine's marks to identify the subject of their series, the context in which Defendants use Pepperdine's marks appears designed to invoke an association with Pepperdine and Pepperdine's marks.

51.    For example, the "Waves" in Defendants' series refers to a basketball team.  Pepperdine's basketball team is called the "Waves."

52.    The "Waves" in Defendants' series are based in Los Angeles. Pepperdine's Waves are based in Los Angeles.

53.    The "Waves" conference room in Defendants' series has a framed, blue, orange, and white "37" jersey.[8]  And there is a *second* framed orange and black jersey that uses the number "37" depicted throughout the series.[9]  As discussed above, the "37" jersey holds special prominence as part of Pepperdine's brand, especially in conjunction with its school colors.  It is the jersey that Pepperdine's mascot, Willie the Wave, wears, and it is the numbered jersey most frequently used in Pepperdine's athletic marketing and advertising.  Particularly coupled with the similarities in name, colors, and font, it seems almost inconceivable that Defendants' choice to use Pepperdine's "37" was mere happenstance.

  

Defendants' Use                         Pepperdine's Mark

---

[8] *Id.* at 1:05.
[9] *Running Point*:  *The Travis Bugg Affair*, at 3:47 (Netflix Feb. 27, 2025).

-24-

54.     Defendants' series also utilizes the scenic beauty of Malibu in its trailer and at various points in the show,[10] including images of the coast, and Pepperdine is well-known because of its location and access to the stunning view of the Pacific from Malibu.




Image from the *Running Point* trailer.          Image from Pepperdine University.

55.     Taken together, it is clear that Defendants have not only infringed Pepperdine's marks, but sought to capitalize on its brand: a successful, Los Angeles basketball team named the "Waves," sporting the colors blue, orange, and white, alongside the number "37."

56.     Defendants' series also includes episodes with themes, plots, and dialogue that further suggest its use of Pepperdine's marks is not mere "coincidence."  For example, the central plot of episode two of the series is that a Christian sponsor of the "Waves" basketball team no longer wishes to be affiliated with the "Waves" brand due to the former President's drug use and other reprehensible behavior, as well as other activities surrounding the team and its ownership.  Although Defendants have stated that "the series has nothing to do with Pepperdine as a subject matter" (Defendants' Opposition to Application for Temporary Restraining Order at 12), this plot point reflects some of Pepperdine's own concerns as a Christian institution with having its marks and brands identified with Defendants' show.  It also is an acknowledgment that Defendants were aware

---

[10] Trailer at 0:11.

-25-

that an institution with Christian values, like Pepperdine, would not want to be affiliated with the Waves brand portrayed in the series.

### D.    THE SIMILARITIES HAVE CAUSED AND ARE LIKELY TO CAUSE CONFUSION OR REVERSE CONFUSION

57.    Defendants' infringing acts have caused and are likely to cause confusion (or reverse confusion), mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' portrayal and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' series originates from, is associated with, is affiliated with, or is otherwise authorized by Pepperdine.

58.    Given that Defendants are using Pepperdine's marks just as Pepperdine does—to identify its athletic team—it is difficult to *not* draw similarities between the scenes in Defendants' series and Pepperdine's WAVES marks and common law trademarks.

59.    Separately, the use of Pepperdine's marks is unlawful and in violation of Pepperdine's rights.  Taken together, the similarities between Defendants' use of the marks, in connection with their focus on Los Angeles and beach imagery, their use of the colors blue, orange, and white, and their use of the number "37," all point to willful and deliberate efforts not only to infringe on Pepperdine's marks, but to cause confusion as to the origin of the Waves in *Running Point*.

60.    The similarities are already causing confusion.  For example, searching "Los Angeles Waves Basketball" on popular search engines, like Google, after the show's release yields a mix of results—some showing results related to *Running Point* and some showing results related to Pepperdine.  A search for the same phrase before the show yielded only Pepperdine results.

-26-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

### E.   DEFENDANTS HAVE MARKETED THE SERIES TO SIMILAR CONSUMERS

61.   Using the Waves name and marks, Defendants have intentionally marketed the *Running Point* series to, among others, sports fans and consumers of sports media.  The series is likely to attract basketball fans—the very type of consumer that is likely to draw an (unwanted) association between the "Waves" depicted in the series and the Pepperdine Waves based, in large part, on the strikingly similar WAVES mark.

62.   Defendants have also been advertising and promoting their show to all Netflix subscribers once they log in to their Netflix accounts.  And, further, the show is advertised on Netflix in the genres of, for example, "TV Comedies" and "Sports."[11]

63.   Defendants have been actively advertising and promoting the series with reference to their "Waves basketball team" on social media and billboards throughout Los Angeles, and elsewhere.

64.   Based on the manner in which Hollywood often promotes its product, Pepperdine reasonably anticipates that Defendants may seek to promote the series by, among other things, selling merchandise.  Pepperdine reasonably believes that any such merchandise is likely to include athletics wear or other apparel containing Pepperdine's WAVES mark and thereby further infringe Plaintiff's rights and exacerbate consumer confusion about the source, origin, sponsorship, approval, affiliation, connection, or association for those products.

65.   This reasonable belief is buttressed by the fact that Netflix operates a "Netflix Official Merch Shop," which sells direct-to-consumer merchandise and products based on Netflix series that they promote and stream.[12]  The shop offers

---

[11] *N Series:  Running Point*, NETFLIX, https://www.netflix.com/title/81483318 (last accessed March 7, 2025).

