Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:  (650) 461-5600

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone: (310) 979-9190

*Attorneys for Plaintiff Pepperdine University*

*(ADDITIONAL COUNSEL LISTED ON THE FOLLOWING PAGE)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEPPERDINE UNIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> NETFLIX, INC., WARNER BROS. ENTERTAINMENT INC., and KALING INTERNATIONAL, INC., <br><br> Defendants. | Case No. 2:25-CV-01429-CV-ADS <br><br> **JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT** <br><br> Courtroom:  5D <br> Scheduling Conference:  Not yet set <br> Judge:  Hon. Cynthia Valenzuela |

DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
MATT KLINE (S.B. #211640)
mkline@omm.com
AMY R. LUCAS (S.B. #264034)
alucas@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, California  90067-6035
Telephone:   +1 310 553 6700
Facsimile:    +1 310 246 6779

*Attorneys for Defendants Netflix, Inc., Warner Bros. Entertainment Inc., and Kaling International, Inc.*

-i-

Reserving all rights, the parties to the above captioned action jointly, by and through their undersigned counsel, submit this Joint Rule 26(f) Report pursuant to Federal Rule of Civil Procedure 26(f).

Pursuant to Local Rule 26-1 and Rule 26(f), a meet-and-confer was held by videoconference on April 25, 2025.[1]  The meet-and-confer was attended by Robert Sacks and Aviv Halpern for Plaintiff Pepperdine University ("Pepperdine" or "Plaintiff"), and by Matt Kline, Amy Lucas, and Emma Lux for Defendants Netflix, Inc., Warner Bros. Entertainment Inc., and Kaling International, Inc. ("Defendants").

## I.  JURISDICTION AND SERVICE

Subject Matter Jurisdiction.  The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 over Pepperdine's claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and presently has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under state law because they arise out of the same case or controversy as the federal claims.

Personal Jurisdiction and Venue.  There is no dispute between the Parties regarding the existence of personal jurisdiction or venue.  Plaintiff and Defendants are all found in this District.

Service.  No parties remain to be served, and there is no dispute about service.

## II.  STATEMENT OF THE CASE

A.  Plaintiff's Statement of its Claims:

Founded in 1937, Pepperdine is a prestigious, non-profit Christian university based in Los Angeles with top-ranked undergraduate and graduate programs.  Since its founding,

---

[1] In Plaintiff's view, given that Defendants appeared on February 24, 2025, pursuant to Rule 26(f) and Rule 16(b), the deadline for the parties to hold a 26(f) conference was April 4, 2025, and Plaintiff reached out on multiple occasions before that date.  Defendants disagreed with this reading and objected to holding a Rule 26(f) conference at this early stage, when the Court has not yet issued an Order Setting Scheduling Conference.  The parties exchanged correspondence on this subject and held a meet-and-confer Zoom.  To avoid unnecessary motion practice, Defendants agreed to hold the conference subject to its reservation of all rights and pending motions to dismiss and to stay discovery.

Pepperdine has used the name "Waves" for its athletic teams and the colors blue, orange, and white.  To protect the Waves name and brand, Pepperdine sought and obtained trademark protection.  As relevant here, Pepperdine is the registered owner of three valid and incontestable trademarks:  U.S. Reg. No. 2,668,597; Reg. No. 2,967,811; and Reg. No. 2,903,783 (together, the "Asserted Marks").

