Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:   (310) 712-6600

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:   (650) 461-5600

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone: (310) 979-9190

*Attorneys for Plaintiff Pepperdine University*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEPPERDINE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC., WARNER BROS. ENTERTAINMENT INC., and KALING INTERNATIONAL, INC.,<br><br>Defendants. | Case No. 2:25-CV-01429-CV-ADS<br><br>**PEPPERDINE UNIVERSITY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PEPPERDINE'S FIRST AMENDED COMPLAINT**<br><br>Date:  June 20, 2025<br>Time:  1:30 PM<br>Courtroom:  5D |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ....................................................................................... 1

II.  STATEMENT OF FACTS .............................................................................................. 5

    A.  Pepperdine Has Longstanding Rights In The Waves Name And Brand. ........................................................................................................ 5

    B.  Defendants' Infringing Use Of Pepperdine's Intellectual Property Harmed Pepperdine. ......................................................................... 6

    C.  The Market Has Reacted To Defendants' Use. ............................................. 7

    D.  Defendants' Behavior With Respect To Other Similar Uses. ....................... 8

III.  LEGAL STANDARD ..................................................................................................... 9

IV.  ARGUMENT ................................................................................................................... 9

    A.  *Rogers* Does Not Preclude Pepperdine's Claims. ..................................... 10

        1.  *Rogers* Does Not Apply Because Defendants' Use Of The Waves Marks Is Source-Identifying. ................................................. 10

        2.  Even Under *Rogers*, Pepperdine's Claims Prevail. ............................ 20

        3.  Alternatively, The *Rogers* Test Should Be Abandoned. ..................... 21

    B.  The Non-Commercial Use Exception Does Not Apply To Pepperdine's Trademark Dilution Claim Under California Law (Count V) ............................................................................................................. 22

    C.  Pepperdine Adequately Alleges False Advertising (Counts IV and VII) .......................................................................................... 24

V.  CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan USA, Inc.* v. *Prescribers Choice, Inc.*,
364 F. Supp. 3d 1089 (C.D. Cal. 2019) ...............................................................25

*Ariix, LLC* v. *NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) .................................................................5, 24, 25

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) .............................................................................................9

*B&B Hardware Inc.* v. *Hargis Indus., Inc.*,
575 U.S. 138 (2015) ...........................................................................................11

*Belin* v. *Starz Ent., LLC*,
2024 WL 4720795 (C.D. Cal. Sept. 20, 2024) ...................................................12

*Bell Atlantic* v. *Twombly*,
550 U.S. 544 (2007) .............................................................................................9

*Broam* v. *Bogan*,
320 F.3d 1023 (9th Cir. 2003) ..............................................................................9

*Davis* v. *Blue Tongue Films*,
2024 WL 5182630 (9th Cir. Dec. 20, 2024)................................................*passim*

*DCD Programs, Ltd.* v. *Leighton*,
833 F.2d 183 (9th Cir. 1987) ..............................................................................25

*Diece-Lisa Indus., Inc.* v. *Disney Enter., Inc.*,
2024 WL 5413113 (C.D. Cal. May 1, 2024)..................................................12, 15

*Down to Earth Organics, LLC* v. *Efron*,
2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024)......................................................17

*Dr. Seuss Enter., L.P.* v. *ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) ..............................................................................20

*E.S.S. Ent. 2000, Inc.* v. *Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ............................................................................17

SULLIVAN & CROMWELL LLP

*Gearsource Holdings, LLC* v. *Google LLC*,
2020 WL 3833258 (N.D. Cal. July 8, 2020) ...............................................................24

*Gordon* v. *Drape Creative*,
909 F.3d 257 (9th Cir. 2018) ..............................................................................20, 21

*Haas Automation, Inc.* v. *Steiner*,
2024 WL 4440914 (C.D. Cal. Sept. 25, 2024) ...........................................................17

*Hamilton* v. *State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) .....................................................................................18

*Hara* v. *Netflix, Inc.*,
2023 WL 6812769 (C.D. Cal. Aug. 23, 2023) ...........................................................17

*Jack Daniel's Props., Inc.* v. *VIP Prods. LLC*,
599 U.S. 140 (2023)...........................................................................................*passim*

*Jackson* v. *Carey*,
353 F.3d 750 (9th Cir. 2003) .....................................................................................25

*Jackson* v. *Netflix, Inc.*,
506 F. Supp. 3d 1007 (C.D. Cal. 2020) .....................................................................15

*JTH Tax LLC* v. *AMC Networks Inc.*,
694 F. Supp. 3d 315 (S.D.N.Y. 2023) ..................................................................16, 17

*PLS.com, LLC* v. *Nat'l Ass'n of Realtors*,
32 F.4th 824 (9th Cir. 2022) .......................................................................................9

*Lopez* v. *Smith*,
203 F.3d 1122 (9th Cir. 2000) ...................................................................................25

*Louis Vuitton Malletier S.A.* v. *Warner Bros. Ent. Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012) ........................................................................19

*Matal* v. *Tam*,
582 U.S. 218 (2017)...................................................................................................11

*Mattel, Inc.* v. *MCA Records, Inc.*,
28 F. Supp. 2d 1120 (C.D. Cal. 1998)..................................................................22, 23

*Mattel, Inc.* v. *MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) ................................................................................19, 23

-iii-

*McGillvary* v. *Netflix, Inc.*,
    2024 WL 3588043 (C.D. Cal. July 30, 2024)........................................................................... 17

*Moody's Art, LLC* v. *Fashion Nova, LLC*,
    2024 WL 4830013 (C.D. Cal. Feb. 29, 2024) ...................................................................*passim*

*NBCUniversal Media, LLC* v. *Jay Kennette Media Grp. LLC*,
    Case No. 2:22-cv-04541 (C.D. Cal. July 1, 2022)................................................................... 14

*Newport Harbor Ventures, LLC* v. *Morris Cerullo World Evangelism*,
    4 Cal. 5th 637 (2018) ............................................................................................................25

*Panavision Int'l, L.P.* v. *Toeppen*,
    945 F. Supp. 1296 (C.D. Cal. 1996) ....................................................................................22

*Punchbowl, Inc.* v. *AJ Press, LLC*,
    90 F.4th 1022 (9th Cir. 2024) ............................................................................. 12, 15, 20, 22

*Rogers* v. *Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) .............................................................................................*passim*

*Sajahtera, Inc.* v. *Kitross Apparel L.A., LLC*,
    2024 WL 3086551 (C.D. Cal. June 10, 2024)................................................................. 12, 15

*Twentieth Century Fox Television* v. *Empire Distrib., Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ............................................................................................. 15

*University of Ala. Bd. of Trustees* v. *New Life Art, Inc.*,
    683 F.3d 1266 (11th Cir. 2012) ........................................................................................... 19

*Usher* v. *City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ................................................................................................. 9

*Vans, Inc.* v. *MSCHF Prod. Studio, Inc.*,
    88 F.4th 125 (2d Cir. 2023) ................................................................................................. 12

*Viacom Int'l* v. *IJR Cap. Inv., LLC*,
    891 F.3d 178 (5th Cir. 2018) ............................................................................................... 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    349 F. Supp. 3d 881 (N.D. Cal. 2018)..................................................................................25

*Warner Bros. Ent. Inc.* v. *P'ships & Unincorporated Ass'ns*,
    Case No. 1:25-cv-02205 (N.D. Ill. Mar. 3, 2025) .............................................................4, 18

-iv-

*Warner Bros. Ent. Inc.* v. *Random Tuesday, Inc.*,
2020 WL 12762735 (C.D. Cal. Nov. 9, 2020) ...................................................... 19

*Yonay* v. *Paramount Pictures Corp.*,
2022 WL 18397391 (C.D. Cal. Nov. 9, 2022) ........................................................ 9

*Ysleta del Sur Pueblo* v. *Texas*,
596 U.S. 685 (2022) ............................................................................................ 23

**Statutes**

15 U.S.C. § 1114 ................................................................................................... 21

15 U.S.C. § 1125 ..................................................................................... 21, 23, 24

Cal. Bus. & Prof. Code § 14247 ......................................................................... 4, 23

Cal. Civ. Proc. Code § 425.16 ................................................................................. 25

Plaintiff Pepperdine University ("Plaintiff" or "Pepperdine") respectfully submits this Opposition to the motion to dismiss Pepperdine's First Amended Complaint filed by defendants Netflix, Inc., Warner Bros. Entertainment Inc., and Kaling International, Inc. (collectively, "Defendants").

