DANIEL M. PETROCELLI (SBN 97802)
dpetrocelli@omm.com
MATT KLINE (SBN 211640)
mkline@omm.com
AMY R. LUCAS (SBN 264034)
alucas@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEPPERDINE UNIVERSITY,<br><br>        Plaintiff,<br><br>    v.<br><br>NETFLIX, INC., WARNER BROS. ENTERTAINMENT INC., and KALING INTERNATIONAL, INC.,<br><br>        Defendants. | Case No. 2:25-cv-01429-CV (ADSx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:  June 20, 2025<br>Time:  1:30 p.m.<br>Place:  Courtroom 5D<br>Judge:  Hon. Cynthia Valenzuela |

**TABLE OF CONTENTS**

**Page**

I.  Introduction................................................................................................1

II. *Rogers* Is Binding Law. ..........................................................................2

III. *Rogers* Bars Pepperdine's Claims. ........................................................2

    A.    Defendants Do Not Use "Waves" in a Source-Identifying Way....................2

        1.    Defendants' Use of the Los Angeles Waves Marks Within the Series......6

        2.    Defendants' Use of the Los Angeles Waves Marks in Marketing.............6

        3.    The Market's "Understanding" of Defendants' Use of the Los Angeles Waves Marks ........................................................................................9

        4.    Defendants' Use of Other Unrelated Marks on Merchandise .................10

    B.    Pepperdine Cannot Prevail under *Rogers*. ........................................12

IV. Pepperdine's State Law Claims Are Barred. ..........................................14

V.  Conclusion ...............................................................................................15

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ....................................................................................15

*Belin v. Starz*,
  2024 WL 4720795 (C.D. Cal. Sept. 20, 2024) ............................................................4

*Davis v. Blue Tongue Films*,
  2024 WL 5182630 (9th Cir. Dec. 20, 2024) ........................................................4, 9, 14

*Diece-Lisa Indus. v. Disney*,
  2024 WL 5413113 (C.D. Cal. May 1, 2024) .............................................................5, 8

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) ................................................................................12, 13

*Gearsource Holdings, LLC v. Google LLC*,
  2020 WL 3833258 (N.D. Cal. July 8, 2020) ...............................................................15

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ......................................................................................12

*Hall v. Time Inc.*,
  158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008) .......................................15

*Hara v. Netflix, Inc.*,
  2023 WL 6812769 (C.D. Cal. Aug. 23, 2023) ...........................................................7, 8

*HomeVestors v. Warner Bros. Discovery*,
  2023 WL 6880341 (D. Del. Oct. 18, 2023), *adopted*, 2023 WL 8826729
  (D. Del. Dec. 21, 2023) ................................................................................................5

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
  599 U.S. 140 (2023) ............................................................................................passim

*JTH Tax LLC v. AMC Networks Inc.*,
  694 F. Supp. 3d 315 (S.D.N.Y. 2023) ..................................................................2, 7, 8

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ................................................................................................15

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
  868 F. Supp. 2d 172 (S.D.N.Y. 2012) ......................................................................3, 8

*Mattel, Inc. v. MCA Recs., Inc.*,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) ...8, 14

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mattel, Inc. v. MCA Recs., Inc.*,
296 F.3d 894 (9th Cir. 2002) ................................................................................ 3, 14

*Moody's Art v. Fashion Nova*,
2024 WL 4830013 (C.D. Cal. Feb. 29, 2024) .................................................... 5, 8, 14

*Mossack Fonseca & Co., S.A. v. Netflix Inc.*,
2020 WL 8509658 (C.D. Cal. Dec. 23, 2020) .......................................................... 15

*Murray v. Cable Nat'l Broad. Co.*,
86 F.3d 858 (9th Cir. 1996), *as amended* (Aug. 6, 1996) .................................... 13

*NBCUniversal Media, LLC v. Jay Kennette Media Grp. LLC*,
653 F. Supp. 3d 732 (C.D. Cal. 2023) ....................................................................... 11

*NBCUniversal Media, LLC v. Jay Kennette Media Grp. LLC*,
Case No. 2:22-cv-04541 (C.D. Cal. July 1, 2022) ................................................... 11

*Punchbowl, Inc. v. AJ Press, LLC*,
90 F.4th 1022 (9th Cir. 2024) ........................................................................... passim

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .............................................................................. passim

*Roxbury Ent. v. Penthouse Media Grp., Inc.*,
669 F. Supp. 2d 1170 (C.D. Cal. 2009) .................................................................... 14

*Sajahtera v. Kitross Apparel*,
2024 WL 3086551 (C.D. Cal. June 10, 2024) .......................................................... 5, 8

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) ..................................................................................... 15

*Tovey v. Nike, Inc.*,
2014 WL 3510975 (N.D. Ohio July 10, 2014) ............................................................ 7