[12] Netflix, *Netflix Shop*, Netflix, https://www.netflix.shop/ (last visited Feb. 18, 2025).

-27-

t-shirts, sweatshirts, hats, water bottles, and other items for sale, bearing marks and images from shows that Netflix offers on its streaming services.

66.   Further, the official Instagram account for the series[13] reposted a video on March 6, 2025 displaying the text: "Need Merchandise!!!" and "Los Angeles Waves."



67.   Defendants have already used Pepperdine's WAVES marks in ways outside of the episodes of the series itself. For example, Defendants are using Pepperdine's WAVES marks (in the same colors) on shirts that they have apparently

---

[13] On information and belief, the show's official Instagram account (@runningpnetflix) was deactivated or deleted on or around March 16, 2025.

-28-

created for promotional purposes that are almost identical to shirts sold by Pepperdine in its own stores.  Mindy Kaling appears on Defendant Kaling International's Instagram account promoting "The Home of the Los Angeles Waves"[14] by wearing a t-shirt that contains Pepperdine's Waves logo in colors and a font that are indistinguishable from Pepperdine's own.  Ms. Kaling does not act in *Running Point* and the picture of her promoting the series identified by an infringing shirt is not part of any expressive work.  It is, in fact, the infringing use of Pepperdine's WAVES mark in a true trademark sense—to promote the series through association with the mark.





Defendant's Use                    Pepperdine's Mark

68.    Following the initiation of this litigation, Kaling International subsequently altered its Instagram biography, removing the reference to the "Home of the Los Angeles Waves."  The biography now reads "currently watching: Running Point on @netflix."  Additionally, the official Instagram account for the *Running Point* series (@runningpnetflix) has been deleted or removed.

---

[14] On information and belief, Kaling International changed its biography on or around March 16, 2025.

-29-

69.    Similarly, in the two images below taken from Instagram accounts of actors involved in the show, the WAVES mark is being used to identify the team on chairs around the set. The chairs use Pepperdine's marks in a color and font indistinguishable from Pepperdine's own uses to identify Defendants' team and show.




70.    Defendants' prominent use of "Waves" as a trademark—and clear intent to produce their own "Waves" merchandise—threatens to supplant Pepperdine's trademark. There is a real risk that Defendants' continued use and promotion of "Waves" to identify *Running Point*, its cast, and its creators (on the show, on social media, and otherwise) could cause "Waves" to become more closely associated with *Running Point* than it is with Pepperdine, creating confusion or reverse confusion. Indeed, the public may see Pepperdine merchandise, athletic teams, or other school branding and believe that Pepperdine is affiliated, associated, or otherwise connected with the fictional "Waves" depicted in *Running Point,* or vice versa.

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

**F.    DEFENDANTS ARE USING PEPPERDINE'S WAVES MARKS IN A TRADEMARK SENSE TO IDENTIFY SOURCE**

71.    As illustrated by the foregoing, as well as more broadly by the manner in which Defendants have promoted their series, by Defendants' determination to focus the series entirely around a team identified by the Waves name and associated marks, and by their pervasive use of the WAVES marks on uniforms and other clothing, in gymnasiums, on walls, on logos, on buildings, and in dialogue throughout the series, Defendants have used Pepperdine's WAVES marks in a manner that is source-identifying for the *Running Point* series.  Defendants' usage of the WAVES marks as a source-identifier—and their intent to do so—is reinforced by their social media and other promotional uses of the Asserted Trademarks outside of the series itself, such as Mindy Kaling's appearance in a "Waves" t-shirt bearing the Pepperdine marks in conjunction with referring to her company as the "home of" the Waves.

72.    As here, where a movie or series makes a fictitious business or entity a central theme or feature, that fictitious business or entity often becomes source-identifying to the movie or series (and at times to the creators or producers as well). Defendants themselves know this.  Both Defendants Netflix and Warner Bros. have previously sought (and been granted) trademark rights in fictitious businesses that are central to and source-identifying of them and their shows.[15]  Examples include:

  a.    Warner Bros. seeking and obtaining trademark protection for "Central Perk" (a fictional business), the coffee shop that is source-identifying of the show *FRIENDS* and Warner Bros. *See* U.S. Reg. No. 8,746,254.

  b.    Warner Bros. seeking and obtaining trademark protection for "AFC Richmond" (a fictional sports team) that is source-identifying of the show *Ted Lasso* and Warner Bros. *See* U.S.

---

[15] *What is a Trademark?*, USPTO, https://www.uspto.gov/trademarks/basics/what-trademark (last accessed March 7, 2025) ("A trademark:  [i]dentifies the source of your goods or services" and "provides legal protection for your brand.").

Reg. Nos. 90,851,033; 90,851,051; 90,851,022; 90,851,037; 90,851,042.

c.    Warner Bros. seeking and obtaining trademark protection for "Chudley Cannons" (a fictional sports team) that is source-identifying of the *Harry Potter* franchise and Warner Bros. *See* U.S. Reg. Nos. 4,876,091; 5,142,071; 5,561,924.

d.    Warner Bros. seeking and obtaining trademark protection for "Gringotts" (a fictional business) that is source-identifying of the *Harry Potter* franchise and Warner Bros. *See* U.S. Reg. Nos. 4,560,670; 4,941,597; 6,072,780.

e.    Netflix seeking and obtaining trademark protection for "Surfer Boy Pizza" (a fictional business) that is source-identifying to *Stranger Things* and Netflix. *See* U.S. Reg. Nos. 97,977,010; 97,249,168.

f.    Netflix seeking and obtaining trademark protection for "Kildare Island Surfboard Co." (a fictional business) that is source-identifying to *Outer Banks* and Netflix. *See* U.S. Reg. No. 90,980,029.