On February 27, 2025, Defendants released the *Running Point* series, which is centered around a Los Angeles-based basketball team that, like Pepperdine's, is called the "Waves" and whose colors are blue, orange, and white.  Defendants use "Waves" logos and branding throughout the series and on marketing and promotional materials—including trailers, tickets to the show's premiere, and social media—as well as shirts and other physical merchandise.  Defendants did not seek Pepperdine's permission or a license.  Defendants' use of the "Waves" marks is central to the series and Defendants' promotion of the series.  So much so that the "Waves" mark serves as a source-identifier—*i.e.,* it creates an association in the eyes of consumers or viewers between the mark and the *Running Point* series.  By using Pepperdine's "Waves" mark at least in part in such a manner—*i.e.*, using the trademark as a trademark—Defendants are liable for infringement and cannot claim the immunity they wrongly insist exists under *Rogers* v. *Grimaldi*, 875 F.2d 994 (2d Cir. 1989).  *See Jack Daniel's Properties, Inc.* v. *VIP Properties LLC*, 599 U.S. 140, 155-56 (2023).

Pepperdine asserts eight claims in its Amended Complaint:  (1) trademark infringement under 15 U.S.C. § 1114; (2) contributory trademark infringement under 15 U.S.C. § 1114; (3) false designation of origin under 15 U.S.C. § 1125; (4) false advertising under 15 U.S.C. § 1125; (5) trademark dilution under Cal. Bus. & Prof Code § 14247; (6) deceptive business practices under Cal. Bus. & Prof Code § 17200 *et seq.*; (7) false designation of origin under Cal. Bus. & Prof Code § 17500 *et seq.*; and (8) unfair competition under California common law.  Pepperdine seeks injunctive relief and money damages.

B.    Defendants' Response:

The Court correctly determined, in denying Pepperdine's motion for a TRO, that "Pepperdine cannot succeed on its claims," given the First Amendment protections extended creative works like the *Running Point* series.  TRO Order [Dkt. No. 26] ("Order") at 8.  Pepperdine tried to plead around the governing *Rogers* test in its amended complaint ("FAC"), but none of its new allegations change the analysis.  *See* Defs. Mot. to Dismiss, [Dkt. No. 40] ("MTD") at 8–16.  The FAC asserts the legal conclusion that Defendants use the Waves marks "in a manner that is source-identifying for the *Running Point* series," FAC ¶ 71, and complains that Waves marks appear in some promotional materials.  But these theories run headlong into authorities from this Circuit and others confirming they do not suffice.  *See, e.g.*, *Twentieth Century Fox Tele. v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196–97 (9th Cir. 2017) ("[T]he balance of First Amendment interests struck in *Rogers* and *Mattel* could be destabilized if … expressive works were protected but could not be" promoted); *JTH Tax LLC v. AMC Networks, Inc.*, 694 F. Supp. 3d 315, 330 n.2 (S.D.N.Y. 2023) ("*Rogers* balancing test applies … to expressive works of hybrid nature, combining artistic expression *and commercial promotion*" including "advertisements and promotional materials") (emphasis added).

Defendants are especially concerned that Pepperdine is seeking to expand the speech-chilling nature of this case by needlessly naming Mindy Kaling's company and seeking onerous discovery of all Defendants before the Court can rule on the pending MTD.  Defendants thus move to stay discovery.  *See Mujica v. AirScan, Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."); *Gerritsen v. Warner Bros. Entmt., Inc.*, 2015 WL 4570081, at \*2 (C.D. Cal. Mar. 2, 2015) (prohibiting discovery in case involving the movie *Gravity* until the Court determined plaintiff stated a valid claim).

As this Court already found in its reasoned Order, *Running Point* is an expressive work to which *Rogers* applies, and Pepperdine cannot meet either prong of the *Rogers* test.  *See* Order at 7–8.  The name Waves has obvious artistic significance in a show set in

Southern California, and *Running Point*'s title cards and credits make plain who its source is: Warner, Netflix, and Mindy Kaling. *See* Order at 8. Pepperdine does not allege that *Running Point* refers to Pepperdine University as it source. *E.g.*, *id.*; MTD at 17. All eight claims in Pepperdine's FAC fail under *Rogers*. They fail for other reasons, *e.g.*, MTD at 18–21, and should be dismissed now, with prejudice.