## I.    PRELIMINARY STATEMENT

Defendants' motion starts from an erroneously narrow recitation of the scope of trademark law—that the Lanham Act does not apply when a mark is used in an expressive work—and improperly asks the Court to adjudicate on a motion to dismiss a threshold issue of fact:  accepting the facts alleged as true, whether Pepperdine plausibly alleged that Defendants' use of the "Waves" marks serves "at least in part" as a designation of source for *Running Point*.  Contrary to Defendants' view, whether that use goes further to identify Pepperdine as a source for the series is simply another issue, for another day.

Merely because Defendants are in the entertainment business does not entitle them to thwart intellectual property laws and wrest control from Pepperdine of the brand and reputation it has painstakingly built over the last 87 years.  And merely because the "Waves" team depicted in *Running Point* is purportedly fictional and the series an expressive work does not give Defendants *carte blanche* to usurp Pepperdine's marks, without permission or license, and use them in any way they see fit.  Pepperdine University, a nationally recognized non-profit institution located in Malibu, California, has used the "Waves" name and its distinctive blue, orange, and white color scheme for almost nine decades—symbols that are central to the University's identity and protected by several valid and incontestable federal trademark registrations, among other rights.

Defendants are wrong when they assert that the Court "has already determined" in its ruling on Pepperdine's motion for a temporary restraining order ("TRO") that the *Rogers* test, from *Rogers* v. *Grimaldi*, 875 F.2d 994 (2d Cir. 1989), applies here.  The Court has not and could not have done so, both because the Court did not have before it the allegations of the First Amended Complaint ("Amended Complaint" or "FAC") and because, at a minimum, the legal standard is different between a TRO and

a motion to dismiss.  In particular, on a motion to dismiss, the allegations in the Amended Complaint that are necessary to determine whether the *Rogers* test—on which Defendants' motion exclusively rises and falls—even applies must be accepted as true, with all inferences drawn in Pepperdine's favor.  Indeed, at the time of the TRO, the series had not yet been released so neither Pepperdine's original complaint nor the Court's opinion could have considered the overwhelming use of the "Waves" mark throughout the series or the public's reaction, all as further alleged in the Amended Complaint.

The dispositive issue here is the threshold inquiry imposed by the Supreme Court in *Jack Daniel's Props., Inc.* v. *VIP Prods. LLC*, 599 U.S. 140 (2023):  whether Defendants' use of the "Waves" marks, in the series and in related promotional activities (which are not expressive), is "at least in part" source-identifying.  *Id.* at 156.  If so, neither the *Rogers* test nor any other "threshold First Amendment filter" applies—whether or not Defendants' uses are otherwise expressive—and the claims and defenses at that point must be evaluated under traditional Lanham Act standards.  *Id.* at 156, 161.  On the facts alleged in the Amended Complaint, it is not a close question.  Defendants proclaim to be the "Home of the Los Angeles WAVES."  The brand's "home" is its source, so this alone should end the inquiry.  But there is more.

Defendants' motion should be denied because each of the three arguments on which it is based is foreclosed by binding authority and the specific facts alleged in the Amended Complaint.

*First*, based on the allegations in the Amended Complaint, which must be taken as true and drawing all inferences in Pepperdine's favor, Defendants have clearly used the "Waves" marks as a source identifier for *Running Point*.  (*See, e.g.*, FAC ¶¶ 4-5, 71-91.)  As the Supreme Court made clear in *Jack Daniel's*, if it is ultimately determined, as alleged, that Defendants' use of the "Waves" marks has some source-identifying function, that means the *Rogers* test does not apply—even if there were also some expressive function or other source identifiers, such as the "Running Point" or "Netflix" logos.  599 U.S. at 157 (holding that the *Rogers* test does not apply and "that result [does

not] change because the use of a mark has other expressive content—*i.e.*, because it conveys some message on top of source"); *id.* at 160 (finding "the Bad Spaniels logo" and "Silly Squeakers logo" "both appear[] to serve the same source-identifying function").

In excruciating detail, Pepperdine has alleged specific facts in the Amended Complaint outlining exactly how Defendants have used the Waves marks in the *Running Point* series and elsewhere "at least in part" as a source identifier for the series. As alleged, the use of the Waves marks by Defendants to identify *Running Point* was not incidental or fleeting, but intentional and pervasive. And the evidence Pepperdine relies upon is the same type of evidence that the Ninth Circuit and the Supreme Court have relied upon to hold that, when marks are used as source identifiers, *Rogers* does not apply. For example, Defendants flooded the series with Waves-branded imagery and costumes, and made the Waves team and the people that manage it the central focus of the series. Defendants also capitalized on their pervasive use by marketing the series in a way that makes the "Waves" logo synonymous with *Running Point* and Netflix in the eyes of consumers, including: featuring the Waves logo next to the Netflix and *Running Point* logos on marketing material, wearing "Waves" clothing in social media posts, and discussing "join[ing] the Waves." (FAC ¶¶ 4-5, 47, 67-68, 71, 76, 79.) Indeed, Defendant Kaling International even changed its Instagram account's biography to proclaim itself the "Home of the Los Angeles WAVES" with a profile photo of its principal, Mindy Kaling, in a "Waves" t-shirt that is indistinguishable from those sold by Pepperdine. (*Id.* ¶¶ 4, 67.)



Again, the home of a brand is its source. And Defendants achieved the source-identifying effect they had intended—third parties are now making and selling Waves-branded merchandise marketed as *Running Point* merchandise, which would only occur if "Waves"

was source-identifying for the series.  (*Id.* ¶¶ 87-91.)

Defendants repeatedly emphasize that the Waves in *Running Point* are a fictional team to suggest that somehow this exempts them from the trademark laws (Mot. at 9-12), but at least Defendant Warner Bros. has on multiple occasions asserted a directly contrary position before this and other courts, arguing that names of fictional entities and even fictional sports teams in its shows and movies function as trademarks—*i.e.*, are source-identifying.  Most recently, in March 2025, while this lawsuit was pending, Warner Bros. sued several defendants for trademark infringement based on its Harry Potter marks—including "Nimbus 2000" (a fictional brand of flying broom in the Harry Potter movies), "Gringotts" (a fictional bank), and "Chudley Cannons" (a fictional sports team)—arguing that those fictional names actually function as trademarks and therefore are, in fact, source-identifying.  Mot. Entry TRO, ECF No. 12 at 3-4, *Warner Bros. Ent. Inc.* v. *P'ships & Unincorporated Ass'ns*, Case No. 1:25-cv-02205 (N.D. Ill. Mar. 3, 2025).  And, more broadly, Defendants have regularly sought and obtained trademark protection for other fictional businesses and entities within their expressive works.  (*E.g.*, FAC ¶ 72.)  Such conduct—registering and asserting trademarks in similar circumstances—is precisely the type of evidence on which the Supreme Court relied in determining that the marks in *Jack Daniel's* were source-identifying despite being unregistered themselves.  599 U.S. at 160.

To be clear, to deny Defendants' motion, the Court need not agree with Pepperdine that Defendants' use of the Waves marks is source-identifying, but merely that a reasonable person could reach that conclusion drawing all inferences from the facts alleged.  There is no question that the Amended Complaint more than passes this hurdle.