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
875 F.3d 1192 (9th Cir. 2017) ...................................................................................... 7

*Univ. of Alabama Bd. of Trs. v. New Life Art, Inc.*,
683 F.3d 1266 (11th Cir. 2012) .................................................................................... 3

*Vans v. MSCHF Product*,
88 F.4th 125 (2d Cir. 2023) .......................................................................................... 5

*Viacom Int'l v. IJR Cap. Inv., LLC*,
891 F.3d 178 (5th Cir. 2018) ...................................................................................... 10

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*,
  2020 WL 12762735 (C.D. Cal. Nov. 9, 2020) ........................................................ 11

*Warner Bros. Ent. Inc. v. The Partnerships & Unincorporated Ass'ns*,
  Case No. 1:25-cv-02205 (N.D. Ill. Mar. 3, 2025) ................................................ 11

**Other Authorities**

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
  § 11:46 (5th ed. 2025 Westlaw) ............................................................................ 8

**Rules**

Fed. R. Evid. 407 ................................................................................................... 9

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

## I.    INTRODUCTION

Pepperdine started this lawsuit by filing an emergency TRO that completely ignored *Rogers*, never once mentioning it.  It now invites the Court to abandon *Rogers*, thereby disregarding decades of binding precedent and ignoring the Ninth Circuit's explicit admonition that *Jack Daniel's* did not overrule *Rogers*.  Whether pretending *Rogers* doesn't exist or asking the Court to overturn that seminal case, it is clear that Pepperdine has known all along that its claims fail under *Rogers*' test.

Pepperdine attempts to distinguish the Court's prior ruling on *Rogers* by saying that Defendants use the Los Angeles Waves marks in a source-identifying way, and not as artistic expression.  Not only does Pepperdine rely on factually unsupported legal conclusions and inapposite caselaw to so argue, but its brief ignores the dispositive test.  *Rogers* asks whether a reasonable viewer would see Los Angeles Waves logos in scenes in *Running Point*—on a *fictional* pro basketball team's jerseys and court—and conclude that the logos identify the *creator of the series*, as opposed to a fictional team in a Netflix show.  This Court has already answered that question:  No.

Grasping at straws, Pepperdine suggests that Los Angeles Waves marks in random internet posts and premiere tickets somehow change the analysis.  But courts agree that the use of *fictional* marks to promote an expressive work does not negate *Rogers*' protection.  Pepperdine's vague arguments about "market understandings" of the Los Angeles Waves marks—based on unauthorized third-party t-shirt sales—conspicuously cites no law, and seeks to impose third-party liability on Defendants in a way the law does not permit.  Finally, Defendants' protection of marks like Harry Potter—associated with decades-long merchandising campaigns—is a red herring.  Pepperdine does not allege, nor could it, that Defendants sell any Los Angeles Waves merchandise.

Defendants' motion to dismiss should be granted with prejudice.  Pepperdine had its chance to amend; it cannot escape *Rogers*.

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

## II.   *ROGERS* IS BINDING LAW.

Showing its hand, Pepperdine argues "the *Rogers* test should be abandoned" in light of questions certain Justices raised in *Jack Daniel's*.  Opp. at 21-22.[1]  The Ninth Circuit has rejected Pepperdine's view, holding that *Rogers* remains good law:  "The Court in *Jack Daniel's* was careful to note that it was *not* opining on the broader validity of the *Rogers* test."  *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1029 (9th Cir. 2024).  Because "*Jack Daniel's* was confined to a narrow point of law…, preexisting Ninth Circuit precedent adopting and applying *Rogers* otherwise *remains intact and binding*."  *Id*. at 1031.  Pepperdine's invitation to abandon *Rogers* and *Punchbowl* should be rejected.

## III.   *ROGERS* BARS PEPPERDINE'S CLAIMS.

### A.   Defendants Do Not Use "Waves" in a Source-Identifying Way.

Pepperdine says even if *Rogers* does apply, its FAC "teem[s]" with allegations that Defendants use "Waves" in a source-identifying manner.  Opp. at 9.  Its descriptions of the purported facts and legal tests do not track governing law.

Indeed, Pepperdine repeatedly misstates the threshold *Rogers* inquiry.  The question is **_not_** "whether Pepperdine has adequately alleged that Defendants are using the Los Angeles Waves marks to identify the source of their product (*Running Point*) *or themselves*."  Opp. at 16.  And it is **_not_** whether Defendants "purport to be the source … *of the Waves*," or whether viewers are "misled to believe that the source *of the Waves* is *Running Point* and Defendants."  *Id*. at 24.  Rather, "[w]hen the infringing use is a *fictional product or service* shown or referenced *in a work of fiction*, the relevant product for the purpose of comparison to the senior use is the *work of fiction itself* rather than the fictional product or service depicted within that work."  *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 336 (S.D.N.Y. 2023).  As this Court stated, "Defendants' only product at issue is the *Running Point* series."  Order Denying Mot. for TRO [Dkt.