73.    The Los Angeles "Waves" team, while fictional, is central to the *Running Point* series. The entire show is about the team, its management, and its players. And Defendants use the WAVES marks to identify anything and everything associated with that team and the series. It is used on jerseys to identify players, on shirts to identify fans or employees, on stadiums to identify the home arena (even calling it the "Home of the Los Angeles Waves"), etc. With few exceptions, the "Waves" is the only basketball team referred to by name in the show. Although there are many other basketball teams shown and discussed, the names of these teams are largely absent from the dialogue and imagery in the show, being mostly

-32-

referred to by their city—*e.g.*, the "San Francisco team" or the "Boston team," as examples.

74.     This is reinforced by the strategic scenes and costume choices.  For example, exterior signage on the Waves' offices in the Netflix series identifies the building as the "Home of the Los Angeles Waves" team.



As another example, several players appear in the show in shirts that read "Property of Los Angeles Waves," as shown below.  Use of "Waves" on such a shirt (literally proclaiming to be the "property of" something) is source identifying.



Similarly, the scenes depicting the stadium and logos are branded with the same colors to convey the message that this is the "Home" of the Waves team.

-33-

75.     Further indicating Defendants' use of the WAVES marks as a source to identify the *Running Point* series is the fact that the words "Running Point" appear only once at the beginning of each episode, and not again.  The word "Waves" and the WAVES marks appear in the imagery or dialogue of nearly *every* scene in the series to refer to the "Waves" basketball team and to associate the players, management and storyline with the Waves.  The team is the central focus of the show, the star of every conversation, and the WAVES marks are immediately recognized as identifying the *Running Point* series.[16]

76.     In addition, Defendants and others affiliated with the series have been using "Waves" to identify *Running Point* in social media and in other marketing efforts.  For example, in addition to Defendant Kaling International's use of Pepperdine's trademarks to proclaim itself as "home" of the Waves, numerous individuals and entities involved in the show have shared content on social media, as pictured below, that aims to promote and reference the series by specifically connecting *Running Point* to the fictional "Waves" team.

77.     For example, actors, like the one shown below, have posted pictures of themselves in "Waves" jerseys and the caption "SIGNED to the Los Angeles Waves! . . . Check out my dunks on Running Point now on Netflix."  This use of the WAVES marks is another example demonstrating that it is intended to be and in fact is regarded as source-identifying.

---

[16] Netflix's system disallows screenshotting of its media when viewing its shows, in what Pepperdine assumes is an effort to protect copyrighted material.  As a result, Pepperdine has not included screenshots directly from the full-length series, and only includes images from the trailer and publicly available social media posts.

-34-





78.    As another example, another actor posted the image below, which prominently states "Los Angeles WAVES" with the caption "The LA Waves!!" Notably, the name of the show, *Running Point*, was relegated to a hashtag.  This use of the WAVES marks again evidences source-identification.



-35-

FIRST AMENDED COMPLAINT

79.     Other posts prominently include the WAVES marks and statements like "GO WAVES" or "joined the waves" like the posts below.  These posts, which show usage outside of the scenes in the series itself, are evidence of source-identification, just as Defendants intended.  Indeed, in the image on the right, which includes an image of someone in a t-shirt emblazoned with the words "property of" the Waves, Mindy Kaling writes "Go Waves"—identifying the show directly with the misappropriated Pepperdine marks.

 

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT



80.   The posts above, along with numerous advertisements promoted by Defendants, clearly demonstrate that the uses of "Waves" are source-identifying as to the *Running Point* series.  The team name is essentially synonymous with the show's identity and its source.  In fact, as pictured below, the set of *Running Point* used (misappropriated) the WAVES marks to designate chairs, breakfast foods, and other items *not* actually used in—but nonetheless intended to identify their connection to—the series.  In addition to demonstrating the source-identifying nature of the Defendants' infringement, Defendants' procurement of these chairs, t-shirts, cups and other merchandise is itself further infringement of Pepperdine's rights.

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

 

81.    On March 6, 2025, Kate Hudson, the star of the series, announced in a video posted to social media that "[a] good basketball team owner knows when to listen to the fans.  So we hear you, and so did Netflix.  *Running Point* is officially coming back for Season 2!  Thank you so much, everyone who watched the show so far.  I'm just beyond thrilled because you're really the reason why we're able to come back and do another season.  So thank you, and we'll see you next season."[17] Ms. Hudson's reference to herself as a basketball team "owner" and her "team" as having fans reinforces that the WAVES marks are being used in a trademark sense to identify source.

---

[17] Rebecca Luther, *Running Point Renewed for Season 2 at Netflix – Watch Star Kate Hudson's Announcement*, TVLine, (March 6, 2025) https://tvline.com/news/running-point-renewed-season-2-netflix-kate-hudson-1235416464/.

-38-

82.   In addition to being source-identifying as to the *Running Point* series, Defendants' use of the Asserted Trademarks is source-identifying as to the Defendants themselves.   As described above, Kaling International's official Instagram profile shows Mindy Kaling wearing a "WAVES" shirt and (before approximately March 16, 2025) the biography included on the profile stated: "Home of the Los Angeles WAVES."  Kaling International's official Instagram profile has 73,600 followers, and it is referenced and linked to by Mindy Kaling's personal Instagram profile, which has 6,200,000 followers.  Thus Kaling International is using the WAVES marks without permission in a manner intended to identify it and Mindy Kaling as a source (its "Home").