## III. LEGAL ISSUES

Some of the key legal issues raised by this case are:

    a.    Does the *Rogers* test apply to Pepperdine's claims?

    b.    If the *Rogers* test applies, are Pepperdine's causes of action barred in whole or in part?

    c.    Assuming *Rogers* does not bar its claims, whether Pepperdine has established each of the elements of its causes of action, including any damages?

    d.    Assuming Defendants do not prevail on their arguments pressed in their Motion to Dismiss, whether Defendants have established each of the elements of any affirmative defenses they may raise?

## IV. PARTIES AND EVIDENCE

Parties.

    a.    *Plaintiff*: Pepperdine University

    b.    *Defendants*: Netflix, Inc., Warner Bros. Entertainment Inc., and Kaling International, Inc.

Witnesses.

- Plaintiff's Anticipated Witnesses:
  - Individuals from Pepperdine to provide background; establish Pepperdine's creation, registration, and use of the Asserted Marks; and address impact and harm from the infringement;

- Defendants and their principals concerning the development of *Running Point* and use of the Asserted Marks by Defendants, Defendants' knowledge of Pepperdine's trademarks; promotion, and marketing; and financial matters;
- Third party witnesses as might be revealed through discovery who were involved in trademark searches; the adoption and use of the "Waves" name and logo in *Running Point*; financial matters; and promotion, marketing, and merchandising;
- Any expert witnesses; and
- Additional individuals with relevant information identified during discovery.
- Defendants' Anticipated Witnesses:
  - Defendants set forth these disclosures in its Initial Disclosures.

Evidence.

a.    *Plaintiff's Statement:*

Subject to further investigation and discovery and without limitation, Plaintiff anticipates that evidence will cover, among other things, Pepperdine's trademarks, its history and prominence as a leading educational institution with religious affiliation, its promotion and use of the Asserted Marks, confusion, and the impact and significance of Defendants' infringement. Evidence will also cover Defendants' use of the Asserted Marks in the *Running Point* series and in promotion, marketing and social media; the process through which Defendants created and developed *Running Point* and decided to use the "Waves" mark in the manner it did; Defendants' knowledge of Pepperdine's trademarks and its use of the "Waves" marks to identify its basketball and other athletic teams; and Defendants' revenues and profits relating to the *Running Point* series. Pepperdine is currently unaware of the identity of third parties who may have been involved in the events relevant to Defendants' infringement, which it expects will be determined during discovery.

With respect to Defendants' Statement below, Plaintiff objects to Defendants' improper attempt to misuse this joint 26(f) report as though it were a substantive brief, including to argue their defenses based on inadmissible hearsay evidence not in the pleadings, rather than to provide an overview and background to enable the Court to set an appropriate schedule in this case. The Court's Standing Order requires that the parties provide "key documents or other evidence concerning the main issues in the case." The arguments included by Defendants go way beyond that and do not involve "key" documents or evidence but even go so far as to include a student article in a student newspaper and hearsay quotes from third-party interviewees. Although Plaintiff has refrained from responding in kind in a 26(f) report, if anything, Defendants' excessive arguments reinforce why there are many factual disputes in this case and why discovery and a trial will be necessary to resolve them.

b. *Defendants' Statement:*

As noted above, Defendants do not believe that discovery is warranted presently. Discovery is not needed to decide Defendants' pending motion to dismiss, and given Pepperdine's failure to state a valid claim and the chilling effect of litigation on free speech, discovery should be stayed pending Defendants' motion to dismiss. Defendants have filed a stay motion seeking that relief.