*Second*, Defendants assert that Pepperdine's dilution claim is barred by Cal. Bus. & Prof. Code § 14247(b)(1), a narrow statutory exception to trademark dilution claims for "non-commercial use[s]."  In Defendants' view, the exception applies whenever the use is not "purely" commercial.  (Mot. at 19-20.)  But that argument is both outdated and foreclosed by recent precedent, which holds that the exception does not apply when a use is alleged to be source-identifying, as here.  *See Jack Daniel's*, 599 U.S. at 155-56; *Davis*

v. *Blue Tongue Films*, 2024 WL 5182630, at *2 (9th Cir. Dec. 20, 2024).

*Third*, Defendants' argument that Pepperdine's false advertising claim is barred because it does not identify an express falsehood also misstates the law. (Mot. at 20-21.) As the Ninth Circuit has explained, such claims may be based on implied misrepresentations and deceptive context, not just express falsehoods. *See Ariix, LLC* v. *NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). Here, the Amended Complaint alleges specific facts about how Defendants' use of the Waves marks misleads consumers into believing there is an affiliation, endorsement, or sponsorship by Pepperdine. Taken as true, Pepperdine's allegations plausibly state such claims.

This is a textbook case of trademark infringement—nowhere do Defendants argue that the Waves marks and branding in *Running Point* are not identical or confusingly similar to the marks that Pepperdine has trademarked and used continuously for close to a century. Defendants will have their opportunity to argue, despite all of the alleged evidence to the contrary, that their uses of the Waves marks have no source-identifying function whatsoever and pose no likelihood of confusion with Pepperdine. But those are issues to be resolved later. For present purposes, Pepperdine has more than adequately alleged facts supporting its claims. Defendants' motion should be denied in its entirety.

## II. STATEMENT OF FACTS

### A. Pepperdine Has Longstanding Rights In The Waves Name And Brand.

Pepperdine University is a nationally recognized non-profit institution located in Malibu, California, known for its academic excellence and commitment to Christian values. (FAC ¶¶ 6, 8.) Always in Los Angeles County, Pepperdine has used the name "Waves" for its athletic teams and the colors blue, orange, and white. (*Id.* ¶¶ 7-8, 25.) Since its founding in 1937, Pepperdine has used its team name, its colors, and other brand elements, like the number "37" jersey, consistently and prominently—including at sporting events, graduation ceremonies, and various community gatherings. (*Id.* ¶¶ 7-8, 25-27.)

Incorporating its marks and other distinctive features in decades of consistent branding, Pepperdine has expended significant resources on its branding—achieving

widespread recognition.  (*Id.* ¶¶ 9, 25-31, 34, 37, 39-40, 53.)  It also has substantial sales of merchandise, including merchandise bearing the Waves name and logo, and the "37" jersey, which it sells online directly and through third parties, and directly through at least two brick-and-mortar stores in different areas of Los Angeles.  (*Id.*; FAC, Ex. D.)

Over the more than eight decades in which Pepperdine has used the Waves name and colors, Pepperdine has developed a widely recognized identity.  (*Id.* ¶¶ 9, 24, 27, 30, 40-41, 105, 150.)  And Pepperdine continues to invest significant resources in establishing and protecting that identity, securing trademark registrations and reinforcing its brand through merchandise sales, sponsorships, and public displays.  (*Id.* ¶¶ 8, 17, 22-30, 32-41.)  To that end, among other things, Pepperdine sought and obtained federal trademark protection.  Pepperdine is the registered owner of three valid and incontestable federal trademarks—U.S. Reg. Nos. 2,668,597; 2,967,811; and 2,903,783—and has common law rights to at least (1) the use of the "Waves" name, as well as (2) the use of its distinctive school colors, especially in conjunction with athletic programs and athletic merchandise, and/or in conjunction with other symbols that are associated with and identify the university, including the "Waves" team name and the number "37" (together, the "Asserted Marks").  (FAC ¶¶ 22-23, 33, 36, 38.)  Pepperdine's ownership of these marks is obvious—a simple web or Trademark Office search immediately reveals Pepperdine's ownership and use of the Asserted Marks.  (*Id.* ¶¶ 104-06.)  Though now, after the release of *Running Point*, web searches show a mix of results pointing toward both Pepperdine and Defendants, which was not the case prior to the infringement and which gravely and irreparably harms Pepperdine.  (*Id.* ¶ 60.)

**B.    Defendants' Infringing Use Of Pepperdine's Intellectual Property Harmed Pepperdine.**

On February 27, 2025, after an extensive marketing campaign, Defendants released the *Running Point* series, which is centered around a Los Angeles-based basketball team that, like Pepperdine's, is called the "Waves," and whose colors, like Pepperdine's, are blue, orange, and white.  (*Id.* ¶¶ 1, 18, 44-49.)  Defendants' Waves team serves a central

role in the series as its ten episodes track the Waves' struggles on and off the court, the Waves' players, and the Waves' leadership. (*Id.* ¶¶ 1, 42, 51-54, 56.) The Waves branding in *Running Point* is identical or strikingly similar to that of Pepperdine's Waves (*id.* ¶¶ 1, 10, 44, 49, 61, 92), and is featured pervasively throughout the 300-minute series in almost every scene: on uniforms, merchandise, court surfaces, walls, dialogue, and more. (*Id.* ¶¶ 2, 71, 75.) Even the stadium featured frequently in the show prominently brands itself as "The Home of the Los Angeles WAVES." (*Id.* ¶¶ 73-74.) More than any character, the "Waves" brand is a consistent, central, and defining element of the show. (*Id.* ¶¶ 4, 44, 53, 56, 71, 73-75, 86.) Defendants' motion acknowledges as much. (*See* Mot. at 24-28.)

Defendants' use of the Waves marks is also not limited to the show itself. Reflecting the source-identifying function the Waves marks serve, Defendants have used them in marketing materials and public statements to identify and refer to the series. (FAC ¶¶ 4, 62-63, 69, 71, 73, 76, 80-82, 85.) For example, Defendants branded the tickets to the show's premiere with the Waves logo—appearing alongside the Netflix logo and *Running Point* logo. (*Id.* ¶¶ 5, 85.) Defendant Kaling International identified itself as "Home of the Los Angeles WAVES" in the biography of its public Instagram page, and, Mindy Kaling herself (the show's creator though not a cast member) and various actors have used the Waves marks on social media to identify themselves with *Running Point*. (*Id.* ¶¶ 4, 5, 47, 67-68, 71, 76-79.)[1] Defendants have also publicly used merchandise and promotional material bearing the Waves marks on various items such as breakfast foods and chairs, completely distinct from the merchandise and clothing shown in the series itself. (*Id.* ¶ 80.) Acknowledging how closely the Waves marks are associated with the show, much of this promotional material does not even include the *Running Point* logo—the Waves mark itself is sufficient to identify the show. (*See id.* ¶¶ 4, 5, 47, 67-68, 71, 76-79.)

### C.    The Market Has Reacted To Defendants' Use.

Third parties have demonstrated they understand the Waves marks as source-

---

[1] Despite Defendants' insistence that they have not used the Waves marks in a source-identifying way, they have since deleted the social media biography and other posts and content cited in Pepperdine's Amended Complaint.

identifying for, and connected to, *Running Point*. For example, as alleged in the Amended Complaint, third parties have created and are selling merchandise branded with the blue, orange, and white "Waves" logo precisely because of its identification with the series. (FAC ¶¶ 87-91.) This includes shirts marketed as "Running Point Property of Los Angeles Waves 1952 T-shirt," "Kate Hudson T-shirt" with "Running Point" under "description," and "exclusive Los Angeles Waves Replica Basketball Jersey from the hit TV show." (*Id.*) This alone is a clear indication that Defendants have used the Waves marks as a trademark to identify the series. Some of the merchandise (like the t-shirt worn by Ms. Kaling on Kaling International's Instagram) is almost identical to Pepperdine's official merchandise and has no reference to *Running Point* other than the Waves name and logo. (*Id.*)

Defendants acknowledge these fakes but allege they are not liable for them because they did not intentionally induce their creation. (*See* Mot. at 18-19.) Pepperdine disagrees, but in any event, the issue on this motion is not ultimate liability—it is whether the Waves marks serve as a source identifier for *Running Point*. Thus, it matters that third parties understand the Waves marks to identify and be connected to the series. That counterfeiters are creating fakes of the Waves brand while linking it to the series is clear evidence that the Waves marks are being used to serve "at least in part" a source-identifying function—whether or not they are also expressive.