---

[1] Unless noted, internal cites and quote marks are omitted and emphases added.

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

26] ("Order") at 7. So the question under *Rogers* is whether Defendants' use of Los Angeles Waves identifies the source *of the series*. And that is because the ultimate question is whether "defendant may be trading on the good will of the trademark owner to market its own goods." *Jack Daniel's*, 599 U.S. at 156. Defendants are doing no such thing. The source of the series is unquestionably Netflix, Warner, and Kaling, as clearly indicated in the show's title cards, credits, and promotions.

In *Running Point*, Defendants use the fictional Los Angeles Waves team to tell a comedic story about a woman's rise to power in pro sports—not to tell consumers who wrote, produced, or distributed the series. No reasonable viewer would see the fictional team's logo in scenes and conclude that the Los Angeles Waves, or even Pepperdine, created the series. This case is a core expressive use, and a far cry from the "paradigmatic infringement case" the Supreme Court described in which *Rogers* should not apply—*i.e.*, where an alleged infringer (like a luggage manufacturer) attempts to confuse consumers into believing the mark's senior user (Louis Vuitton) created their suitcases. *Jack Daniel's*, 599 U.S. at 157.

There is no ambiguity here: *Running Point* makes its actual sources clear—its title cards and credits, which is where a reasonable viewer looks to identify the source of a TV series, refer accurately to the series' producers and never mention Pepperdine (or the fictional Los Angeles Waves, for that matter). *E.g.*, Kline Decl. [Dkt. 40-1] Ex. A, Episode No. 101 at 00:00-00:16, 29:23-29:38; *see also* FAC ¶ 84; Order at 7-8. One can watch all 10 episodes of the series—as Pepperdine has now had a chance to do—and not once is the university mentioned. Rather, a fictional pro basketball team called the Los Angeles Waves is, and its story has nothing to do with a small private university in Malibu.

Pepperdine attempts to distinguish the situation here from the *Mattel*, *Louis Vuitton*, and *University of Alabama* cases. Opp. at 19. It argues they "long pre-date" *Jack Daniel's*. *Id.* But that omits that the Supreme Court in *Jack Daniel's* specifically cited these three cases approvingly. *See* 599 U.S. at 154-55; Order at 5-

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

6. Each court properly applied *Rogers* because the trademarks at issue were "used not to designate a work's source, but solely to perform some other expressive function." *Jack Daniel's*, 599 U.S. at 154-55. As here, each case involved the use of a mark within an *expressive work*—in the "Barbie Girl" song, the movie *The Hangover: Part II*, and sports paintings. *Id*. Despite the use of widely recognized trademarks like Barbie, Louis Vuitton, and Alabama's Crimson Tide, defendants' use of those marks could not reasonably be read to speak to the origin of the respective expressive works. *Id*. *Jack Daniel's* called particular attention to the Ninth Circuit's reasoning in *Mattel* that "a consumer would no more think that the song was produced by Mattel than would, upon hearing Janis Joplin croon 'Oh Lord, won't you buy me a Mercedes Benz?,' … suspect that she and the carmaker had entered into a joint venture." *Id*. Here, no consumer would think that Pepperdine, a small university in Malibu, had produced *Running Point* because the show uses "Los Angeles Waves" as the name for a fictional pro basketball team.

Pepperdine instead relies on inapposite cases post-dating *Jack Daniel's*, in which courts declined to apply *Rogers*, but on very different grounds. Opp. at 12.

- In *Punchbowl*, defendant used plaintiff's mark "Punchbowl" in the name of defendant's company, website, and masthead, all uses that indicated source. 90 F.4th at 1031-32; *see* Order at 6.
- In *Davis v. Blue Tongue Films*, makers of the movie *Gringo* tried to "exploit[] the goodwill, public recognition and commercial success enjoyed by [the plaintiff's] book" of the same name; indeed, the filmmakers changed the film name to *Gringo* after the book achieved notoriety. 2024 WL 5182630, at *1-2 (9th Cir. Dec. 20, 2024) (mem. op.).
- In *Belin v. Starz*, defendants used the mark at issue in the title of their show and filed a trademark application to register the mark for various merchandise, including mobile phone cases, jewelry, bags, and beverage ware. 2024 WL 4720795, at *4-5 (C.D. Cal. Sept. 20, 2024).

- 4 -

- *Moody's Art v. Fashion Nova* involved the phrase "Sorry I was trappin" printed on shirts, leading the court to analyze indication of source versus ornamentation—but here, Defendants have sold no merchandise. 2024 WL 4830013, at *1-2, *5 (C.D. Cal. Feb. 29, 2024).