83.   Additionally, Defendants' use of the WAVES marks is source-identifying as to Netflix.  To view the show at all, a viewer must be a Netflix subscriber, and he or she must log into Netflix to see the show.  The series is unavailable from any other source.  Thus by serving as a source-identifier for the show, the WAVES marks also serve as a source-identifier for Netflix, which is the only platform on which the series can be seen.

84.   And when a viewer accesses an episode of *Running Point*, they are first greeted by the Netflix logo.  The viewer then sees the Warner Bros. logo.  Next, the words "A Netflix Series" appear on the screen, followed by "A Warner Bros. Television Production."  And at the end of each episode, the credits list the various contributors to the show such as writers and producers, and the credits identifying roles such as "Waves dancer," followed by images displaying "Kaling International, Inc.," "Warner Bros. Television" and lastly, "Netflix."

85.   Similarly, at the series premiere for the show on February 13, 2025, the tickets to the premiere showed three logos:  One for "Running Point," one for "Netflix," and one for the "Waves."  This use of "Waves" is source identifying.  The "Waves" logo is right next to and is the same size as the "Netflix" logo.  Netflix

-39-

FIRST AMENDED COMPLAINT

would not have used the name and logo for "Waves" on its premiere if it did not intend to use it in a source identifying way.

 

86.     The show is all about the Waves and begins and ends with Defendants. Their logos are prominently displayed in connection with *Running Point*. And as Defendants have admitted, they have spent millions promoting the series which they identify by pervasive use of the WAVES marks that belong to Pepperdine.

87.     Additionally, third parties are now selling several variations of Waves-branded merchandise under the description "Running Point."[18]

---

[18] *E.g.*, *Los Angeles Waves (Variant) T-Shirt*, TEEPUBLIC, https://www.teepublic.com/t-shirt/73177941-los-angeles-waves-variant (last accessed March 12, 2025); *Los Angeles Waves T-Shirt*, TEEPUBLIC, https://www.teepublic.com/t-shirt/73177863-los-angeles-waves (last accessed March 12, 2025); *Los Angeles Waves Basketball T-Shirt*, TEEPUBLIC, https://www.teepublic.com/t-shirt/73177632-los-angeles-waves-basketball?store_id=10179 (last accessed March 12, 2025).

-40-



SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT



88.    The sale of infringing WAVES merchandise under the description "Running Point" further confirms that Defendants' use of "Waves" is source-identifying to Defendants and their show.  It demonstrates that third parties tie the use of the Waves mark to the show and therefore perceive the mark as source identifying.  The fact that merchandisers are creating merchandise based upon the use of Waves in the series also increases the already significant likelihood of confusion between the show and the Pepperdine Waves, and it demonstrates the irreparable harm that Pepperdine has suffered (and, through future seasons, is likely to continue to suffer) as more third-party infringers use the Pepperdine Waves mark in an unauthorized manner to refer to the *Running Point* series.

89.    As another example, on a website called "Creative Design" there is a "Running Point Property of Los Angeles Waves 1952 T-Shirt" being sold.[19]  This

_____

[19] *Running Point Property of Los Angeles 1952 T-Shirt*, CREATIVEDESIGN, https://creativetdesign.com/product/running-point-property-of-los-angeles-waves-1952-t-shirt/ (last accessed March 16, 2025).

-42-

demonstrates that the public perceives the use of WAVES by Defendants to be in a trademark sense.  Defendants' use of "Waves" is source identifying as to the show.



90.    Similarly, third parties are already making and marketing athletic wear with the "Waves" mark.  The description for the jersey displayed below states:  "Be the ultimate fan with this exclusive Los Angeles Waves Replica Basketball Jersey from the hit TV show . . . ."  Third parties clearly view "Waves" as source identifying to *Running Point* and Defendants.[20]

---

[20] *Los Angeles Waves Replica Basketball Jersey 2025 TV Show*, JORDAN'S SECRET STUFF, https://jordanssecretstuff.com/products/los-angeles-waves-replica-basketball-jersey-2025-tv-show (last accessed March 16, 2025).

-43-



91.    In addition to demonstrating that Defendants' infringing uses of the Waves trademark serve as an indicator of source, these third-party infringements further harm Pepperdine.    Defendants are responsible for these third-party infringements because, but for their own infringement of the Asserted Trademarks, these third-party infringements would not exist.[21]

---

[21] *E.g., Los Angeles Waves (Variant) Relaxed Fit T-Shirt*, REDBUBBLE, https://www. redbubble.com/i/t-shirt/Los-Angeles-Waves-Variant-by-huckblade/169092547. XK1BC?country_code=US&gad_source=4&gclid=Cj0KCQjwkN--BhDkARIs AD_mnIqJS16CvJCvj8K2cG6DKIF2RN86FdaVwV8ECL7j5ydvCKl JuC90mAMaApV1EALw_wcB&gclsrc=aw.ds (last accessed March 21, 2025).

-44-



Infringing Use                                                          Pepperdine's Mark

## G.     DEFENDANTS' USE IS EXPLICITLY MISLEADING AS TO SOURCE OR CONTENT

92.     On information and belief, Defendants knowingly and/or intentionally named the central team in *Running Point* the "Waves" so as to trade on the good will and reputation of the Asserted Trademarks.  As alleged in this Complaint, Defendants knew or should have known about the Asserted Trademarks, that the Asserted Trademarks were already in use, and that they were in use for the same purpose (sports-related entertainment), and that they appeared in virtually identical ways—strikingly similar font, the same colors (blue, orange, and white), the same context, and referring to a Los Angeles-based basketball team.