Defendants reserve all rights to update and supplement this and other disclosures, as need be. As a few examples, if this case were to proceed to discovery, Pepperdine would have to answer for the fact that a study published in Pepperdine's own newspaper shows just how weak its Waves marks are and how poorly they have been enforced. *See* Defs. Opp'n to TRO, [Dkt. No. 18] at 6–7. The study confirms, *inter alia*:

- "[O]nly 23% [of Pepperdine students and staff polled] correctly selected the long-form 'Pepperdine Waves' as the main emblem";
- ESPN, Pepperdine's director of athletics, and "an entire group of students all disagree on [Pepperdine's] primary logo";
- One student said, "When I think of Pepperdine athletics, a lot of different logos cross my mind… I honestly couldn't tell you what the Pepperdine Athletics logo is, which

is kind of a bummer…. I think if you did recognize it, then it'd be doing better in conveying its brand";

- "The abundance of secondary logos found on Pepperdine's athletic facilities and apparel, and the resulting confusion surrounding the primary logo, stems from the freedom provided to each individual coach of the school's 17 Division 1 sports teams";

- "Pepperdine's academic and athletic logos do not even share a color palette…. Many schools with recognizable branding, like Miami or Oregon, use the same logo scheme for both academics and athletics."

- Pepperdine's marketing department has faced "limitation[s]" including "infrastructure," "staffing," and "lack of consistency" that result in "confusion surrounding the branding" among Pepperdine's own people.

*Id.*; *see also* Lucas Decl., [Dkt. No. 18–1] at Ex. K.



Indeed, as Pepperdine's counsel inadvertently highlighted at the TRO hearing (in citing and discussing the below image and its use at The Crypto Arena in a big promotion effort), Pepperdine has spent significant resources marketing the version of its logo featuring a large "P"—not the "Waves" logo or colors that appear throughout the FAC. *See* TRO Hearing Tr. at 32:12–17; *see also* Lucas Decl., [Dkt. No. 18–1] at Ex. K at 1

(Pepperdine's own director of development saying "I would say 'P' with the 'Waves' under it is our primary logo").



In pressing its claims, Pepperdine will also have to confront the fact that scores of sports teams use the word "Wave" and variations of it to promote all manner of sports teams—professional, college, youth, and otherwise, using similar color patterns. *See* Defs. Opp'n to TRO, Dkt. No. 18 at 14–15 (depicting orange and blue logos for the California Wave Hockey Club, the Los Angeles Waves Cricket Club, Blue Wave Basketball, and South OC Wave Flag Football Club). One recent example is the "Wave 'Em!" towels and related promotions used by the Los Angeles Clippers professional basketball team, used most recently at playoff games in the past few weeks.



All of these sorts of considerations touch on the *Sleekcraft* factors and other governing legal tests, as will discovery into Pepperdine's reputation, given the way it has chosen to frame its claims and asserted harms.

Defendants' objections to this evidence and its brief preview are not well-taken. *E.g.*, J. Thomas McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 32:168 (5th ed.) ("[T]he cases are now unanimous that evidence of the state of mind of persons surveyed is not inadmissible as hearsay.") (collecting cases). Defendants' pending motion to dismiss focuses on the *Rogers* test and how it bars all of Pepperdine's claims. If the case proceeds beyond that motion (and it should not), the *Sleekcraft* factors will become germane. Pepperdine's lengthy FAC, replete with some 70 images it wished to share with the Court, address these issues. Defendants provide a small, early sampling of the most obvious reasons why Pepperdine's claims fail under *Sleekcraft* and otherwise. That Pepperdine now wants to disclaim admissions from surveys *it commissioned* and *its students reported*—and are of the sort that experts properly cite and rely on all the time in trademark cases—is telling. Nor does this evidence suggest that discovery should be permitted. It confirms *Rogers* should be applied to dismiss the case and protect speech.

## V.  MOTIONS

<u>Prior and Pending Motions</u>.

- Plaintiff filed an application for Temporary Restraining Order (Dkt. No. 2), which the Court denied on February 26, 2025 (Dkt. No. 26).

- Defendants filed a Motion to Dismiss on April 18, 2025 (Dkt. No. 40), which is currently being briefed.  Pepperdine's Opposition is due by May 30, 2025, and Defendants' Reply by June 6, 2025, and the hearing is scheduled for June 20, 2025.