**D.    Defendants' Behavior With Respect To Other Similar Uses.**

Defendants have a documented pattern of securing trademark rights for fictional businesses and entities that play a central role in their expressive works. (FAC ¶ 72.) Not only have Defendants trademarked fictitious businesses from their popularized shows, such as "Surfer Boy Pizza" from *Stranger Things* and "Central Perk" from *Friends*, but they have similarly obtained and enforced trademarks for fictional sports teams such as the "Chudley Cannons" and "AFC Richmond." (*Id.*) By registering these trademarks, Defendants are by definition claiming that they are source identifiers. (*Id.*)

Defendant Netflix also operates a "Netflix Official Merch Shop" selling direct-to-consumer merchandise and products based on series that Netflix promotes and

streams.  (*Id.* ¶ 65.)  This shop, which offers for sale t-shirts, sweatshirts, and other items bearing marks from Netflix's programs, including fictionalized businesses (*id.*), capitalizes on the fact that, as here, consumers identify and connect those marks with the show they came from.  This is the essence of a mark serving a quintessential trademark function.

## III.   LEGAL STANDARD

The threshold showing to overcome a motion to dismiss is low.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *PLS.com, LLC* v. *Nat'l Ass'n of Realtors*, 32 F.4th 824, 831 (9th Cir. 2022) (cleaned up); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic* v. *Twombly*, 550 U.S. 544, 570 (2007)).  When evaluating a motion to dismiss under Rule 12(b)(6), courts are required to "presume all factual allegations of the complaint to be true" and must also "draw all reasonable inferences in favor of the nonmoving party."  *Usher* v. *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Further, courts view "Rule 12(b)(6) motions . . . with disfavor."  *Broam* v. *Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (internal citations omitted).  The Rule 8 standard contains "a powerful presumption against rejecting pleadings for failure to state a claim."  *Yonay* v. *Paramount Pictures Corp.*, 2022 WL 18397391, at *2 (C.D. Cal. Nov. 9, 2022) (internal citation and quotations omitted).

## IV.   ARGUMENT

As a matter of law, dismissal cannot be granted based on any of Defendants' three arguments that:  (1) the *Rogers* test applies and precludes trademark infringement liability; (2) the non-commercial use exception to trademark dilution applies; and (3) Pepperdine's false advertising claim does not rely on a specific false statement.  Pepperdine's Amended Complaint is teeming with the specific factual allegations underlying its claims—none of which Defendants actually (or are permitted on this motion to) dispute.  Instead, Defendants improperly ask the Court to ignore the factual allegations or otherwise draw inferences in their favor, but that is not the applicable legal standard.

**A.      *Rogers* Does Not Preclude Pepperdine's Claims.**

Defendants attempt to cloak themselves in the *Rogers* test, but it cannot save them on this motion, where Pepperdine's allegations must be taken as true and more than sufficiently allege that Defendants use the Waves marks "at least in part" to identify source. As a result, the *Rogers* test does not apply.  Defendants largely ignore this threshold inquiry, which the Supreme Court mandated in *Jack Daniel's*.  Further, even if the *Rogers* test applied, the motion still fails because Pepperdine has adequately alleged that Defendants' use is misleading as to source or content.  Finally, given that a plurality of justices in *Jack Daniel's* expressly questioned the continued viability of the *Rogers* test, if the *Rogers* test could be construed as supporting dismissal notwithstanding the allegations of the Amended Complaint, the test should be entirely abandoned as an extra-statutory inquiry that supplants the statutory standard, the likelihood-of-confusion.

**1.      *Rogers* Does Not Apply Because Defendants' Use Of The Waves Marks Is Source-Identifying.**

**a.      The Amended Complaint Includes Extensive Factual Allegations Showing Defendants' Use Of The Waves Marks To Identify Source.**

The threshold inquiry before application of *Rogers* is whether the mark is being used at least in part as an identifier of source of the infringer's own product. *Jack Daniel's*, 599 U.S. at 158-59.  If the answer is yes, and the mark does serve at least some source-identifying function, then the Supreme Court explains that the inquiry must end, and the analysis defaults to the usual likelihood-of-confusion test pursuant to the Lanham Act.  *Id.*  Only if the answer is no—*i.e.*, the mark at issue does not in any way identify source—does the inquiry proceed to the two-step test outlined in *Rogers*.  *Id*.  Here, Defendants' suggestion that *Rogers* governs fails at the threshold inquiry.

The majority of Defendants' motion rests on the application of *Rogers*, but Defendants misstate and misapply the law so as to sidestep the threshold analysis required by the Supreme Court.  Whatever one thinks about the *Rogers* test, it cannot be applied to dismiss the claims here given that Pepperdine more than adequately alleges facts

demonstrating that Defendants have used the Waves marks, "at least in part," as a designation of source for *Running Point*. *Jack Daniel's*, 599 U.S. at 156.

The Supreme Court in *Jack Daniel's* cautioned district courts that *Rogers* "has always been a cabined doctrine" and limited the application of the *Rogers* test, even when a use was expressive. 599 U.S. at 155-56. As relevant here, even if used in an expressive work, the Supreme Court held that the *Rogers* test does not apply when an alleged infringer uses the mark "as a designation of source for the *infringer's own goods*." 599 U.S. at 153 (emphasis added). In other words, the threshold inquiry here is whether Pepperdine has plausibly alleged that Defendants have used the Waves marks "at least in part" as a designation of source for Defendants' own product—*Running Point*. *See id.*; ((Mot. at 3) ("Defendants' only product at issue is the *Running Point* series.") (quoting ECF No. 2).)[2]

A trademark's source-identifying function is to "help distinguish a particular artisan's goods from those of others." *B&B Hardware Inc.* v. *Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015). Consumers who recognize a mark associate it with particular goods and services, helping them identify those products. *See Matal* v. *Tam*, 582 U.S. 218, 224 (2017). As the Supreme Court made clear in *Jack Daniel's*, if the mark functions in any way to identify source, the determination that *Rogers* has no application would not "change because the use of a mark has other expressive content—*i.e.*, because it conveys some message on top of source." 599 U.S. at 157. In *Jack Daniel's* itself, the marks were alleged to be an expressive work (parody in that case), but the Supreme Court found *Rogers* did not apply because the marks were *also* used to identify the source of the infringing product. *Id.* at 159-60. The Ninth Circuit and this Court have applied the same analysis to reject *Rogers* under similar circumstances. *E.g.*, *Davis*, 2024 WL 5182630, at *2 (*Rogers* did not apply because complaint alleged that a movie used the "Gringo" mark as a source

---

[2] The threshold question on this Motion is not, as Defendants' Motion sometimes incorrectly suggests, whether a reasonable consumer would conclude by seeing the Waves Marks that "*Pepperdine* is the source of the series." (Mot. at 11 (emphasis added), 14 (same).) That question relates to whether consumers are *confused* about the source, not whether Defendants are using the mark to designate source at all. Defendants did not move to dismiss based on likelihood of confusion as to source of origin—the test under the Lanham Act if *Rogers* does *not* apply or has no continuing viability.

identifier); *Belin* v. *Starz Ent., LLC*, 2024 WL 4720795, at *4 (C.D. Cal. Sept. 20, 2024) ("straightforward" that *Rogers* did not apply because in promoting a television series, defendants used the "BMF" mark "to 'identify and distinguish'" the series, or to "designate the source of [their] own goods"). It does not matter, as Defendants claim, that the series includes a disclaimer. *See Jack Daniel's*, 599 U.S. at 150, 159 (use was source-identifying despite a disclaimer that the product was "not affiliated with Jack Daniel Distillery").