- *Sajahtera v. Kitross Apparel* again involved merchandise: a brick-and-mortar retailer in Beverly Hills selling a coconut image inscribed with "The Beverly Hills Hotel" mark. 2024 WL 3086551, at *1-3 (C.D. Cal. June 10, 2024).

- *Diece-Lisa Indus. v. Disney* involved merchandise, too. 2024 WL 5413113, at *2 (C.D. Cal. May 1, 2024). The court distinguished the situation it faced from the circumstances here: "the Disney Defendants did not use [plaintiff's stuffed animal] Mark in *Toy Story 3*. Rather, the[y] used a slightly modified version of the Mark as the name of their stuffed bear character … which, then, appeared in … books and videos games, and as a toy in the retail market. The Disney Defendants' use is analogous to the Supreme Court's [hypothetical in *Jack Daniel's*] where a luggage manufacturer used an ever-so-slightly modified Louis Vuitton logo to sell suitcases." *Id*. at *6.

- *Vans v. MSCHF Product* also involved merchandise, with defendant using "Vans' trademarks—particularly its red and white logo—to brand its own" shoe, seeking "to benefit from the 'good will' that Vans … generated over a decades-long period." 88 F.4th 125, 138-39 (2d Cir. 2023).

- And *HomeVestors v. Warner Bros. Discovery* involved allegations that the defendant "sought to take advantage of consumer recognition" of plaintiff's brand by using its mark in a TV show title and actively competed with plaintiff for the same homeowners. 2023 WL 6880341, at *5 (D. Del. Oct. 18, 2023), *adopted*, 2023 WL 8826729 (D. Del. Dec. 21, 2023).

In stark contrast to the cases Pepperdine cites, this case does not involve any attempted exploitation of goodwill—Pepperdine alleges it only as a bare legal conclusion. *See* FAC ¶ 123. Nor does it involve the sale of merchandise to the

- 5 -

public, or an attempt by Defendants to trademark "Waves."  Rather, the use here serves an expressive, creative function: naming a fictional pro basketball team after a common geographic feature used by scores of sports teams as a nod to their location.  And the team name, as is made plain in the narrative of the series and ads, does not identify the *source* of the series—which is Netflix, Warner, and Kaling.

Pepperdine's asserted categories of "source-identification" likewise all fail:

### 1.   Defendants' Use of the Los Angeles Waves Marks Within the Series

Pepperdine first claims that Defendants' use of the Los Angeles Waves marks is source-identifying because "*Running Point* is so much about the Waves." Opp. at 13.  The relevant question, though, is whether Defendants use the Los Angeles Waves marks to identify *the source* of the series.  Defendants do not dispute that the Los Angeles Waves fictional pro team is a plot point in *Running Point* that serves as the backdrop for the characters.  That does not mean, however, that Defendants use the Los Angeles Waves marks to identify the source of *Running Point*—*i.e.*, who *made* or *produced* the show—any more than they use the show's main character (Kate Hudson's Isla Gordon) as the source-identifier. Pepperdine does not cite a single case to support this theory of liability.  It makes no sense; no one reasonably believes that Luke Skywalker, the Force, the Death Star, or Yoda *made* the *Star Wars* movies.

### 2.   Defendants' Use of the Los Angeles Waves Marks in Marketing

There is no allegation that Defendants sell Waves-branded merchandise.  The most Pepperdine can allege is that the Los Angeles Waves marks appear in series-related promotion.  But as a matter of law, use of the fictional team name in marketing *Running Point* does not render *Rogers* inapt.  *Contra* Opp. at 13-16.  As the *JTH Tax* court explained, "[t]he *Rogers* balancing test applies … to expressive works of a hybrid nature, combining artistic expression and commercial

- 6 -

promotion," including where a defendant has used marks "in promotional material." *JTH Tax*, 694 F. Supp. 3d at 330 n.2 (collecting cases).  Or as the Ninth Circuit aptly put it:  "The balance of First Amendment interests struck in *Rogers* and *Mattel* could be destabilized if the titles of expressive works were protected but could not be used to promote those works." *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017).  While Pepperdine argues that *Empire* pre-dates *Jack Daniel's*, *Empire*'s reasoning remains valid, narrow, and apt.  Post-*Jack Daniel's*, courts continue to cite Empire on this very point.  *E.g.*, *Hara v. Netflix, Inc.*, 2023 WL 6812769, at *3 (C.D. Cal. Aug. 23, 2023); *JTH Tax*, 694 F. Supp. 3d at 330 n.2.