93.     Defendants' use of "Waves" in the show is explicitly misleading as to the product's (*i.e.*, *Running Point*'s) content.  For example, with minimal artistic expression, Defendants use the WAVES marks in the same way that Pepperdine uses it—to refer to a Los Angeles-based basketball team.  Similarly, Defendants' use of the WAVES marks is explicitly misleading as to content because consumers will be confused about an explicit misrepresentation of Pepperdine's endorsement of the team, the show, and its contents.

94.     Defendants' use of "Waves" on products and goods that do not appear in the show (like the Waves shirts worn by Mindy Kaling and others, the Waves

-45-

chairs, the Waves granola cans, etc.) is also explicitly misleading as to source.  A consumer seeing such products on celebrities' clothes and on products will be confused about whether Pepperdine is the source of those products.  Or, in the case of reverse confusion, may see Pepperdine's merchandise and think that it originated from Defendants.

### H.    DEFENDANTS' USE DOES NOT ALIGN WITH PEPPERDINE'S VALUES

95.    Defendants' infringing use of Pepperdine's marks is not consistent with the values and Christian morals that have built Pepperdine's reputation in the community and nationwide.

96.    In the under three-minute trailer of Defendants' series, numerous examples of risqué, inappropriate, and illegal behavior are depicted and celebrated.

97.    There is a plethora of references to alcohol and illegal uses of substances, with images of alcohol shown no less than three times in the two minute and forty-three second trailer.  There is also reference to drug use as being routine—actor Kate Hudson's character is heard stating that she "might have a Xani on the plane."[22]  Excessive alcohol and illegal drug use are not consistent with Pepperdine's values, nor are they consistent with its athletic programming.  Indeed, as an alcohol- and drug-free university, with few exceptions, it is a violation of Pepperdine's Student Code of Conduct for any student to be in the presence of alcohol, controlled substances, or drug-related paraphernalia on any of Pepperdine's campuses.

---

[22] Trailer at 2:20.

-46-



*Images from Defendants' Running Point trailer.*

98.     In addition, the *Running Point* trailer goes on to depict sexually charged images and dialogue, including phrases such as "I seen your titties on the internet so I can't really take you serious"[23] and "everyone is horny for everyone they work with."[24]  The trailer and the show even include a topless scene of Kate Hudson with Pepperdine's WAVES mark shown prominently.



Defendants' Use

[23] *Id.* at 2:14.
[24] *Id.* at 1:41.

99.    Because they are being used to identify the series and the team it is about, Pepperdine's marks are also associated with other topics in the series that are wholly inconsistent with Pepperdine's values, such as images of violent altercations (pictured below) and the use of foul and derogatory language such as "you are the biggest bitch,"[25] and "I should be a crappy interior designer like all my shitty friends from high school."[26]



Image from Defendants' *Running Point* trailer.

100.    The themes shown in the trailer continue through the episodes that comprise the first season of Defendants' series.  To name just a few, the series discusses and makes light of severe addiction to "crack," frequently depicts and references use of illicit drugs, conveys and simulates sexual intercourse, and frequently discusses sexually transmitted diseases.  All of these are subjects that are inconsistent with Pepperdine's values and image.

---

[25] *Id.* at 1:49.
[26] *Id.* at 2:05.

101.  Pepperdine does not wish to be tied to these messages and imagery of *Running Point*.  Defendants' improper uses of the Asserted Trademarks are likely to cause an unwanted association with Pepperdine's brand and image, as well as dilute, tarnish, and disparage Pepperdine's reputation and marks.  This will additionally harm Pepperdine's ability to recruit students, athletes, and faculty and pursue its overall mission.

102.  The first season of the *Running Point* series is 10 episodes— approximately 300 minutes.  The pervasive use of Pepperdine's marks is causing irreparable harm.  Defendants' series has been picked up for a second season, which unless enjoined will lead to further infringement and harm.

## I.     DEFENDANTS KNEW OR SHOULD HAVE KNOWN ABOUT THE ASSERTED TRADEMARKS.

103.  Defendants and their associates knew or should have known of the Asserted Trademarks before production of *Running Point*.

104.  A simple web search for "what basketball teams are in Los Angeles" (before the release of the series) would have revealed the Pepperdine Waves.  Even the most limited of due diligence would have revealed a basketball team bearing the same name, the same marks, the same color palettes, and in the same city.



105.    And running a simple web search for "Los Angeles waves basketball" (before release of the series) would have immediately resulted in numerous Pepperdine Waves-related articles and sources.  Had Defendants conducted even a simple search on the name of their "fictional" team, they would have been on notice of the well-publicized and popular Pepperdine WAVES marks and basketball team.



106.    Additionally, any basic search of registered trademarks on the U.S. Patent and Trademark Office's website immediately identifies on the first page of results Pepperdine's ownership of the WAVES marks, which were already in existence and long in use.

107.    As discussed above, the Pepperdine marks and the manner in which they are used by Pepperdine were prominently displayed in a conference room and, during the NCAA tournament, on the court floor in Staples Center (now Crypto.com Arena)—the home of Ms. Buss's Lakers.  Additionally, based on self-reported data

from alumni, several Pepperdine alumni have gone on to work at Netflix (at least 46 alumni), Warner Brothers (at least 79 alumni), and the Lakers (at least 6 alumni)—not to mention alumni athletes that played for the Lakers.