- Defendants filed a Motion to Stay Discovery Pending Their Motion Dismiss on May 9, 2025 (Dkt. No. 43), which is currently being briefed.  The hearing has been noticed for June 13, 2025, but, based on an agreement between the parties, they will ask for it to be rescheduled for June 20, 2025.  If the agreed-upon hearing date is accepted, Pepperdine's Opposition will due by May 30, 2025, and Defendants' Reply will be due by June 6, 2025.  Pepperdine will prepare a joint stipulation for the Court's review confirming this schedule.

<u>Anticipated Motions</u>.

- The Parties each may move for summary judgment or partial summary judgment.
- Pepperdine asserts that it might move for a preliminary injunction.

## VI.  DAMAGES

Pepperdine seeks damages in an amount to be proven at trial.

## VII.  INSURANCE

None to report.

## VIII.  AMENDMENT OF PLEADINGS

Based on currently available information, Pepperdine does not currently intend to amend the operative complaint but reserves all rights to do so.

## IX.  DISCLOSURES

The Parties exchanged initial disclosures on May 9, 2025, pursuant to Fed. R. Civ. P. 26(a)(1)(C) regarding the topics listed in Fed. R. Civ. P. 26(a)(1)(A).

## X.   MANUAL FOR COMPLEX LITIGATION

The Parties do not believe that the procedures of the Manual for Complex Litigation should be used.

## XI.   DISCOVERY

Status.

Pepperdine served a First Set of Requests for Production consisting of 33 requests and a First Set of Interrogatories consisting of six interrogatories on April 28, 2025. Defendants' responses are due on May 28, 2025. Defendants have filed a motion to stay discovery. The Parties met and conferred on that motion.

Evidence Preservation.   The Parties have met and conferred regarding the preservation of evidence.   The Parties have each represented that they have taken reasonable and necessary steps to preserve evidence relevant to the issues reasonably evident in this action.

Discovery Plan.   The Parties do not agree on a discovery plan.

Plaintiff believes that discovery should proceed as set forth in the Plaintiff's Proposal column below and its proposal in the attached Civil Scheduling Worksheet.   Plaintiff's proposal takes into account the nature and circumstances of this case, the fact that there is unlikely to be burdensome discovery, and the interests of the Parties in resolving this matter quickly—especially given Defendants' renewal of *Running Point* for a second season, which will increase Pepperdine's damages and all Parties' costs.   In addition, Plaintiff's proposal also accounts for the holidays.

Defendants believe, as noted above, that any discovery at this stage is premature. *See* Fed. R. Civ. P. 16(b) (court may delay issuance of scheduling order for "good cause"). Should the Court decide to issue a Scheduling Order, Defendants request that it sets dates aligned with the Court's proposed timeframe in its online Civil Scheduling Worksheet—a proposed timeframe that Defendants' Proposal tracks exactly—to ensure that the Parties have sufficient time to conduct discovery and the Court sufficient time to rule on any dispositive motions.

| Deadline | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| Fact Discovery Cutoff | October 3, 2025 | February 27, 2026 |
| Expert Disclosure (Initial) | October 10, 2025 | March 6, 2026 |
| Expert Disclosure (Rebuttal) | November 14, 2025 | March 20, 2026 |
| Expert Discovery Cutoff | January 23, 2026 | April 3, 2026 |

Written Discovery.  Subject to the reservations of rights noted above, the Parties agree to the default Federal Rules regarding fact depositions, requests for admission, and interrogatories.

Protective & Electronic Discovery Orders.  Pepperdine has promised to provide draft protective and electronic discovery orders for this case.  Defendants will respond in due course, and all parties hope to submit joint drafts to the Court for approval.

## XII.  CLASS ACTIONS

This case is not a class action.

## XIII.  RELATED CASES

There are no related cases.