Since *Jack Daniel's*, Courts here almost always find *Rogers* inapplicable. *See, e.g.*, *Punchbowl, Inc.* v. *AJ Press, LLC*, 90 F.4th 1022, 1031 (9th Cir. 2024) (holding that *Jack Daniel's* changed the law and finding *Rogers* was not applicable because the mark was used to "identify and distinguish" its news products); *Davis* v. *Blue Tongue Films*, 2024 WL 5182630, at *2 (9th Cir. Dec. 20, 2024) (finding the operative complaint "plausibly allege[d] that the Movie uses [the mark] as a source identifier"); *Moody's Art, LLC* v. *Fashion Nova*, *LLC*, 2024 WL 4830013, at *5 (C.D. Cal. Feb. 29, 2024) (denying motion to dismiss under *Rogers* because source identification "is a factual question" and the complaint alleged consistent display of the mark in an identical font and color across various products, which suggested the mark was used to identify source); *Sajahtera, Inc.* v. *Kitross Apparel L.A., LLC*, 2024 WL 3086551, at *3 (C.D. Cal. June 10, 2024) ("Because the artwork uses the Stylized Mark as a source identifier, the *Rogers* test is inapplicable."); *see also Diece-Lisa Indus., Inc.* v. *Disney Enter., Inc.*, 2024 WL 5413113, at *6 (C.D. Cal. May 1, 2024) (finding the *Rogers* test was not applicable because defendants used the mark, at least in part, as a source identifier).[3]

Whether a mark is used in any respect to designate source is dependent upon

---

[3] Courts in other jurisdictions reject *Rogers* in similar circumstances. *See Vans, Inc.* v. *MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 138-39 (2d Cir. 2023) (holding "[a] trademark is used as a 'source identifier' when it is used 'to identify or brand a defendant's goods or services' or to indicate the 'source or origin' of a product" and declining to apply *Rogers* where the mark at issue was used in this manner) (internal citations omitted); *see also HomeVestors of Am.*, 2023 WL 6880341, at *5 (finding that, whether purely a factual question or a mixed question, the complaint sufficiently alleged the use was source-identifying based on, among other things, the similarity of the marks, the similar contexts, the use on promotional materials, and internet searches for the owner's mark returning results for the defendant's use).

the underlying factual circumstances, and the only question on this motion to dismiss is whether the facts alleged in the Amended Complaint taken as true with all inferences drawn in favor of Pepperdine adequately allege it. *See, e.g.*, *Moody's Art*, 2024 WL 4830013 at *5; *HomeVestors of Am.*, 2023 WL 6880341, at *4. The Amended Complaint is replete with detailed, specific facts indicating that Defendants have used the Waves marks to do just that. These include the following:

- ***Defendants' use within the series***. The Amended Complaint alleges how Defendants make extensive use of the Waves mark and imagery in the show, which "revolves around the Waves, its management and its players." (*E.g.*, FAC ¶¶ 42, 44-49, 71-75.) Each episode contains hundreds of references in dialogue or imagery to the Waves team—with the stadium even labeled as the "Home of the Los Angeles Waves." (*See, e.g.*, *id.* ¶¶ 1, 42, 51-54, 56, 73-74.) Defendants have made the Waves team and Waves marks central to their show. *Running Point* is so much about the Waves, and its extensive use of the Waves marks identifies the series.

- ***Defendants' use in marketing the series***. Outside of the series, Defendants have been marketing *Running Point* by using the Waves marks to identify and distinguish the series—quite literally, Defendants have used the Waves marks to identify the show on premiere tickets and other marketing (*e.g.*, *id.* ¶¶ 4-5, 85), just like how VIP used "Bad Spaniels" and its infringing trade dress next to the Silly Squeakers logo in *Jack Daniel's*. 599 U.S. at 160 (referencing "the way the product is marketed" as a factor indicative of its use to identify source). The promo for the series contains content highlighting the Waves marks. And Defendants' other marketing activities also feature use of the Waves marks—with actors and promotors wearing Waves-branded merchandise, promotional social media posts about actors being "SIGNED to" or "joining" the Waves (to convey their role within the *Running Point* series itself), and merchandise such as chairs and cereal labeled with the "Waves" brand (which are not expressive)[4]. (*E.g.*, FAC ¶¶ 4-5,

---

[4] Irrespective of whether the series is an expressive work, there can be no argument that Defendants' use of the Waves marks on t-shirts, chairs, and other merchandise that are not even in the show are entitled to any analysis under *Rogers.* (FAC ¶ 118.) The fact that

67-68, 76-81.)  These extensive marketing activities ensure that the brand identifies source.  Again to remove all doubt, Kaling International proclaimed itself as being the "Home of the Los Angeles Waves" in its Instagram biography—the precise place a consumer would expect to see source-identifying information.  (*Id.* ¶¶ 4, 67.)  The "home" of a brand is its source.

- *The market's understanding of Defendants' use*.  Using a mark as a trademark is about generating a connection to a particular product or service in the eyes of consumers.  Here, the Amended Complaint contains factual allegations showing that third parties have understood the Waves marks to be connected with and identify the *Running Point* series.  The Amended Complaint identifies merchandise created by third parties using the Waves logo and name on shirts, which they advertise and sell as "Running Point" merchandise.  (*E.g.*, *id.* ¶¶ 87-91.)  The fact that consumers and counterfeiters associate the Waves marks and logos with *Running Point* indicates that Defendants' use has been source-identifying.

- *Defendants' behavior with respect to other similar uses*.  As the Supreme Court instructed in *Jack Daniel's*, 599 U.S. at 160, this Court can look to Defendants' uses in similar contexts to contextualize how Defendants are using the marks here.  As alleged in the Amended Complaint, Defendants themselves frequently obtain, register, and enforce trademarks in fictional businesses and entities that are central to their shows, thus necessarily acknowledging that fictional entities can be source-identifying (*e.g.,* FAC ¶ 72); *see infra* at IV.A.1.b—like "Dunder Mifflin" is to the Office, "Krusty Krab" is to SpongeBob SquarePants, "The Daily Planet" and "Kryptonite" are to Superman. *See, e.g.*, *Viacom Int'l* v. *IJR Cap. Inv., LLC*, 891 F.3d 178, 188-89 (5th Cir. 2018); *see also* Complaint, *NBCUniversal Media, LLC* v. *Jay Kennette Media Grp. LLC*, Case No. 2:22-cv-04541, ECF No. 1, ¶¶ 73, 75 (C.D. Cal. July 1, 2022) (alleging the "Dunder Mifflin" mark is source-identifying).  At a minimum, such facts support an inference

Defendants use the Waves marks on products outside of the series emphasizes that the marks are being used in a true trademark sense.

-14-

that Defendants intended to (and did) use the Waves marks in a source-identifying way here too.  *See Jack Daniel's*, 599 U.S. at 160 (looking to "VIP's practice as to other products in the Silly Squeakers line," including its other trademark registrations, despite the at-issue "Bad Spaniels" mark remaining unregistered).

### b. Defendants' Arguments Do Not Negate Their Use of the Marks To At Least in Part Identify Source.

Attempting to sidestep such extensive factual allegations, Defendants make three arguments, none of which is persuasive.

*First*, Defendants quibble with whether its marketing activities can be evidence that it used the Waves mark as a source identifier (Mot. at 8-9), but *Jack Daniel's* and its progeny have already answered that question in the affirmative.  *E.g.*, *Jack Daniel's*, 599 U.S. at 160 (analyzing the way the product at-issue was marketed in determining source-identification); *Punchbowl, Inc.*, 90 F.4th at 1031 (9th Cir. 2024) (same); *Davis*, 2024 WL 5182630, at *2 (same); *Moody's Art*, 2024 WL 4830013, at *5 (same); *Sajahtera*, 2024 WL 3086551, at *3 (same); *Diece-Lisa Indus.*, 2024 WL 5413113, at *6 (same). Arguing otherwise, Defendants rely on and quote from cases applying the *wrong* legal standard because they predate *Jack Daniel's*.  (Mot. at 9.)  In particular, Defendants cite to *Jackson* v. *Netflix, Inc.*, 506 F. Supp. 3d 1007, 1014 (C.D. Cal. 2020), and *Twentieth Century Fox Television* v. *Empire Distrib., Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017), as support for the proposition that "[i]f the type of promotion Pepperdine references meant the *Rogers* test did not apply, few expressive works would ever enjoy First Amendment protection—which is plainly not the law." (Mot. at 9.)  But these cases predate the Supreme Court's express reliance on such evidence in *Jack Daniel's* and the Court's explicit ruling that the First Amendment is sufficiently protected under the likelihood of confusion analysis when a defendant is using the mark at least in part as a source identifier.  *Jack Daniel's*, 599 U.S. at 159 ("The Ninth Circuit was mistaken to believe that the First Amendment demanded such a result . . . , the First Amendment does not demand a threshold inquiry like the *Rogers* test.").   And the Ninth Circuit has subsequently acknowledged that *Jack Daniel's* changed the law.  *Punchbowl, Inc.*, 90 F.4th at 1031.