Pepperdine complains that the fictional Los Angeles Waves name and logo appear in the series' trailer—but so too do the show's main characters, which are also not source-identifying, and the title cards make clear this is a Netflix show.  Similarly, social media posts in which actors wear their costumes (athletic gear featuring the Los Angeles Waves marks), or claim to be "signed to the Los Angeles Waves," do not suggest that Defendants are using the Los Angeles Waves marks to identify the **source** of *Running Point*.  Rather, these are examples of cast members pretending to be on a fictional team, and no reasonable person would see such posts and conclude that the "Los Angeles Waves" is the show's creator.  There is no mention of Pepperdine in any of these uses; just an obviously fake pro sports team.

Incidental uses of Los Angeles Waves marks, like on chairs on set, are also not source-identifying.  These chairs are not merchandise offered to the public and, in any event, are merely ornamental.  *E.g.*, *Tovey v. Nike, Inc.*, 2014 WL 3510975, at *9 (N.D. Ohio July 10, 2014) (finding mark not used to identify the source of goods where it "consist[ed] of a common word" depicted "in different fonts, font sizes, designs, colors and locations" that did not appear on "hang tags or labels" and was not designated "as a trademark on the goods" through use of "TM"); *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:46

- 7 -

(5th ed. 2025 Westlaw).  Indeed, the plaintiff in *JTH Tax* had the same complaint as Pepperdine, *i.e.*, that the show used its mark to promote *Better Call Saul* on social media, including by posting a picture of a mug that featured the mark.  *JTH Tax*, 694 F. Supp. 3d at 325-26.  But the *JTH Tax* court correctly held:  "Defendants have *not* used Plaintiff's marks as [their] own identifying trademark."  *Id*. at 333.  As here, "to the extent Defendants used Plaintiff's marks … *they were used in furtherance of the Show's plot*," not to "identify the source of *Better Call Saul*" or "Defendants' products."  *Id*. at 332-33.

Other cases have likewise held.  In *Louis Vuitton*, plaintiff claimed that "its harm has been exacerbated by the prominent use of … LVM Marks *in commercials and advertisements for the [F]ilm*."  868 F. Supp. 2d at 175.  The court nonetheless applied *Rogers*, *id*. at 184, and the Supreme Court cited *Louis Vuitton* as correctly using that precedent, *Jack Daniel's*, 599 U.S. at 154-55.  Similarly, in writing about "Barbie Girl," the district court observed: "Plaintiff places much significance on the fact that defendants attempted *to market their song, through ads, videos, and promotional stickers*….  The fact that defendants' product makes a profit or is successful, however, does not affect the protections afforded to it by the First Amendment."  *Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1154 n.54 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894.  Again, *Jack Daniel's* cited *Mattel* favorably, 599 U.S. at 154, and *Mattel* is binding law in this Circuit.  Unsurprisingly, courts here, post-*Jack Daniel's*, still hold that "advertisements for expressive works are properly evaluated under the *Rogers* test."  *Hara*, 2023 WL 6812769, at *3.

Furthermore, beyond the *Davis* case it cites, none of Pepperdine's "marketing" cases involve quintessential expressive works like TV series or movies.  Opp. at 15.  Rather, its cases are about dog toys (*Jack Daniel's*, 599 U.S. at 144), the name of a company and title of its newsletter (*Punchbowl*, 90 F.4th at 1024-25), and merchandise (*Moody's Art*, 2024 WL 4830013, at *1-2, 5; *Sajahtera*, 2024 WL 3086551, at *1-3; *Diece-Lisa Indus.*, 2024 WL 5413113, at *2).

And *Davis* in no way helps Pepperdine.  It concerned a movie that had been completed, only to have its producers allegedly change its title to trade on the recent notoriety of the book *Gringo—i.e.*, to make the public believe the movie derived from the book.  *Davis*, 2024 WL 5182630, at *1-2.  Defendants then "distributed" the movie "through the same commercial platform" to lure fans of the book.  *Id*.  There are no such allegations of intentional misdirection here: the title *Running Point* makes no reference to Pepperdine; the Los Angeles Waves name was not added after Pepperdine achieved some notoriety; and Defendants did not market or distribute the series through channels like the Pepperdine student store or basketball arena.  And as described in Defendants' motion, there is no logical or creative reason why Defendants would want to associate with Pepperdine, much less to suggest that it was the source of the series. The series is not about college sports.

Pepperdine makes much of an Instagram post with Ms. Kaling wearing a Los Angeles Waves t-shirt, with a caption, "Home of the Los Angeles WAVES."  Opp. at 2, 3, 14, 20.  Pepperdine says "the 'home' of a brand is its source."  That only undermines Pepperdine's argument.  If Kaling identifies herself (or her Instagram account) as the source of the Los Angeles Waves, Pepperdine fails to explain how anyone could possibly think that Pepperdine (whose college team is called the Pepperdine Waves) is the source of *Running Point*.[2]

3.    **The Market's "Understanding" of Defendants' Use of the Los Angeles Waves Marks**

Pepperdine argues that third-party sales of unauthorized merchandise demonstrate that "Defendants' use has been source-identifying."  Opp. at 14.  Notably, Pepperdine cites *no case* to support this non sequitur, and does not allege (nor could it) that Defendants have created any such merchandise for sale.  *See id*.