108.    Defendants Netflix, Warner Bros., and Kaling International are sophisticated and prominent companies in the entertainment industry.  As such, Defendants do or should have robust and thorough trademark clearance processes and procedures in place to ensure avoidance of infringement on intellectual property.

109.    Given that even the simplest and most basic of searches would have identified Pepperdine as the owner of the Asserted Trademarks, and Defendants' substantially identical uses of the Asserted Trademarks, Defendants intentionally used the Asserted Trademarks despite knowing that Pepperdine owned the relevant trademarks and had a Los Angeles basketball team with the same name and same colors.  The infringement is therefore willful.  To the extent Defendants did not conduct a trademark search prior to using the Asserted Trademarks, their failure to do so is reckless and their infringement is also willful.

110.    Pepperdine first learned of Defendants' use of its intellectual property on or about January 30, 2025.  Pepperdine promptly contacted Defendants in an effort to address the situation but Defendants declined to alter or halt their use of the Asserted Trademarks or Pepperdine's other intellectual property.  Their continued infringement is willful.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement under 15 U.S.C. § 1114**
**Against All Defendants)**

111.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 110 as if fully set forth herein.

112.    Pepperdine's Asserted Trademarks are distinctive and have become well-known and associated with its university and prestigious athletics program. This is a result of the extensive use of the marks, as well as advertising and sales of merchandise bearing the Asserted Trademarks.

-51-

113. Defendants did not use the Asserted Trademarks in commerce until decades after Pepperdine began using the marks in connection with its University athletics programs.

114. After identifying the unauthorized use of its marks in the *Running Point* trailer, but before the release date set for the series, Pepperdine promptly informed Defendants that they were using Pepperdine's owned WAVES marks in an unauthorized manner.

115. Defendants have refused to take any action to adjust or halt their use of the Asserted Trademarks, but instead assert that they do not infringe the Asserted Trademarks or Pepperdine's other intellectual property rights.

116. Defendants have advertised *Running Point* using marks that are confusingly similar to the Asserted Trademarks, including on the Netflix website,[27] Netflix social media accounts,[28] the Warner Bros. website,[29] Warner Bros. social media accounts,[30] and YouTube.[31]

117. Defendants have used marks that are confusingly similar to the Asserted Trademarks in the *Running Point* series, which they have displayed and made available to hundreds of millions of consumers.

118. Defendants have used marks that are confusingly similar to the Asserted Trademarks on clothing and costumes, t-shirts and jerseys worn by players, and gym advertising materials, as depicted in *Running Point*.  Defendants have also used the marks on clothing shown outside of the series itself, such as on t-shirts and

---

[27] Jean Beatley & Brookie Mcilvaine, *Basketball Comedy Running Point Tips Off in February:  Watch the Trailer*, Tudum by Netflix (Jan. 30, 2025), https://www.netflix.com/tudum/articles/mindy-kaling-kate-hudson-series-news.
[28] Netflix (@netflix) | Instagram, https://www.instagram.com/p/C7AI2U2Onvc/ (Jan. 30, 2025); Netflix, Facebook, https://www.facebook.com/warnerbrostv/videos/running-point-trailer/1663604560932958/ (Jan. 30, 2025).
[29] *Running Point*, Warner Bros., https://www.warnerbros.com/tv/running-point.
[30] Warner Bros. (@warnerbrostv) | Instagram, https://www.instagram.com/warnerbrostv/reel/DFdS8dSP_mr/ (Jan. 30, 2025).
[31] *Running Point* | Official Trailer | Netflix, YouTube (Jan. 30, 2025), https://www.youtube.com/watch?v=thA5bHMjOI4.

-52-

FIRST AMENDED COMPLAINT

other clothing posted on social media.  These uses infringe on Pepperdine's class 25 rights on clothing using or bearing the marks.

119.   Defendants have further used marks that are confusingly similar to the Asserted Trademarks in promotional materials, fictionalized athletic events and games, and in images advertising *Running Point*.  These uses further infringe on Pepperdine's class 41 rights for use of the marks in entertainment services and in arranging and conducting athletic events and tournaments.

120.   As described above, Defendants are using in commerce, through their promotion and publication of the *Running Point* trailer and through their promotion and publication of the *Running Point* series, without Pepperdine's authorization or consent and in an explicitly misleading manner, Pepperdine's Asserted Trademarks in connection with the advertisement, offering for sale, and/or sale of *Running Point*. Defendants have infringed the Asserted Trademarks and intend to continue to infringe by releasing *Running Point*, including by continuing to show the episodes already released and renewing the series for a second season.

121.   As a direct and proximate result of Defendants' infringement, third-party infringers and counterfeiters have offered for sale, and on information and belief, sold infringing products bearing Defendants' infringing logos.

122.   This is causing additional infringement and harm to Pepperdine.  On information and belief, Defendants have taken no action to stop these additional acts of infringement.

123.   Defendants' unlawful use of the Asserted Trademarks reflects their intent to trade upon the goodwill of Pepperdine's marks by causing confusion and mistake among customers and the public, and to deceive the public into believing that *Running Point*'s use is associated with, sponsored by, or approved by Pepperdine when it is not.  Defendants' unauthorized use of Pepperdine's marks is likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1114.

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

124.    Defendants have used the Asserted Trademarks in a source-identifying manner, both as to the series *Running Point* and as to the Defendants themselves.