## XIV.  RELIEF

Pepperdine's Position.  Pepperdine seeks the following relief, which is detailed more fully in the Amended Complaint:

- Entry of preliminary and permanent injunctions against further infringement pursuant to 15 U.S.C. § 1116, including prohibiting Defendants and those acting on their behalf from:
  - Using any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to Pepperdine's Asserted Trademarks in the advertising, distribution, showing, streaming, marketing, selling, promotion, and/or sale of Running Point or related goods or services;

- o Promoting or airing Running Point Season 2 unless the Asserted Trademarks or any confusingly similar marks are removed;
- o Merchandising, marketing, advertising, selling, or offering to sell any merchandise including any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to the Asserted Trademarks in connection with Running Point or related goods or services;
- o Registering of any copyright, trademark, or other intellectual property right including any title, name, service mark, trademark, trade name, or domain name that includes or is confusingly similar to the Asserted Trademarks; and
- o Using, registering, or reserving any domain name, social media name, or similar domain or social networking name or page that includes the Asserted Trademarks;

- An award of treble damages for trademark infringement under 15 U.S.C. § 1117(a);
- An order that Defendants account to and pay over to Pepperdine all profits derived from its infringing use of the Asserted Trademarks;
- An order directing Defendants to engage in corrective advertising to disclaim any association between Pepperdine and Running Point, to remedy the actual and potential customer confusion in the marketplace; and
- An award of attorneys' fees and costs, prejudgment interest, and such other and further relief as the Court deems just and proper.

Defendants' Position.  Pepperdine should take nothing in this case.  Defendants reserve all rights to assert affirmative defenses and counterclaims and to seek related relief as appropriate, should the litigation proceed.  Defendants reserve the right to seek attorney fees and costs.

## XV.  SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION

Counsel met and conferred regarding ADR on April 25, 2025.  The Parties agree on the concept of using a private mediator but believe it would be premature to do so at this time.

## XVI.  INDEPENDENT EXPERT OR MASTER

The Parties do not consent to the appointment of an independent expert or master at this time and do not believe one will be necessary.

## XVII. CONSENT TO MAGISTRATE JUDGE

The Parties do not consent to proceeding before a magistrate judge at this time.

## XVIII.  SCHEDULE

Plaintiff and Defendants outlined alternative proposed schedules using the Court's Civil Scheduling Worksheet, attached hereto as Appendix A.

## XIX.  TRIAL AND TRIAL COUNSEL

Pepperdine made its demand for trial by jury with respect to the claims in the First Amended Complaint on March 28, 2025 (Dkt. No. 36).  Pepperdine estimates 7 trial days, arguing that good cause exists for a 7-day trial because this is a jury trial and in addition to numerous fact witnesses, there are likely to be 2-3 experts per side.

Defendants believe that a trial, if any, should take no more than 4 days.

The attorneys who will try this case on behalf of Pepperdine are Andrei Iancu, Robert A. Sacks, Aviv S. Halpern, and Emily D. Olsen.

The attorneys who will try this case on behalf of Defendants are Daniel M. Petrocelli, Matt Kline, Amy R. Lucas, Berit G. Fitzsimmons, and Emma Lux.

## XX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Pepperdine filed its Certificate of Interested Parties on February 20, 2025 (Dkt. No. 1).  Netflix, Inc. and Warner Bros. Entertainment Inc. filed their Notice of Interested Entities on February 24, 2025 (Dkt. No. 19).  Kaling International, Inc. filed its Corporate Disclosure Statement on April 18, 2025 (Dkt. No. 41).

## XXI.  OTHER ISSUES

The parties are not aware of any other issues affecting the status or management of this case.