-15-

Defendants also rely on *JTH Tax LLC* v. *AMC Networks Inc.*, 694 F. Supp. 3d 315 (S.D.N.Y. 2023), which is factually distinct and actually directly undercuts Defendants' argument. Indeed, the court in *JTH Tax* specifically noted that "[w]hether a defendant [has used the mark as a source identifier] may entail an investigation into, *inter alia*, whether the challenged material appeared . . . *in any other advertising or promotional materials* related to [the] product, and the degree to which defendants were trying to create, through repetition . . . a[n] association between [themselves] and the [mark.]" *Id.* at 331 (emphasis added; cleaned up). That is precisely what Defendants did here by using the Waves marks in advertising and promotional materials, and through lots of repetition in the show and elsewhere. In any event, the facts in *JTH Tax* could not be more different than the facts alleged here. In that case, the allegedly infringing use was tangential, appearing only a few times in a single episode of a show in its sixth season and for "less than one second" in the promotional trailer, *id.* at 323, 325, as opposed to the pervasive and central use here where the Waves marks appear hundreds of times throughout *Running Point* and in Defendants' marketing and advertising. (FAC ¶¶ 4-5, 67-68, 76-81, 85.)

*Second*, Defendants attempt to confuse the issues by claiming that "no reasonable consumer would conclude upon seeing the Los Angeles Waves name or logo in *Running Point* that Pepperdine is now in the TV business and sponsored the series." (Mot. at 9-11.) This misses the point. The only question on this motion is whether Pepperdine has adequately alleged that Defendants are using the Waves marks to identify the source of *their* product (*Running Point*) or themselves. The Amended Complaint includes extensive factual allegations about Defendants' source-identifying uses (*e.g.*, FAC ¶¶ 4, 62-63, 69, 71, 73, 76, 80-82, 85), which the Court is required to accept as true and from which reasonable inferences about the same must be drawn in Pepperdine's favor. And in any event, the Amended Complaint explains at great length why Defendants' infringing uses indeed cause confusion as to source, origin, sponsorship, approval, affiliation, connection, or association. (*Id.* ¶¶ 64, 123, 137, 166.)

Defendants' cited authority this point is inapposite and easily distinguishable.

-16-

PLAINTIFF'S OPP. TO DEFENDANTS' MOT. TO DISMISS

Here, too, Defendants heavily rely on *JTH Tax*, which Defendants hold out as a paradigmatic post-*Jack Daniel's* case applying *Rogers*. (Mot. at 9, 11-12.) But Defendants fail to mention that the plaintiff in that case did not allege (or even argue that) the defendants used the marks "to identify the source of Better Call Saul or any of Defendants' products"—which is the central question as to whether *Rogers* applies. *JTH Tax*, 694 F. Supp. 3d at 332-34.[5] Defendants otherwise cite a handful of cases in which the allegedly infringing uses were purely incidental and descriptive—like *E.S.S.*, *Haas*, *Hara*, and *Down to Earth*[6]—far different from the extensive and pervasive source-identifying uses of the Waves marks alleged by Pepperdine in the Amended Complaint. (Mot. at 11-15; FAC ¶¶ 4, 5, 47, 67-68, 71, 76.) And Defendants cite cases in which the allegedly infringing uses were intended to convey factual information, not identify source, such as identifying an employee's former company in an autobiography or identifying the person that is the subject of a documentary. *See Haas Automation, Inc.* v. *Steiner*, 2024 WL 4440914, at *6 (C.D. Cal. Sept. 25, 2024) (on appeal) (use of mark in autobiographical novel); *McGillvary* v. *Netflix, Inc.*, 2024 WL 3588043, at *13 (C.D. Cal. July 30, 2024) (use of murderer's trademarks in documentary about the murder(s)). That is not the case here. Pepperdine has more than adequately alleged that the Waves marks were used "at least in part" to identify source, as indicated by the four categories of evidence described above and alleged in the Amended Complaint. *Supra*, at IV.A.1.a.

*Third*, Defendants advance the incredible argument that "in-series uses are"

---

[5] Even if source identification were properly presented to the court in *JTH Tax* (it was not), as described above, the case is factually distinct from this one.

[6] *Cf. E.S.S. Ent. 2000, Inc.* v. *Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (finding the use of the fictional depiction of a strip club's trade dress in a video game was incidental and not source-identifying during summary judgment stage); *Haas Automation, Inc.* v. *Steiner*, 2024 WL 4440914, at *6 (C.D. Cal. Sept. 25, 2024) (finding that use of Haas Automation's marks in *Surviving to Drive* novel was not used to brand the book); *Hara* v. Netflix*, Inc.*, 2023 WL 6812769 at *1-4 (C.D. Cal. Aug. 23, 2023) (on appeal) (finding that because the claim was not based on the use of a trademark, but rather on alleged misappropriation of identity, and there was no plausible allegation that plaintiff's likeness was a source identifier for the series); *Down to Earth Organics, LLC* v. *Efron*, 2024 WL 1376532, *4-5 (S.D.N.Y. Mar. 31, 2024) (finding the phrase "Down to Earth" in the title *Down to Earth with Zac Efron* was not used as a source identifier, but to describe the tone and subject matter of the series).

always "protected expression, not source-identifying grounds for liability." (Mot. at 9.) Practically, if that were the case then there would be no limit on a defendant's ability to use someone else's trademark in an expressive work without license, which the Supreme Court unequivocally held in *Jack Daniel's* is not the case. 599 U.S. at 158-59. The entertainment industry cannot be per se exempt from the trademark laws for all of their shows, movies and other creative content. If *Rogers* applies at all, it must be based on specific facts and circumstances in each case, and on that point, Defendants offer no authority to permit the Court to depart from the facts alleged and reasonable inferences drawn from the Amended Complaint here.

Even beyond that argument's facial overbreadth, Defendants (or at least Warner Bros.) should be judicially estopped from even making it given that they (1) have trademarked their own similarly situated fictitious businesses from shows and movies— *i.e.*, they acknowledge them as indicators of source—and (2) have even sued and enjoined third parties infringing those marks—affirmatively alleging that the marks serve as source-identifiers. *See Hamilton* v. *State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases."). For example, Warner Bros. has previously argued that fictional businesses, teams, and other entities depicted within an expressive work served as source identifiers, linking the expressive work to both Warner Bros. and its Harry Potter brand. *E.g.*, Memo. in Supp. of Mot. for Entry of TRO, *Warner Bros. Ent. Inc.* v. *The Partnerships & Unincorporated Ass'ns*, Case No. 1:25-cv-02205 (N.D. Ill. Mar. 3, 2025), ECF No. 12 at 3-4 ("[P]roducts bearing the HP Trademarks [including Gringotts (a fictional bank) and Chudley Cannons (a fictional team)] are widely recognized and exclusively associated by consumers as being high quality products ***sourced from WBEI***.") (emphasis added). The court in that case relied on Warner Bros.' assertions and granted injunctive relief. *See* Temporary Restraining Order, *Warner Bros. Ent. Inc.* v. *The Partnerships & Unincorporated Ass'ns*, Case No. 1:25-cv-02205 (N.D. Ill.