---

[2] In its FAC, Pepperdine notes that the "Instagram biography" was taken down "[f]ollowing the initiation of this litigation."  FAC ¶ 68.  Pepperdine does not appear to understand the rules of evidence.  *See* Fed. R. Evid. 407.  Efforts to stave off ever-more litigious reprisals are *not* evidence of liability; they are wise.  *See id*.

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

Pepperdine says it "disagrees" with Defendants' argument that they cannot possibly be liable for third-party merchandising. *Compare* Opp. at 8, *with* MTD at 18-19. But it presents no substantive argument on the point—thereby waiving it.

### 4. **Defendants' Use of Other Unrelated Marks on Merchandise**

Pepperdine last claims that because trademark rights have been secured for fictitious entities in other series, that means the Los Angeles Waves marks are used as source-identifiers here. Opp. at 14. Pepperdine cites *Viacom Int'l v. IJR Cap. Inv., LLC*, 891 F.3d 178, 182 (5th Cir. 2018), a case in which Viacom (*not* a defendant here) sued IJR "for infringing on its common law trademark of The Krusty Krab—a fictional restaurant in the popular 'SpongeBob SquarePants' animated television series." But Pepperdine falsely assumes that the mere use (even if extensive) of a fictional name or logo in *a show itself* makes that fictional item source-identifying. In determining whether Viacom used The Krusty Krab as a source identifier, the court noted that, in another case, "Paramount … sought trademark protection on the Romulan mark, a fictional alien race in the 'Star Trek' series. The Romulan mark was featured in television episodes, movies, books, licensed plastic spaceship models and dolls, puzzles, games, and more." *Id.* at 187. Nonetheless, "[t]he Trademark Trial and Appeal Board … held that Paramount [had] 'failed to establish any use of the term Romulan ... as a mark to distinguish its services.'" *Id.* By contrast, the Krusty Krab mark was "integral to 'SpongeBob SquarePants,'" playing "a prominent role in the SpongeBob films and musical" and was extensively merchandised to consumers on products like stickers, playsets, videogames, and shirts, "*generat[ing] millions of dollars for Viacom*." *Id.* at 187-88. Defendants, in contrast, *have not marketed any merchandise using the fictional Los Angeles Waves marks*. This case is not close.

Nor is there any similarity between Defendants' in-show use of the fictional Los Angeles Waves marks and another third-party example Pepperdine cites— NBCUniversal's use of the "Dunder Mifflin" marks from *The Office*. Opp. at 14.

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

In a complaint against an infringer, NBCUniversal (again, not a defendant here) detailed how it had "[c]ontinuously … engaged in numerous, varied, and ever-expanding uses in commerce of its well-known and popular intellectual property related to *The Office*."  Complaint, *NBCUniversal Media, LLC v. Jay Kennette Media Grp. LLC*, Case No. 2:22-cv-04541, ECF No. 1, ¶ 32 (C.D. Cal. July 1, 2022); *see also id*. ¶¶ 30-31, 33-34.  On that record, Dunder Mifflin marks were "source identifiers," given "their continued and widespread use of the marks on apparel and other merchandise sold to the public since at least November 2006"—*i.e.*, for almost *16 years*.  *NBCUniversal Media, LLC v. Jay Kennette Media Grp. LLC*, 653 F. Supp. 3d 732, 747 (C.D. Cal. 2023).  Defendants' *Running Point* show launched last year, and they have sold no Waves merchandise.

Pepperdine's judicial-estoppel arguments fare no better.  It says that Warner should be estopped from arguing that the use of the Los Angeles Waves team name is not source-identifying because it has trademarked Harry Potter content.  Opp. at 18-19.  In the example it cites, however, Warner had used marks "relate[d] to the famous Harry Potter franchise" for years to identify the source of various consumer products—"bags, books, clothing, cosmetics, homeware, jewelry, toys, stationery, games."  Memo. in Supp. of Mot. for Entry of TRO, *Warner Bros. Ent. Inc. v. The Partnerships & Unincorporated Ass'ns*, Case No. 1:25-cv-02205 (N.D. Ill. Mar. 7, 2025), ECF No. 12 at 2.  Warner "expended substantial time, money, and other resources advertising, promoting, and marketing" the products, and Potter trademarks had become "widely recognized and exclusively associated by consumers as being high-quality products sourced from [Warner]."  *Id*. at 3-4.  Once again, the situation here is not comparable.