125.    Defendants' acts of infringement have caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

126.    Defendants' acts of infringement have caused and will continue to cause irreparable injury to Pepperdine, including through damage to its reputation and goodwill as well as through the loss of control over its reputation and brand. Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

127.    Defendants' acts of infringement were and are willful and deliberate.

**SECOND CAUSE OF ACTION**
**(Contributory Trademark Infringement under 15 U.S.C. § 1114**
**Against All Defendants)**

128.    Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 127 as if fully set forth herein.

129.    Defendants entered into an apparent or actual partnership or joint venture for purposes of producing, broadcasting, and promoting *Running Point*, as evidenced by their coordinated marketing of the series, and, based on information and belief, worked together to produce and promote *Running Point* for the benefit of Netflix, Warner Bros., and Kaling International.

130.    Based on information and belief, Warner Bros. was able to, and did, exercise control over, and willfully, deliberately, and intentionally induced Defendants Netflix and Kaling International, to infringe the Asserted Trademarks.

131.    Based on information and belief, Kaling International was able to, and did, exercise control over, and willfully, deliberately, and intentionally induced Defendants Netflix and Warner Bros., to infringe the Asserted Trademarks.

-54-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

132.   Based on information and belief, Netflix has similarly been able to, and did, exercise control over, and willfully, deliberately, and intentionally induced Warner Bros., Kaling International, Instagram, Facebook, YouTube and others, to infringe the Asserted Trademarks by promoting and hosting the *Running Point* trailer on their platforms.

133.   Defendants' contributory infringement has caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

134.   Defendants' contributory infringement has caused and will continue to cause irreparable injury to Pepperdine, including through damage to its reputation and goodwill as well as through the loss of control over its reputation and brand. Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

135.   Defendants' conduct was and is willful and deliberate.

### THIRD CAUSE OF ACTION
**(False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A)
Against All Defendants)**

136.   Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 135 as if fully set forth herein.

137.   By misappropriating the Asserted Trademarks, Defendants have misrepresented to the relevant consuming public that Pepperdine has endorsed and/or is affiliated with *Running Point*, thereby creating a likelihood of confusion as to whether *Running Point* is associated with, sponsored by, or approved by Pepperdine, and it is not.

138.   As a result of the allegations set forth herein, Defendants have created a likelihood of injury to Pepperdine's reputation and to the reputation and goodwill

FIRST AMENDED COMPLAINT

of the Asserted Trademarks, especially due to the explicit and derogatory nature of the *Running Point* series.

139. Defendants' misappropriation has caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

140. Defendants' misappropriation has caused and will continue to cause irreparable injury to Pepperdine, including through damage to its reputation and goodwill as well as through the loss of control over its reputation and brand. Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

141. Defendants' conduct was and is willful and deliberate.

## FOURTH CAUSE OF ACTION
**(False Advertising under 15 U.S.C. § 1125
Against All Defendants)**

142. Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 141 as if fully set forth herein.

143. In violation of 15 U.S.C. § 1125, Defendants' marketing, advertising, promotion, and publication of *Running Point*, as described above, and the unauthorized use of Pepperdine's Asserted Trademarks in these actions in commerce, are an express and/or implied implication that their infringing work was associated with, endorsed by, or approved by Pepperdine, and therefore constitutes false advertising.

144. Consumers are likely to be misled and/or deceived into believing that the Defendants' use of the Asserted Trademarks in *Running Point* is associated with, endorsed by, or approved by Pepperdine, when this use is, in fact, not.

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

145.   Defendants are proficient and sophisticated corporations who knew or should have known that their representations and conduct in their use of the Asserted Trademarks were false or likely to mislead.

146.   Defendants' acts have caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

147.   Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine, including through damage to its reputation and goodwill as well as through the loss of control over its reputation and brand.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

148.   Defendants' conduct was and is willful and deliberate.

## FIFTH CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code § 14247, Trademark Dilution Against All Defendants)

149.   Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 148 as if fully set forth herein.

150.   Due to the decades of use, popularity, and success of the Pepperdine Waves, the Asserted Trademarks have been famous long before Defendants used the marks in *Running Point*.

151.   Defendants' use of the Pepperdine's Asserted Trademarks in advertising and promoting *Running Point*, as well as within *Running Point* itself, has been for their commercial gain.  This use dilutes the quality and tarnishes the public image of Pepperdine's Asserted Trademarks, likely causing actual dilution.  This impairs Pepperdine's ability to identify and distinguish its goods and services, including WAVES merchandise, from those of the Defendants.

152.   Defendants' references to substance use, violence, sexually explicit imagery and dialogue, and foul language in conjunction with their improper use of Pepperdine's Asserted Trademarks, links the themes of the show to Pepperdine in

-57-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

inappropriate and disparaging ways, harming Pepperdine's reputation and belittling the upstanding values it upholds.

153.   Defendants' acts have caused and will continue to cause Pepperdine damage in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from continuing in their wrongful actions.

154.   Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine, including through damage to its reputation and goodwill as well as through the loss of control over its reputation and brand.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

155.   Defendants' conduct was and is willful and deliberate.

### SIXTH CAUSE OF ACTION
**(Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*
Against All Defendants)**

156.   Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 155 as if fully set forth herein.

157.   The foregoing acts and conduct of Defendants constitute deceptive business practices that are both unlawful and unfair under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").

158.   Business and Professions Code section 17206 imposes civil liability of not more than $2,500 for each violation of any act of unfair competition, as defined in Business and Professions Code section 17200, and entitles Plaintiff to disgorgement, injunctive relief, and an award of attorneys' fees.