Dated:  May 13, 2025                    By: */s/Aviv S. Halpern*

Andrei Iancu
Robert A. Sacks
Aviv S. Halpern
Emily Olsen
SULLIVAN & CROMWELL LLP

-and-

Daniel M. Cislo
Katherine M. Bond
CISLO & THOMAS LLP

*Attorneys for Plaintiff Pepperdine University*

Dated:  May 13, 2025                    By: */s/Matt Kline*

Daniel M. Petrocelli
Matt Kline
Amy R. Lucas
O'MELVENY & MYERS LLP

*Attorneys for Defendants Netflix, Inc., Warner Bros. Entertainment Inc., and Kaling International, Inc.*

## **SIGNATURE ATTESTATION**

I hereby attest that the other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  May 13, 2025

/s/Aviv S. Halpern
Aviv S. Halpern

# APPENDIX A

## STANDARD SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.
The parties must make every effort to agree on dates or the Court will set them.

| Case No. 2:25-cv-01429-CV-ADS | Case Name:  Pepperdine University v. Netflix, Inc., et al. | | |
|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | **Pl(s)' Date mm/dd/yyyy** | **Def(s)' Date mm/dd/yyyy** |
| Check one:  ☑ Jury Trial  or  ☐ Bench Trial<br>[Tuesday at 9:00 a.m. within 13–16 months of Scheduling Conference]<br>Estimated Duration: ___ Days | | 06/09/2026 | 08/10/2026 |
| Final Pretrial Conference ("FPTC") [L.R. 16], Hearing on Motions in Limine<br>[Friday at 1:30 p.m. at least 17 days before trial] | | 05/15/2026 | 07/24/2026 |
| **Event**<br>Note: Hearings shall be on Fridays at 1:30 p.m.<br>Other dates can be any day of the week. | **Time Computation** | **Pl(s)' Date mm/dd/yyyy** | **Def(s)' Date mm/dd/yyyy** |
| Last Date to Hear Motion to Amend Pleadings or Add Parties [Friday] | 91 days after scheduling conference | 08/08/2025 | 08/19/2025 |
| Fact Discovery Cut-Off [Friday]<br>(no later than deadline for filing dispositive motion) | 21 weeks before FPTC | 10/03/2025 | 02/27/2026 |
| Expert Disclosure (Initial) | 20 weeks before FPTC | 11/07/2025 | 03/06/2026 |
| Expert Disclosure (Rebuttal) | 18 weeks before FPTC | 12/05/2025 | 03/20/2026 |
| Expert Discovery Cut-Off | 16 weeks before FPTC | 01/23/2026 | 04/03/2026 |
| Last Date to Hear Motions [Friday]<br>• Joint Brief due at least 28 days before hearing<br>• Supplemental Memoranda (if any) due 14 days before hearing | 9 weeks before FPTC | 03/13/2026 | 05/22/2026 |
| Deadline to Complete Settlement Conference [L.R. 16-15]<br>Select one:  ☐ 1. Magistrate Judge (with Court approval)<br>       ☐ 2. Court Mediation Panel<br>       ☑ 3. Private Mediation | 5 weeks before FPTC | 04/10/2026 | 06/19/2026 |
| Trial Filings (first round) [Friday]<br>• Motions in Limine<br>• Memoranda of Contentions of Fact and Law [L.R. 16-4]<br>• Witness Lists [L.R. 16-5]<br>• Joint Exhibit List [L.R. 16-6.1]<br>• Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] (bench trial only)<br>• Declarations Containing Direct Testimony, if ordered (bench trial only) | 4 weeks before FPTC | 04/17/2026 | 06/26/2026 |
| Trial Filings (second round) [Friday]<br>• Oppositions to Motions in Limine<br>• Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>• Joint Agreed Upon Proposed Jury Instructions (jury trial only)<br>• Disputed Proposed Jury Instructions (jury trial only)<br>• Joint Proposed Verdict Forms (jury trial only)<br>• Joint Proposed Statement of the Case (jury trial only)<br>• Proposed Voir Dire Questions, if any (jury trial only)<br>• Evidentiary Objections to Declarations of Direct Testimony (bench trial only) | 2 weeks before FPTC | 05/01/2026 | 07/10/2026 |

Rev. 3/31/25