Mar. 3, 2025), ECF No. 19. Warner Bros. has argued the same in this Court, too. *Warner Bros. Ent. Inc.* v. *Random Tuesday, Inc.*, 2020 WL 12762735, at *2-3 (C.D. Cal. Nov. 9, 2020). Those positions are directly inconsistent with Defendants' position in this action and provide even more evidence that Defendants used the Waves marks as source identifiers. *Jack Daniel's*, 599 U.S. at 160 (determining source identification based on admissions made during litigation and conduct as to other similarly situated marks).

Defendants' citations to *Mattel, Inc.* v. *MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), *Louis Vuitton Malletier S.A.* v. *Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012), and *University of Ala. Bd. of Trustees* v. *New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012), do not change the result. Putting aside that these cases long pre-date the Supreme Court's clear holding in *Jack Daniel's* that any source-identifying function renders *Rogers* or any other First Amendment screen (even assuming one has any continuing viability) entirely inapplicable, 599 U.S. at 159, these cases do not support the proposition that the unauthorized use of a trademark in a fictional visual work cannot serve a source-identifying function or is absolutely immune from trademark law. The first two cases plainly relate to commentary, not source. In *Mattel*, 296 F.3d at 901, the band was commenting on the Barbie culture and its "material world," while in *Louis Vuitton*, 868 F. Supp. 2d at 178, the allegedly infringing use was when a character described his luggage as "Lewis Vuitton" in a single scene to comment on the social status implicated by the brand. And, in *Univ. of Ala. Bd. of Trustees*, 683 F.3d at 1278-79, the allegedly infringing uses were not to identify source but to depict "realistic portrayals" of "notable" events in football history, which is similar to the facts in the original *Rogers* case where the title referred to a real-life dancing couple named "Ginger and Fred." *Rogers*, 875 F.2d at 996-97. The uses at issue in those cases are very different from the types of uses alleged here, involving pervasive use of the Waves marks in a manner that, whatever artistic value it may have, also designates source.

Accepting as true Pepperdine's extensive allegations about Defendants' use of the marks as source identifiers, and drawing all inferences in Pepperdine's favor, the

Court should find that the *Rogers* test does not apply and deny the Motion. *See, e.g.*, *Punchbowl*, 90 F.4th at 1031; *Davis*, 2024 WL 5182630, at *2; *Moody's Art*, 2024 WL 4830013, at *5.

**2.      Even Under *Rogers*, Pepperdine's Claims Prevail.**

Because *Rogers* does not apply at the threshold, the inquiry should end. But even if *Rogers* did apply, Pepperdine's claims would still survive because the Amended Complaint plausibly alleges that Defendants' use of the Waves marks explicitly misleads as to source or content under the second prong of the *Rogers* test. *See Gordon* v. *Drape Creative*, 909 F.3d 257, 269 (9th Cir. 2018) (finding a triable issue of fact as to whether use of the "Honey Badger" mark was explicitly misleading as to source). The Amended Complaint alleges that Defendants knowingly and intentionally named the team "Waves" so as to trade on the goodwill that Pepperdine built over 87 years; that Defendants knew or should have known about the Waves marks and Pepperdine's ownership of them, which were being used for the same purpose (sports-related entertainment) and appeared in virtually identical ways; and that at least some reasonable consumers will be misled as to content "because consumers will be confused about an explicit misrepresentation of Pepperdine's endorsement of the team, the show, and its contents." (FAC ¶¶ 92-93, 103-09; *see also id.* ¶ 28.) Most importantly, the Amended Complaint alleges that Defendants have proclaimed themselves to be the "home of the Los Angeles WAVES," which, like "'Nimmer on Copyright,' 'Jane Fonda's Workout Book,' or 'an authorized biography'" "explicitly misstate[s] who authored or endorsed" the series. *Dr. Seuss Enter., L.P.* v. *ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020). Seeing the brand on celebrities' clothes and on products, combined with Defendants' proclamations, it is reasonable to infer that consumers are likely to be explicitly misled about source. (FAC ¶ 94.) This is reinforced by the fact that, after the series was released, online searches for "Los Angeles Waves Basketball" display mixed results showing Pepperdine and the series—where, before the series was released, such searches yielded only Pepperdine-related results. (*Id.* ¶ 60.)

Defendants' only discernible argument here appears to be that *Running Point*

SULLIVAN & CROMWELL LLP

-20-

never directly references Pepperdine by name.  (Mot. at 4.)  But application of *Rogers* is not so rigid.  *Gordon*, 909 F.3d at 269-70 ("We therefore reject the district court's rigid requirement that, to be explicitly misleading, the defendant must make an affirmative statement of the plaintiff's sponsorship or endorsement.").  Here, considering Defendants' proclamation of the Waves' "home," the mark, the colors, the sports-team environment, the emphasized "37" jersey, the city, and other indicia of source, especially in combination, it is difficult to draw any conclusion other than that Defendants' infringing use is explicitly misleading as to source or content.  At a minimum, that must be the conclusion if all inferences are drawn in Pepperdine's favor, as they must be at this stage.  Therefore, even if *Rogers* applies, Pepperdine's trademark infringement claims should not be dismissed.

### 3.    Alternatively, The *Rogers* Test Should Be Abandoned.

Although the Court need not reach this issue to deny the motion, the *Rogers* test should be abandoned in light of the serious questions raised by justices of the Supreme Court about its continued viability.  *Jack Daniel's*, 599 U.S. at 156, 158 (giving a mark with other expressive content unfettered First Amendment protection might lead the *Rogers* test to "take over much of the world"); *id.* at 165 (Gorsuch, J., joined by Thomas, J., and Barrett, J., concurring) ("[I]t is not entirely clear where the *Rogers* test comes from . . . . For another thing, it is not obvious that *Rogers* is correct in all its particulars—certainly, the Solicitor General raises serious questions about the decision.  All this remains for resolution another day, . . . and lower courts should be attuned to that fact.").  The Lanham Act specifies the applicable standard to assert trademark infringement—the likelihood of confusion.  15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A).  Indeed, *Rogers* was decided under a predecessor version of the Lanham Act, and that version of Section 1125(a) did not explicitly refer to the likelihood of confusion (as it does today).  *Compare* 15 U.S.C. § 1125(a) (1982) (quoted in *Rogers*, 875 F.2d at 997), *with* 15 U.S.C. § 1125(a)(1)(A).  Moreover, the Lanham Act does not prescribe a special test with heightened scrutiny that a plaintiff must satisfy when a work is "expressive," whatever that may mean.  Courts should not displace the statutory standard for a judicially created one under an outdated

-21-

version of the Act—especially a standard not actually required by the First Amendment.

The First Amendment does not confer any right to use another person's trademark, or a confusingly similar mark, especially for commercial purposes. The Lanham Act's likelihood-of-confusion standard itself appropriately balances the First Amendment interest in freedom of expression with the trademark owner's interest in protecting its brand and goodwill. As the Supreme Court has explained, "[w]hen a mark is used as a mark (except, potentially, in rare situations), the likelihood-of-confusion inquiry does enough work to account for the interest in free expression." *Jack Daniel's*, 599 U.S. at 159. The *Rogers* test should be rejected.

**B.     The Non-Commercial Use Exception Does Not Apply To Pepperdine's Trademark Dilution Claim Under California Law (Count V)**

Defendants also argue that Pepperdine's trademark dilution claim under California law is barred by the "non-commercial use" exception, relying primarily on *Mattel, Inc.* v. *MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1154-55 (C.D. Cal. 1998). In Defendants' view, the non-commercial use exception applies to its plainly commercial use because its "speech" is not purely commercial. (Mot. at 19-20.) But Defendants' argument is outdated and inconsistent with recent Ninth Circuit and Supreme Court precedent that narrows the exception's scope when a mark is used to identify the defendant's own goods.