The other example Pepperdine raises, *Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*, 2020 WL 12762735, at *1-2 (C.D. Cal. Nov. 9, 2020), similarly involved Harry Potter marks and marks related to *Gilmore Girls*, which had "generated substantial revenues through a wide variety of merchandise offered by

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

*dozens of licensees* that encompasses books, greeting cards, clothing, novelties (including mugs, phone cases, pens, and wallets) posters, and stationery."

In short, even presuming the FAC's factual allegations are true and drawing reasonable inferences in Pepperdine's favor, it has not shown that a reasonable consumer would understand the fictional Los Angeles Waves marks as identifying the source of *Running Point*. Because Defendants do not use the marks as source-identifiers, and because the series is an expressive work, *Rogers* applies.

### B. Pepperdine Cannot Prevail under *Rogers*.

Pepperdine argues its claims survive even under *Rogers* because "Defendants' use of the Waves marks explicitly misleads as to source or content under the second prong of the *Rogers* test." Opp. at 20-21. (Pepperdine concedes *Rogers*' first prong—artistic relevance—offering no argument. *Cf*. MTD at 16-17.)

Pepperdine contends that Defendants' use of the Los Angeles Waves marks is explicitly misleading despite the fact Pepperdine is never mentioned. *See* Opp. at 20-21. But as Defendants and the Court have noted, MTD at 17, Order at 8, *Rogers* requires "an *explicit indication, overt claim, or explicit misstatement* about the source of the work" for liability to attach. *Punchbowl*, 90 F.4th at 1028. Implicit suggestions—likewise absent here—do not suffice. *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).

Pepperdine relies on *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018), but misreads it. *Gordon* confirms that the Ninth Circuit has "repeatedly observed that the mere use of a trademark alone cannot suffice to make such use explicitly misleading." *Id*. at 270. *Gordon* carved out a narrow exception to the "explicitly" requirement where "consumers would expect the use of a mark alone to identify the source" and where an alleged infringer has added little expressive content beyond the mark itself. *Id*. at 270-71. In *Gordon*, defendant used a "honey badger" mark, in the same way and on the same types of greeting card products as plaintiff, without adding anything of its own. *See id*. at 271. The enormous

- 12 -

creative undertaking involved in conceiving of a fictional Los Angeles Waves basketball team, with its own unique players, coaches, owners, and staff—all of which have nothing to do with Pepperdine—as part of producing 10 episodes of a TV series is not in the same league as *Gordon*'s greeting cards.

Pepperdine also again points to the Kaling post, calling it akin to titling a book "Nimmer on Copyright," "Jane Fonda's Workout Book," or "an authorized biography." Opp. at 20*; see Dr. Seuss*, 983 F.3d at 462. This makes no sense; the series is not titled the "Pepperdine Waves" or the "Waves." It is *Running Point*, and the post refers to a *fictional* team and makes clear that it was *created by Kaling*. It does not say that fictional team or Pepperdine created the show.

Pepperdine's comments about Google searches get it nowhere. The one and only example of actual confusion it ever cited (and then deleted in its FAC) made clear that consumers of such media plainly knew that the Los Angeles Waves in *Running Point* were different than Pepperdine's school team. Compl. [Dkt. 1] ¶ 51.

At bottom, Pepperdine's argument that Defendants' use of the Los Angeles Waves marks could plausibly mislead consumers about the source of the series assumes an entirely unreasonable consumer. Pepperdine is not a TV writer or producer and is not mentioned in the series, which explicitly identifies its actual sources as Defendants. Moreover, there is nothing in these circumstances, where there is no mention of Pepperdine or even collegiate sports in the series, that could lead viewers to conclude that Pepperdine, as opposed to any of the other dozens of "Waves" teams out there, created the series. Thus, no reasonable person could plausibly believe that Pepperdine created *Running Point* just because the fictional team in the series is called the Los Angeles Waves. That means Pepperdine loses even without *Rogers*.[3] But *Rogers* does apply and makes this a very easy case.

---

[3] *E.g, Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996), *as amended* (Aug. 6, 1996) (affirming dismissal where plaintiff's "America's Talking" mark used for consumer surveys did not compete with CNBC's "America's Talking" cable network featuring viewer interactive polling; "[b]ecause the parties' services are unrelated, there is no likelihood of confusion as a matter of law"); *Jack*

DEFS.' REPLY ISO MOT. TO DISMISS 2:25-CV-01429-CV (ADSx)

In sum, Pepperdine cannot prevail under either prong of *Rogers*, and its FAC should be dismissed with prejudice. Pepperdine devotes half a footnote to asking for leave to amend yet again. *See* Opp. at 25 n.8. But it offers no hint what it might add to any SAC. Rather, it merely states that "justice so requires." *Id*. But such conclusions without facts do not justify relief under *Iqbal* and *Twombly*, and the Court should dismiss Pepperdine's FAC with prejudice.