159.   Defendants engaged in, and continue to engage in, unlawful business practices in violation of the UCL through their violations of both statutory and common law trademark infringement, dilution, false advertising, and unfair competition.

160.   *First*, as alleged above, Defendants have infringed and intend to continue to infringe Pepperdine's Asserted Trademarks protecting the Pepperdine

-58-

Waves and are using these marks in a television series completely antithetical to the values and beliefs on which Pepperdine's reputation is based.

161.  *Second*, as alleged above, Defendants have violated and continue to violate the Lanham Act, 15 U.S.C. § 1051 *et seq.* in connection with Defendants' marketing, advertising, promotion, and offering for sale its series *Running Point*.

162.  As a direct and proximate result of Defendants' unfair and unlawful conduct, Pepperdine has been harmed and Defendants have been unjustly enriched, for which restitution and/or disgorgement is appropriate.

163.  Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine, including through damage to its reputation and goodwill as well as through the loss of control over its reputation and brand.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

164.  Defendants' conduct was and is willful and deliberate.

### SEVENTH CAUSE OF ACTION
**(Violation of Cal. Bus. & Prof. Code False Designation of Origin § 17500 *et seq.* Against All Defendants)**

165.  Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 164 as if fully set forth herein.

166.  By misusing the Pepperdine marks, the Defendants have falsely represented to the relevant public that Pepperdine endorses or is affiliated with *Running Point*, creating confusion about whether *Running Point* is associated with, sponsored by, or approved by Pepperdine, which it is not.

167.  As evidenced by the allegations stated herein, Defendants have harmed Pepperdine's reputation and the reputation and goodwill of the Asserted Trademarks, particularly because of the explicit and derogatory nature of the *Running Point* series, which includes themes of sexual imagery and content, alcohol and substance use and abuse, violence, and foul language, all of which are antithetical to Pepperdine's mission and Christian values.

-59-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

168.   Defendants knew or should have known their express and/or implied representations and conduct were false or likely to mislead.

169.   Defendants' acts have caused and will continue to cause irreparable injury to Pepperdine, including through damage to its reputation and goodwill as well as through the loss of control over its reputation and brand.  Such injury will continue unless Defendants are preliminarily and permanently enjoined from further violation of Pepperdine's rights, for which it has no adequate remedy at law.

170.   Defendants' conduct was and is willful and deliberate.

**EIGHTH CAUSE OF ACTION**
**(California Common Law Unfair Competition**
**Against All Defendants)**

171.   Pepperdine hereby incorporates by reference the allegations set forth in paragraphs 1 through 170 as if fully set forth herein.

172.   Through their use of nearly identical and confusingly similar variations of the Asserted Trademarks, Defendants have willfully and without the permission or authorization of Pepperdine, the owner of the Asserted Trademarks, appropriated the trademark property of Pepperdine.  Because of this, Defendants have irreparably harmed Pepperdine's investment and goodwill in its marks and reputation.

173.   By virtue of the allegations contained herein, Defendants actions are likely to have caused confusion, mistake, or deception as to the source of *Running Point*'s use of protected marks.  These actions by Defendants have caused damage and irreparable injury to Pepperdine.

**DEMAND FOR RELIEF**

WHEREFORE, Pepperdine respectfully requests that the Court enter judgment against the Defendants as follows:

A.   For entry of preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 prohibiting Defendants and each of their agents, owners, shareholders, partners, employees, attorneys, assigns, and all others from committing further infringing acts including:

   a.   Using any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to Pepperdine's Asserted Trademarks in the advertising,

-60-

FIRST AMENDED COMPLAINT

distribution, showing, streaming, marketing, selling, promotion, and/or sale of *Running Point* or related goods or services;

b.    Engaging in any further acts of infringement, including in the making and promotion of *Running Point* Season 2;

c.    Engaging in any acts constituting unfair competition;

d.    Engaging in any activity likely to dilute the distinctiveness of Pepperdine's Asserted Trademarks;

e.    Making, implying, or displaying statements or representations that are likely to lead the public to believe that Pepperdine in any way approved or endorsed the unlawful use of the Asserted Trademarks in *Running Point* or its affiliated materials and merchandise;

f.    Aiding, assisting, or abetting any other individual or entity in doing any act prohibited under any claim alleged herein;

g.    Merchandising, marketing, advertising, selling, or offering to sell any merchandise including any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to the Asserted Trademarks in connection with *Running Point* or related goods or services;

h.    Registering of any copyright, trademark, or other intellectual property right including any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to the Asserted Trademarks; and

i.    Using, registration, or reservation of any domain name, social media name, or similar domain or social networking name or page that includes the Asserted Trademarks;

B.    For an award to Pepperdine of treble its actual damages for trademark infringement under 15 U.S.C. § 1117(a);

C.    For an order that Defendants account to and pay over to Pepperdine all profits derived from its infringing use of the Asserted Trademarks;

D.    For an order directing Defendants to engage in corrective advertising to disclaim any association between Pepperdine and Running Point, to remedy the actual and potential customer confusion in the marketplace due to Defendants' unlawful acts; and

E.    For an award of attorneys' fees and costs, prejudgment interest, and such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Pepperdine respectfully requests a jury trial on all issues so triable.

-61-

SULLIVAN & CROMWELL LLP

FIRST AMENDED COMPLAINT

Dated:    March 28, 2025

*/s/Andrei Iancu*
Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:  (650) 461-5600

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone:  (310) 979-9190

*Attorneys for Plaintiff Pepperdine University*