The Supreme Court made clear in *Jack Daniel's* that the Lanham Act's non-commercial use exception to trademark dilution does not apply when a defendant uses the asserted mark "as a designation of source for [defendant's] own goods."[7] 599 U.S. at 162. And courts applying *Jack Daniel's* have declined to apply the non-commercial use exception, where, as here, a defendant uses a mark in a way that suggests source, sponsorship, or affiliation, as discussed at length above. *See, e.g.*, *Punchbowl*, 90 F.4th at 1031; *Davis*, 2024 WL 5182630, at *2; *Moody's Art*, 2024 WL 4830013, at *5.

---

[7] Courts in the Ninth Circuit have long recognized that California's dilution law is interpreted in tandem with federal law. *See Panavision Int'l, L.P.* v. *Toeppen*, 945 F. Supp. 1296, 1302 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998). Thus, *Jack Daniel's* applies to California state law claims.

This makes good sense given the statutory text and structure. Both the Lanham Act, 15 U.S.C. § 1125(c)(3), and Cal. Bus. & Prof. Code § 14247(b) include the same three exceptions to trademark dilution: (A) fair use; (B) news reporting and commentary; and (C) noncommercial use. And in both statutes, the fair use exception includes a specific limitation—it does not apply when the use is "a designation of source for the [defendant's] own goods or services." 15 U.S.C. § 1125(c)(3)(A); Cal. Bus. & Prof. Code § 14247(b)(1); *see Jack Daniel's*, 599 U.S. at 162. If the non-commercial use exception were held to exclude any uses that were not *purely* commercial (*i.e.*, contained some protected expression), it would render superfluous the fair use exception and its specific limitation—violating the principle that courts should normally seek to construe "Congress's work so that effect is given to all provisions, so that no part will be inoperative or superfluous." *Ysleta del Sur Pueblo* v. *Texas*, 596 U.S. 685, 698-99 (2022); *Jack Daniel's*, 599 U.S. at 162. Likewise, most "news reporting and news commentary" includes some expressive content, so that limitation, too, would be rendered superfluous if the non-commercial use exception applied to all uses, whether or not source-identifying. *See* Cal. Bus. & Prof. Code § 14247(b)(3), 15 U.S.C. § 1125(c)(3)(B).

Here, the allegations of Pepperdine's Amended Complaint are more than sufficient under a Rule 12(b)(6) standard. Defendants' use of the Waves marks is plainly commercial, even though it purportedly contains some expressive elements. Beyond being connected to a series that is being offered commercially, Defendants' use of the Waves marks serves a commercial purpose—to identify, attract attention for, and drive engagement with *Running Point*. (*See, e.g.*, FAC ¶¶ 4, 76-79.) Pepperdine also provides detailed allegations showing that Defendants used Pepperdine's marks and branding in connection with the promotion of *Running Point* and Defendants themselves in a manner that implies endorsement or affiliation. (*Id.* ¶¶ 1-2, 4, 44, 49, 51-54, 56, 71.)

Defendants' reliance on *Mattel*, 28 F. Supp. 2d 1120, is misplaced. Although that case involved a satirical song titled "Barbie Girl," the Barbie mark was not used to identify the source of the song itself, but rather as commentary on the Barbie culture and

its "material world." *See Jack Daniel's*, 599 U.S. at 154 ("[T]he band's use of the Barbie name was 'not [as] a source identifier': The use did not 'speak[] to [the song's] origin.'") (alteration in original).  Unlike in *Mattel*, Defendants here purport to be the source—the "home"—of the Waves.  There is no satire or parody in Defendants' use, and viewers can be easily misled to believe that the source of the Waves is *Running Point* and Defendants.

### C.      Pepperdine Adequately Alleges False Advertising (Counts IV and VII)

Defendants also argue that Counts IV and VII, Pepperdine's false advertising claims under the Lanham Act, 15 U.S.C. § 1125, and California's False Advertising Law ("FAL"), should be dismissed.  (Mot. at 20-21.)  But as alleged in the Amended Complaint, Defendants have in fact made false statements about their own and Pepperdine's products, misleading consumers and causing harm to Pepperdine's reputation.  (*See* FAC ¶¶ 88, 91, 93, 101-02, 120, 145, 168.)  Namely, by falsely implying that Pepperdine is affiliated with the Waves in the *Running Point* series, Defendants have made actionable false statements about their own goods.  Further, Pepperdine has plausibly alleged that it has suffered economic injury as a direct result of the defendants' false advertising and unauthorized use of the WAVES marks.  (*See id.* ¶¶ 88, 101, 102, 122, 146, 153, 162, 172, 173.)

Defendants argue that Pepperdine has not alleged a literal false statement about the nature, characteristics, or qualities of either party's goods or services.  No such allegation is required.  The Ninth Circuit has made clear that a false advertising claim under the Lanham Act may be based on implied misrepresentations or deceptive context, not just express falsehoods.  *Ariix, LLC*, 985 F.3d at 1121.  Pepperdine alleges that Defendants' use of the Waves marks misleads consumers into believing there is an affiliation, endorsement, or sponsorship by Pepperdine.  Even if no explicitly false statement is made, the wholesale and pervasive misappropriation of Pepperdine's brand to name and promote a sports team can mislead consumers and constitute false advertising.  *See id.*

Defendants' argument imposes an unduly narrow view of false advertising law.  Defendants rely on *Gearsource Holdings, LLC* v. *Google LLC*, 2020 WL 3833258 (N.D. Cal. July 8, 2020), and similar cases to argue that mere trademark use cannot support

a false advertising claim.  But this ignores the Ninth Circuit's recognition that misleading use of a mark—particularly when it implies endorsement or affiliation—can be actionable. *See Ariix, LLC*, 985 F.3d at 1121.  And Defendants concede (Mot. at 20) that California FAL claims are "substantially congruent" with Lanham Act claims.  *See Allergan USA, Inc.* v. *Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1108 (C.D. Cal. 2019).  Taking its allegations as true, the Amended Complaint plausibly states such claims.

Finally, in a footnote, Defendants argue that Pepperdine's claims under the FAL and California's Unfair Competition Law fail because Pepperdine has not alleged economic injury.  This is incorrect.  Pepperdine addresses the substantial economic injury it faces throughout the Amended Complaint.  (*See, e.g.*, FAC ¶¶ 88, 101, 102, 122, 146, 153, 162, 172, 173.)  To plead a claim, it does not have to quantify its injury.  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 897 (N.D. Cal. 2018) ("Plaintiffs are not required to quantify their damages . . . in order to establish injury . . . so long as the *fact* of injury is not speculative.") (internal citation and quotations omitted).

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the First Amended Complaint should be denied.[8]

---

[8] Defendants assert that if their motion is granted, Pepperdine should not be given leave to amend.  (Mot. at 21.)  Although the allegations of the Amended Complaint are more than adequate and Defendants' motion should be denied, if the Court were to disagree, leave to amend should be given because leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  This policy is applied with "extreme liberality." *DCD Programs, Ltd.* v. *Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Lopez* v. *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).  Dismissal without leave to amend (*i.e.*, with prejudice) is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson* v. *Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Additionally, in the last footnote of their motion (Mot. at 22), Defendants improperly attempt to preserve their right to file a later anti-SLAPP motion under California law. While such a motion would be baseless, they have no such right to preserve because the time within which they were required to bring such a motion has expired. *See* Cal. Civ. Proc. Code § 425.16 (must be brought within 60 days of service); *Newport Harbor Ventures, LLC* v. *Morris Cerullo World Evangelism*, 4 Cal. 5th 637, 639-40, 651 (2018) ("a defendant must move to strike a cause of action within 60 days of service of the earliest complaint that contains that cause of action").

Dated:        May 30, 2025

*/s/Andrei Iancu*
Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:   (650) 461-5600
Facsimile:   (650) 461-5700

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone: (310) 979-9190


*Attorneys for Plaintiff Pepperdine University*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Pepperdine University, certifies that this brief contains 25 pages, which complies with the page limit of this Court's Standing Order.

Dated:  May 30, 2025

*/s/Andrei Iancu*
Andrei Iancu

SULLIVAN & CROMWELL LLP