## IV. PEPPERDINE'S STATE LAW CLAIMS ARE BARRED.

In addition to failing on *Rogers* grounds, Pepperdine's claim for California trademark dilution fails on its own terms: The non-commercial use exclusion to dilution liability applies because *Running Point* is fully protected speech that is not purely commercial. MTD at 19-20.[4] Pepperdine urges that *Jack Daniel's* held that the non-commercial use exclusion does not apply where use of a mark is source-identifying. Opp. at 22-24. But as shown above, Defendants do not use the Los Angeles Waves marks in a source-identifying way. Pepperdine cites *Punchbowl* and *Davis*, Opp. at 22, too, but those cases did *not* involve dilution claims, *see* 90 F.4th at 1024; 2024 WL 5182630, at *1. And while another case it cites discusses dilution, *Moody's Art* <u>granted</u> defendant's motion for judgment on the pleadings because plaintiff failed to plead that its mark was sufficiently famous; the court never addressed the non-commercial use exclusion. 2024 WL 4830013, at *6. In fact, Pepperdine fails to cite a single case in which a court held that the non-commercial use exclusion does not apply in these circumstances. Opp. at 22-24.

Pepperdine's false advertising claims fail because they are based on the mere use of an allegedly infringing trademark, not an actual false statement. *See* MTD at

---

*Daniel's*, 599 U.S. at 157 n.2 (noting that even outside *Rogers* some "uses will not present any plausible likelihood" of confusion given "contextual considerations"; where "plaintiff fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6)").

[4] *E.g.*, *Mattel*, 28 F. Supp. 2d at 1126 n.1, 1154 nn.53-54; *Mattel*, 296 F.3d at 902-907; *Roxbury Ent. v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170, 1173, 1175 n.8 (C.D. Cal. 2009).

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

20-21.[5] Pepperdine fails to grapple with such on-point cases and instead tries to save its false advertising claims by citing Ninth Circuit law that actually hurts it. In *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107 (9th Cir. 2021), the court held that liability for false advertising under the Lanham Act required "false or misleading representations of fact." *Id*. at 1121. "An actionable statement is a *specific and measurable claim*, capable of being proved false or of being reasonably interpreted as *a statement of objective fact*." *Id*. A false advertising claim may be based on implied statements only where "those statements are *specific and deceptive*." *Id*. Contrary to Pepperdine's suggestion, that case does not discuss "misleading use of a mark," much less find that it "can be actionable" where it merely "implies endorsement or affiliation." Opp. at 25. In fact, *Ariix* did not touch on trademark use at all. *See* 985 F.3d at 1111-22. Pepperdine's false advertising claims fail.[6]

## V.    CONCLUSION

Pepperdine's FAC should be dismissed without leave to amend.

Dated:  June 5, 2025                           By: */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli
Matt Kline
Amy R. Lucas
O'MELVENY & MYERS LLP

---

[5] *E.g.*, *Gearsource Holdings, LLC v. Google LLC*, 2020 WL 3833258, at *12 (N.D. Cal. July 8, 2020); *Mossack Fonseca & Co., S.A. v. Netflix Inc.*, 2020 WL 8509658, at *3 (C.D. Cal. Dec. 23, 2020).

[6] Same for Pepperdine's False Advertising and Unfair Competition Law state-law claims. Pepperdine conflates "economic injury" required under these statutes with its generalized damages pleadings. *Compare Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323-26 (2011), *with* Opp. at 25. Pepperdine does not allege the type of economic injury California courts recognize, including, *e.g.*, paying higher insurance premiums or costs to repair damage to credit. *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854-55 (2008), *as modified* (Jan. 28, 2008) (examples).

Pepperdine also mistakenly argues that the time for Defendants to file an anti-SLAPP motion has run. Opp. at 25 n.8. Federal courts are not bound by the 60-day deadline it cites. *E.g.*, *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).

DEFS.' REPLY ISO MOT. TO DISMISS
2:25-CV-01429-CV (ADSx)

**<u>Certificate of Compliance (Local Rule 11-6.2)</u>**

The undersigned, counsel of record for Defendants Netflix, Inc., Warner Bros. Entertainment Inc., and Kaling International, Inc., certifies that this memorandum of points and authorities is 15 pages long, including headings, footnotes, and quotations but excluding the caption, the table of contents, the table of authorities, the signature block, this certification, and any indices and exhibits. Accordingly, it complies with the 15-page limit set by the Court's Standing Order.

Dated:  June 5, 2025                By: */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli
Matt Kline
Amy R. Lucas
O'MELVENY & MYERS LLP

*Attorneys for Defendants*

- 16 -