Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Amy E. Proctor (SBN 283845)
proctora@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:  (650) 461-5600

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone: (310) 979-9190

*Attorneys for Plaintiff Pepperdine University*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEPPERDINE UNIVERSITY,<br><br>                              Plaintiff,<br><br>              v.<br><br>NETFLIX, INC., WARNER BROS. ENTERTAINMENT INC., and KALING INTERNATIONAL, INC.,<br><br>                              Defendants. | Case No. 2:25-CV-01429-CV-ADS<br><br>**PEPPERDINE UNIVERSITY'S OPPOSITION TO DEFENDANTS' MOTION TO AMEND CASE MANAGEMENT SCHEDULE**<br><br>Date:  January 9, 2026<br>Time:  1:30 PM<br>Courtroom:  10B<br>Judge:  Hon. Cynthia Valenzuela |

SULLIVAN & CROMWELL LLP

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................. 3

III. LEGAL STANDARD ................................................................................................... 8

IV.  ARGUMENT ................................................................................................................ 9

    A.   Defendants' Pending Motions Do Not Justify Defendants' Lack of Diligence ............................................................................................................. 9

    B.   Defendants Cannot Show Diligence ................................................................. 10

    C.   Defendants' Misstatements About Pepperdine Do Not Support Modification ..................................................................................................... 13

    D.   Defendants Proposed the Very Schedule They Now Claim Is Unworkable ......................................................................................................... 15

    E.   Pepperdine Nevertheless Is Willing to Agree to a Reasonable Amended Schedule .............................................................................................. 16

V.   CONCLUSION ............................................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fate Therapeutics, Inc.* v. *Shoreline Biosciences, Inc.*,
2023 WL 4142009 (S.D. Cal. June 22, 2023) ............................................... 14

*Hall* v. *City of Fairfield*,
2011 U.S. Dist. LEXIS 146444 (E.D. Cal. Dec. 19, 2011) ........................................... 10

*HRC-Hainan Holding Co., LLC* v. *Yihan Hu*,
2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) ............................................... 9

*Jackson* v. *Laureate, Inc.*,
186 F.R.D. 605 (E.D. Cal. 1999) ....................................... 8, 10, 11, 16

*Johnson* v. *Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ....................................... 2, 8, 10

*Nat'l Corp. Tax Credit Funds III* v. *Potashnik*,
2008 WL 11339608 (C.D. Cal. June 16, 2008) ............................................... 9

*Owen* v. *Alcresta Therapeutics, Inc.*,
2024 WL 5516290 (C.D. Cal. Dec. 12, 2024) ....................................... 9, 13

*Ronduen* v. *The GEO Group, Inc.*,
2024 WL 4800670 (C.D. Cal. Aug. 26, 2024) ............................................... 13

*Safeco of Am.* v. *Rawstron*,
181 F.R.D. 441 (C.D. Cal. 1998) ............................................... 7

*Seoul Semiconductor Co.* v. *FEIT Elec. Co.*,
2024 WL 3086641 (C.D. Cal. May 23, 2024) ............................................... 14

*SPH Am., LLC* v. *Research in Motion, Ltd.*,
2016 WL 6305414 (S.D. Cal. Aug. 16, 2016) ............................................... 14

*Stiles* v. *Walmart, Inc.*,
2020 WL 264420 (E.D. Cal. Jan. 17, 2020) ............................................... 14

*Superior Commc'ns* v. *Earhugger, Inc.*,
257 F.R.D. 215 (C.D. Cal. 2009) ............................................... 14

*Tomaszewski* v. *AIG Property Casualty Company,*
2025 WL 1122385 (C.D. Cal. Mar. 25, 2025)................................................................. 12

*Tye* v. *Cnty. of Orange,*
2025 WL 1420109 (C.D. Cal. Apr. 3, 2025) .................................................................... 4

*United States* v. *Valley's Best Hospice, Inc.,*
2025 WL 2043301 (C.D. Cal. June 4, 2025) .................................................................. 11

*Zivkovic* v. *S. Cal. Edison Co.,*
302 F.3d 1080 (9th Cir. 2002) ................................................................................... 2, 8

**Other Authorities**

Fed. R. Civ. P. 16 ...........................................................................................*passim*

Fed. R. Civ. P. 26 ...........................................................................................*passim*

Fed. R. Civ. P. 33 ...........................................................................................*passim*

Plaintiff Pepperdine University ("Plaintiff" or "Pepperdine") respectfully submits this Opposition to Defendants Netflix, Inc. ("Netflix"), Warner Bros. Entertainment Inc. ("Warner Bros."), and Kaling International, Inc.'s ("Kaling International") Motion to Amend Case Management Schedule ("Motion" or "Mot.") (ECF No. 66).

## I.   PRELIMINARY STATEMENT

Defendants' Motion rests on a hodgepodge of revisionist accounts of the procedural history—one that does not survive comparison with the actual record—designed only to allow Defendants to postpone accountability for their actions while they complete and release Season 2 of *Running Point* in Spring 2026.

Despite Defendants' delays, Pepperdine remains committed to this litigation proceeding efficiently. And, as Pepperdine has communicated to Defendants, it is willing to consider reasonable adjustments to the schedule that include concrete discovery deadlines so that this case can progress without Defendants' continued delay. To that end, Pepperdine has included an alternative scheduling proposal that accommodates Defendants' requests by adding a week for rebuttal expert disclosures and adding a month for fact discovery, which effectively delays trial by five weeks. Pepperdine's proposal presents a reasonable compromise that will ensure this case proceeds efficiently.

For seven months, Defendants refused to participate in *any* discovery. Their delay efforts have been a consistent part of a broader pattern of behavior: From repeatedly refusing to hold a timely Rule 26(f) conference, to standing on boilerplate objections to discovery requests and refusing to provide substantive responses to interrogatories and requests for production, to refusing to collect documents from the relevant time period (when the show was first conceived and developed), to now refusing to produce core categories of materials they themselves repeatedly represented were being gathered for production. Throughout those seven months, Defendants consistently resisted discovery and urged Pepperdine to exercise "patience and restraint," not because they were moving the litigation forward, but because they were doing everything possible to avoid engaging

with the case. For instance, Defendants have held up the entry of an ESI Protocol by refusing to agree to basic and common-sense requirements, like that any party intending to rely on the advice of counsel that post-dates the complaint log those documents on a privilege log. Defendants' Motion, however, mentions none of that, nor does it attach those underlying communications. Instead, it highlights the fact that, after months and months of conferences and follow-ups by Pepperdine, Defendants just recently made a single production of eighty-five documents—nearly half of which are irrelevant screenshots, along with a handful of publicly available trailers and episodes, and the final scripts for Season 1.

Pepperdine, by contrast, has acted reasonably and sought to work with Defendants so that this case could progress. It repeatedly sought a timely Rule 26(f) conference, served targeted discovery promptly (more than seven months ago), sent multiple letters and emails identifying specific deficiencies in Defendants' responses, engaged in extensive conferences with Defendants, and agreed to provide amended discovery responses and other clarifications to narrow disputes. Defendants' attempt to portray Pepperdine as uncooperative is flatly contradicted by the written record.

Rule 16 does not reward litigants that manufacture the very delay from which they seek relief. Good cause "primarily considers the diligence of the party seeking the amendment," and where the party "was not diligent, the inquiry should end." *Johnson* v. *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Zivkovic* v. *S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Defendants' request for a schedule change must be assessed in light of the relevant history. There was no diligence on Defendants' part; only delay.

Defendants argue that the current schedule is "unworkable" for two reasons: because discovery is "in its early stages," and because Defendants believe that the timing for rebuttal expert discovery is too short. (Mot. at 2, 7-8.) Both are a direct result of Defendants' own choices and actions. As discussed above, Defendants stymied discovery at every turn by treating their pending motions to dismiss and for a stay as if they had

already been granted—which is in express contravention of this Court's Standing Order and binding precedent.  Standing Order for Civil Cases Assigned to Judge Cynthia Valenzuela ("Standing Order") at 8 (C.D. Cal. Mar. 13, 2025).  Likewise, Defendants are the party that proposed the very schedule that this Court adopted—including the expert rebuttal deadlines.  Defendants do not deny this.  Instead, they seek to excuse their mistake by pointing to their reliance on this Court's standardized Civil Scheduling Worksheet. (Mot. at 13 n.8.)  But there is no information that Defendants know now that they did not know then.  Thus, they cannot credibly contend that the schedule they proposed is "plainly unworkable."  Accordingly, Defendants' invitation to treat their unilateral choices as unavoidable obstacles should be rejected.

## II.    STATEMENT OF FACTS

On January 30, 2025, Defendants released the trailer for *Running Point* along with a major marketing push that garnered significant public attention—and it succeeded in catching the attention of several Pepperdine administrators and employees.  To their surprise, the *Running Point* series centered around a Los Angeles-based basketball team that, like Pepperdine's, is called the "Waves," and whose colors, like Pepperdine's, are blue, orange, and white.  (First Amended Complaint (ECF No. 36) ("FAC") ¶¶ 1, 44-49.) Not only that, they were surprised to see that the Waves branding in the series is virtually identical to that of Pepperdine's Waves.  (*Id.* ¶¶ 1, 10, 44, 49, 61, 92.)  This is no coincidence; Defendants have already admitted to being aware of Pepperdine's specific and incontestable trademarks for ***almost one-and-a-half years*** before the series was released.  (*See* Declaration of Aviv S. Halpern in Support of Opposition to Motion to Amend Case Schedule ("Halpern Decl.") ¶ 2, Ex. A.)

Pepperdine promptly reached out to Defendants, but Defendants largely refused to engage.  Forced to take action to protect its marks, Pepperdine filed this case on February 20, 2025.  Defendants' delay tactics started almost immediately after.  Defendants noticed their appearances in this case on February 24—triggering a Rule 26(f) deadline of April 4.  Fed. R. Civ. P. 26(f)(1) (conference 21 days before scheduling order is due); Fed.

R. Civ. P. 16(b)(2) (scheduling order is due 60 days after appearance). Pepperdine asked Defendants to confer four separate times before that deadline—on March 11, 12, 13, and April 3—but Defendants refused each request as "premature," even though one was required by Rule 26(f)(1). (Halpern Decl. ¶¶ 3-4, Exs. B, C.) Only weeks after the deadline had passed did Defendants finally agree to meet on April 25, delaying the start of discovery by three weeks and pushing Pepperdine's ability to serve written discovery to that date.

On April 28, one business day later, Pepperdine served targeted interrogatories and document requests.[1] Defendants responded on May 28 by providing only boilerplate objections. Defendants did not offer any responses to the interrogatories (let alone meaningful ones) and refused to indicate whether they would produce any documents responsive to *any* request. When Pepperdine explained that Defendants could not unilaterally impose a stay while their motions were pending, Defendants doubled down, taking the position that their motion to stay and objections alone "fulfilled their obligations" and that they need not respond until the Court ruled. (Defs' Ex. 2.) In other words, Defendants relied on a pending, contested motion to avoid complying with the Federal Rules. Of course, that behavior directly contravenes the clear language of this Court's Standing Order.[2]

---

[1] Defendants' representations about Pepperdine's discovery requests are demonstrably false and directly contradict their own prior representations to this Court. Defendants claim (at 4) that Pepperdine served "99 requests for production and 18 interrogatories," but, as they stated in their Motion to Stay, which attaches Pepperdine's discovery requests, Defendants acknowledge that Pepperdine served only "6 Interrogatories and 33 Requests for Production." (ECF No. 43 at 5:8-9; *see also* ECF No. 43-1 at 22, 30.) Defendants also did not raise any objections with respect to subparts or numerosity. And to the extent Defendants' revisionist history is an attempt at belatedly doing so, Defendants' have already waived that objection. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *see also Tye* v. *Cnty. of Orange*, 2025 WL 1420109, at *5 (C.D. Cal. Apr. 3, 2025) (holding that a party waived any numerosity objection by failing to assert it and by substantively responding to the interrogatories).

[2] The Standing Order expressly states and emphasizes in bold that: "unless otherwise ordered, **discovery shall not be stayed while any motion is pending**, including any motion to dismiss, . . . or motion to stay. **The parties are directed to conduct any necessary discovery as soon as possible, as the Court is not inclined to grant any extensions of the discovery or other case-related deadlines**." (Standing Order at 8.)

For months, Pepperdine pressed Defendants to fix their responses.  In June, Pepperdine detailed why Defendants' boilerplate objections and refusal to answer were improper and reiterated that filing a motion to stay did not suspend their obligations. (Halpern Decl. ¶ 5, Ex. D.)  Defendants responded by insisting that discovery was "inappropriate" and urging Pepperdine to show "patience and restraint," proposing to revisit discovery weeks later while the case sat idle.  (Defs' Ex. 2.)  In July, when Pepperdine followed up on its attempts to, at a minimum, get clarity as to which discovery requests Defendants would respond to, Defendants simply "disclose[d] their positions" on what they might produce if their motions were denied and reiterated that they "continue to object that any discovery at this stage is premature."  (Halpern Decl. ¶ 6, Ex. E.)

After the Court's August scheduling order, Defendants' written assurances that they were collecting documents also proved hollow.  In September and October, Defendants represented that they were "working diligently," "anticipate making rolling productions," and were "gather[ing] and produc[ing]" responsive documents, while simultaneously acknowledging that they had not produced a single document. (Defs' Exs. 4, 11.)  By mid-November—more than six months after Pepperdine's requests— Pepperdine wrote again to note that Defendants still had not produced anything despite repeatedly promising to do so.  (Halpern Decl. ¶ 7, Ex. F.)

Only on December 5 did Defendants finally make a first production, consisting of just eighty-five documents, nearly all of which were publicly available, and the majority of which consisted of miscellaneous screenshots with no clear relevance. (*See, e.g.*, Halpern Decl. ¶ 8, Exs. G, H.)  Core categories that Defendants themselves represented would be in that first production, including marketing plans, branding guidelines, and product placement agreements were noticeably missing, despite months of conferences and written assurances.  (*See* Defs' Ex. 10; Halpern Decl. ¶ 7, Ex. F.)

Defendants also refused to commit to collect documents from relevant time periods.  More specifically, Defendants have, to this day, refused to collect documents from relevant custodians for the period when the show was first pitched.  (Halpern Decl. ¶ 9, Ex.

I.)    Pepperdine repeatedly flagged this issue during meet and confers and in correspondence, but Defendants declined to search that timeframe.  At the same time, they insisted that Pepperdine collect up to eighty-eight years of materials, demanding documents dating back to 1937 and seeking "all" design files, prototypes, and "inspiration boards" for the asserted marks over multi-decade periods. (Defs' Ex. 15, 17.) Defendants' refusal to search their own records for the narrow key development window and refusing to agree to meaningful temporal cutoffs from Pepperdine underscores the one-sided nature of Defendants' approach to its own discovery obligations.

Defendants also refused to engage with respect to Pepperdine's other written discovery requests.  For instance, like they did in response to Pepperdine's requests for production, in April, Defendants made only boilerplate objections to Pepperdine's interrogatory responses—refusing to provide *any* substantive responses.  After many months, communications, and conferences, Defendants finally agreed to amend their interrogatory responses to include substantive responses (which were, and remain, deficient). (Defs' Ex. 6.)  In Defendants' view, expressed as recently as a November 19, 2025 email, even Defendants' limited responses and production—as deficient as they remain under the Federal and Local Rules—were provided only "as a courtesy." (Halpern Decl. ¶ 10, Ex. J.)

Defendants' effort to portray Pepperdine as the party delaying discovery is likewise belied by the record.  In particular, Defendants raise a laundry list of purported grievances which they use to attribute delay to Pepperdine: (i) requests for production and document production; (ii) interrogatory responses; (iii) custodians; and (iv) ESI Protocol negotiations.  None withstands the record.

Defendants did not serve their own written discovery until October 2025, and Pepperdine served its responses and objections in November 2025—barely one month ago. (Defs' Ex. 10; Halpern Decl. ¶ 7, Ex. F.)  Pepperdine has been collecting additional materials in response to Defendants' October requests, which comprise seventy-seven objectionable requests for production, and has already begun producing responsive

-6-

documents.  By contrast, Pepperdine's discovery requests, which were served back in April, have been outstanding for over seven months.  Defendants' criticism that Pepperdine "has [] not produced a single document" (Mot. at 1) ignores the critical fact that Defendants chose not to serve their own requests until nearly six months after Pepperdine, yet Pepperdine is still producing documents within two weeks of Defendants' first (inadequate) production.

Defendants also raise a variety of complaints related to Pepperdine's responses to Defendants' interrogatories.  (Mot. at 6.)  Here, too, Defendants' characterizations are not supported by the record.  For example, Defendants complain that Pepperdine responded to "only 13" interrogatories—omitting the fact that Defendants drafted incredibly compound interrogatories with numerous discrete subparts.[3]  In an effort to be overinclusive, however, Pepperdine responded to 30 interrogatories, counting discrete subparts, as permitted under Rule 33(a)(1) and controlling authority such as *Safeco of Am.* v. *Rawstron*, 181 F.R.D. 441, 445-46 (C.D. Cal. 1998).  Pepperdine then went further by offering to respond to 12 additional interrogatories (without separately counting their many subparts) as a compromise, so long as Defendants agreed Pepperdine need not answer more. (Defs' Ex. 17.)  Defendants refused, instead seeking a discovery conference that ultimately resulted in Magistrate Judge Spaeth expressing concern over the number of subparts in Defendants' interrogatories and instructing the parties to continue meeting and conferring.

Defendants' assertions about custodians yet again mischaracterize the record. Pepperdine identified relevant custodians in its Rule 26(a)(1) initial disclosures and again in interrogatory responses, it identified those custodians (and more) at the parties' conference, and confirmed them in correspondence.  (Defs' Ex. 18.)  Defendants then requested piecemeal additions to Pepperdine's custodian list, each of which Pepperdine has

---

[3] Defendants served numerous contention interrogatories with discrete subparts.  For example, Interrogatory No. 10 asks:  "If YOU contend that a likelihood of initial interest confusion exists in this case, IDENTIFY (1) all witnesses YOU intend to rely upon to demonstrate such confusion and (2) the beginning Bates number(s) of all DOCUMENTS YOU intend to rely upon to demonstrate such confusion." (Defs' Ex. 7.)

considered and many of which it has agreed to. (*Id.*)  The written record plainly refutes Defendants' claim that Pepperdine has somehow concealed custodians.

Finally, Defendants point to the absence of a finalized ESI Protocol. To start, Defendants cannot excuse their delay in collecting or producing documents by citing the lack of an ESI Protocol. Although an ESI Protocol is encouraged, it is not required. Defendants themselves promised in October to provide a draft ESI Protocol and then failed to do so for weeks, prompting yet another follow-up from Pepperdine. (Halpern Decl. ¶ 7, Ex. F.)  Even now, Defendants are dragging their feet in the parties' ESI-related negotiations—refusing to agree to a simple requirement that any party that intends to rely on advice-of-counsel evidence that post-dates the complaint must log those communications. If the parties cannot resolve that issue early next week, they expect to seek guidance from the Court.

## III.   LEGAL STANDARD

Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Good cause "primarily considers the diligence of the party seeking the amendment[,]" and if that party "was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.  Courts in the Ninth Circuit have repeatedly applied that standard, holding that good cause exists only where the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*; *see also Zivkovic*, 302 F.3d at 1087.

Courts in this Circuit further recognize that demonstrating diligence under Rule 16 requires a party to satisfy several related inquiries.  As explained in *Jackson* v. *Laureate, Inc.*, a movant may be required to show:  (1) that it was diligent in assisting the court in creating a workable Rule 16 order; (2) that its noncompliance with a Rule 16 deadline occurred, or will occur, despite diligent efforts, because of developments that could not have been reasonably foreseen at the time of the scheduling conference; and (3) that it was diligent in seeking amendment of the scheduling order once it became apparent it could not comply.  186 F.R.D. 605, 607-08 (E.D. Cal. 1999).

## IV.   ARGUMENT

### A.   Defendants' Pending Motions Do Not Justify Defendants' Lack of Diligence

Defendants' pending motions do not excuse their seven-month delay, and Defendants' argument otherwise is directly contrary to this Court's Standing Order and binding precedent.  (*See* Mot. at 10.)

To start, the Court's Standing Order emphasizes in bold that:  "unless otherwise ordered, **discovery shall not be stayed** while any motion is pending, including any motion to dismiss, . . . or motion to stay.  **The parties are directed to conduct any necessary discovery as soon as possible, as the Court is not inclined to grant any extensions of the discovery or other case-related deadlines**."  (Standing Order at 8 (Court's emphasis).)  Rather than complying with the Court's directive, Defendants have substituted their own—that "the most rational course" was to "hold off on guessing about discovery issues until the Court ruled on Defendants' Motion to Dismiss and Motion to Stay Discovery." (Mot. at 10.)  But that is not Defendants' prerogative.

As Pepperdine repeatedly made clear to Defendants, courts in this District have consistently held—like this Court's Standing Order—that discovery is not automatically stayed simply because a party has filed a dispositive motion.  *Nat'l Corp. Tax Credit Funds III* v. *Potashnik*, 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) ("That defendants have sought a stay is insufficient to avoid their discovery obligations."); *HRC-Hainan Holding Co., LLC* v. *Yihan Hu*, 2020 WL 1643786, at *2 (N.D. Cal. Apr. 2, 2020) ("[T]here was no stay in place, either by this Court or by the Ninth Circuit, so [respondents] were legally obligated to produce the documents, and they just didn't do so. . . . The filing of a motion to stay discovery does not automatically relieve the movant from continuing to comply with its discovery obligations.") (cleaned up).

Here, Defendants never obtained a stay.  Defendants simply acted as though one was imposed—a choice that cannot now be converted into good cause under Rule 16.  *See Owen*, 2024 WL 5516290, at *2.  Nevertheless, Defendants' Motion tries to recast this

self-inflicted problem as "unforeseen circumstances." (Mot. at 9.) But nothing about this case changed after the Scheduling Order issued: The motions were still pending, and the Court still had not stayed discovery. The only thing that changed was that Defendants, having asked for the current schedule, elected not to use the time they requested. On this record, Defendants cannot show the diligence Rule 16 demands, and thus their motion fails at the threshold.

### B. Defendants Cannot Show Diligence

Defendants' lack of diligence is fatal to their Motion. If the moving party "was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609-10 (explaining that scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril"). And courts in this Circuit likewise underscore that Rule 16's good-cause standard demands *sustained* diligence. "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson*, 186 F.R.D. at 607; *see also Hall* v. *City of Fairfield*, 2011 U.S. Dist. LEXIS 146444, at *2-3 (E.D. Cal. Dec. 19, 2011) (denying motion to amend scheduling order where defendants waited to seek a video expert and failed to explain why that need was not realized earlier). That simply is not the case here.

Defendants were not merely inattentive; they consciously avoided their discovery obligations and introduced unnecessary delays for even the simplest of discovery tasks. As explained above, Defendants refused for weeks to participate in the required Rule 26(f) conference, despite multiple written requests from Pepperdine, which prevented discovery from even beginning until April 25, well after the date required by the Federal Rules. *See* Fed. R. Civ. P. 26(f)(1). And the record is replete with other examples of Defendants' delay and obstruction—including Defendants' hold up of the ESI Protocol, refusal to collect plainly relevant documents from relevant time periods, failure to make substantive document productions containing the documents Defendants themselves said they would include, months-long delay in providing *any* interrogatory responses, and more.

*Supra* at II.  These examples make evident Defendants' approach to discovery in this case thus far:  that Defendants' own compliance with the Federal Rules is nothing but a "courtesy," to use their own words.  That is a far cry from diligence.

Defendants attempt to excuse these early delays by their repeated assertion that "neither [side] pressed forward with discovery" while their motions were pending, but that is demonstrably incorrect. (*See* Mot. at 5.)  Pepperdine promptly served discovery in April and spent the following months seeking compliance.  *See supra* at II.  It was Defendants who refused to confer, refused to amend responses, and refused to produce anything until December. *Id.*  Only after the Court's scheduling order did Defendants agree to confer with Pepperdine about Pepperdine's discovery requests. *Id.*  And it was not until October—two months after the scheduling order—that Defendants served their first requests for production, to which Pepperdine promptly responded. *Id.*  Defendants' conduct in this case is precisely the type that causes courts to deny schedule modifications: a party fails to diligently pursue discovery or waits until deadlines have already lapsed or are imminent before taking steps it could and should have taken earlier. *See United States v. Valley's Best Hospice, Inc.*, 2025 WL 2043301, at *3-4 (C.D. Cal. June 4, 2025) (denying modification where the movants "waited at least a year before serving discovery requests[,]" repeatedly ignored the court's admonitions that discovery must proceed despite pending motions, and sought relief only after deadlines had passed, demonstrating a lack of diligence); *Jackson*, 186 F.R.D. at 608-09 (finding no good cause to modify the scheduling order where the movant failed to diligently comply with Rule 16 deadlines or promptly seek amendment once difficulties became apparent).

The asymmetry of the parties' discovery requests and substantive positions make clear that the delays in this case were not caused by the schedule, but by Defendants' strategic choices to delay their own obligations while just recently attempting to maximize Pepperdine's.  As just a few examples, while Defendants have flatly refused to collect documents dating back for five years—to when *Running Point* was conceived— Defendants have demanded decades of documents from Pepperdine.  (Defs' Ex. 9.)

Similarly, back in April, Pepperdine served a targeted set of thirty-three requests for production, whereas, in October, Defendants served seventy-seven far-reaching and plainly unreasonable requests—seeking, for example:

> All DOCUMENTS and COMMUNICATIONS concerning any instances of which YOU are aware from January 1, 2010 to present during which any of YOUR students, faculty, administrators, employees, members of YOUR Board of Regents, members of YOUR Board of Advisors, members of YOUR Dean's Council, or alumni violated, were investigated for violating, or were believed or alleged to have violated any state or federal laws, and/or any of YOUR school rules, policies, guidelines, or honor codes, INCLUDING policies concerning the consumption of alcohol and other substances on campus or during school-affiliated activities.

(Defs' Ex. 9.)  Defendants now have leveraged Pepperdine's efforts to narrow Defendants' overbroad and inappropriate requests as the basis for their (incorrect) assertion that Pepperdine, rather than Defendants, has been the source of the delay.  (Mot. at 11-12.)

Defendants' sole document production further underscores their lack of diligence.  Defendants waited seven months to make a first production responsive to Pepperdine's April requests.  That production consists of only eighty-five documents—the majority of which are miscellaneous and irrelevant screenshots, with a few handfuls of other mostly public documents.  *Supra* at II.  That is not the production of a party that has been diligently collecting and reviewing documents.  It is confirmation that, for the better part of a year, Defendants did not meaningfully begin the process at all.

No good cause exists, even under Defendants' cited authority.  For example, Defendants rely on *Tomaszewski* v. *AIG Property Casualty Company*, but there, the defendant was seeking a short extension of the imminent discovery deadline, and even the plaintiff acknowledged that the issues that arose were "thorny" privilege issues that required judicial intervention.  2025 WL 1122385, at *2 (C.D. Cal. Mar. 25, 2025).  That

is nothing like the facts here—where Defendants have sought to hinder discovery at every turn. The same is true with respect to *Ronduen* v. *The GEO Group, Inc.*, where the Court specifically recognized the defendants' diligence. 2024 WL 4800670, at *2 (C.D. Cal. Aug. 26, 2024). Instead, this case is more like *Owen* v. *Alcresta Therapeutics, Inc.*, where the court refused to amend the schedule because a party was not diligent in engaging in discovery, recognizing that it "did not seek any discovery until the eleventh hour" and had served a "whole panoply of written discovery." 2024 WL 5516290, at *2 (C.D. Cal. Dec. 12, 2024).

### C. Defendants' Misstatements About Pepperdine Do Not Support Modification

Unable to demonstrate diligence, Defendants devote much of the Motion to mischaracterizing Pepperdine's conduct. None of those accusations withstands the record, and none supplies good cause.

*First*, Defendants assert that Pepperdine "has still not produced a single document." (Mot. at 1.) As an initial matter, that is no longer true—Pepperdine has now produced 606 documents in response to Defendants' far-reaching October requests. But more fundamentally, Defendants' assertion ignores the timing of the parties' respective obligations. Pepperdine served its own requests as soon as discovery opened in April; Defendants waited six more months before serving their discovery requests in October. Since then, Pepperdine has been actively collecting documents and preparing productions in the ordinary course. By contrast, Defendants sat on Pepperdine's requests for seven months before making a performative production. Good cause is assessed in the context of when each party's discovery obligations arose, not by comparing raw production counts in isolation. Measuring the parties against their own timelines, Pepperdine has been diligent; Defendants have not.

*Second*, Defendants complain that Pepperdine only responded to the first 30 interrogatories, counting discrete subparts, even though Pepperdine's position is firmly supported by the Federal Rules and binding case law. (*See* Mot. at 6.) Rule 33(a)(1) sets

the default interrogatory limit to "25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). And Defendants' interrogatories include multiple discrete subparts seeking distinct factual showings, time periods, and evidentiary categories, which Pepperdine properly counted. Illustratively, Interrogatory No. 1 demands: for each unregistered mark, (1) a visual depiction, (2) first use in commerce, (3) last use in commerce, (4) goods or services associated with the mark, and (5) all enforcement actions—five distinct questions. (Defs' Ex. 7.) Courts in this District have treated such multipart questions as separate interrogatories. *See Superior Commc'ns* v. *Earhugger, Inc.*, 257 F.R.D. 215, 218 (C.D. Cal. 2009); *SPH Am., LLC* v. *Research in Motion, Ltd.*, 2016 WL 6305414, at *2 (S.D. Cal. Aug. 16, 2016); *Seoul Semiconductor Co.* v. *FEIT Elec. Co.*, 2024 WL 3086641, at *13-15 (C.D. Cal. May 23, 2024). Nevertheless, in an effort to avoid burdening the Court, Pepperdine offered multiple reasonable compromises. Defendants repeatedly refused. Now, after an informal discovery conference and with the benefit of Magistrate Judge Spaeth's guidance, Defendants have finally agreed to reassess their approach to subparts.

*Third*, Defendants complain that Pepperdine's position with respect to numerosity was unreasonable. (Mot. at 6-7, 12-13.) Although it was recently overruled, Pepperdine's position—that Fed. R. Civ. P. 33's 25-interrogatory limit applies on a per-side basis where defendants are jointly represented, act in unison, and share a legal relationship—was both well-reasoned and well-supported. *See Stiles* v. *Walmart, Inc.*, 2020 WL 264420, at *5 (E.D. Cal. Jan. 17, 2020) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories."); *Fate Therapeutics, Inc.* v. *Shoreline Biosciences, Inc.*, 2023 WL 4142009, at *1–2 (S.D. Cal. June 22, 2023) (treating plaintiffs as "only nominally separate" where they shared counsel, a legal relationship, and litigated in unison). And here, Netflix, Warner Bros., and Kaling International have been represented by the same counsel; have asserted a unified and joint defense and made joint filings asserting the same exact legal positions; and have been bound by a common

SULLIVAN & CROMWELL LLP

-14-

indemnity arrangement under which Warner Bros. is indemnifying the other Defendants. Faced with Pepperdine's good-faith approach to discovery, Defendants' Motion resorts to flatly mischaracterizing Defendants' own discovery requests in an attempt to make Pepperdine seem unreasonable, when the opposite is true. Defendants claim, for example, that Pepperdine has "refus[ed] to say what type of alleged consumer confusion is at issue (forward or reverse confusion), when such confusion supposedly would be likely to take place . . . or any facts supporting whatever confusion theories Pepperdine supposedly intends to pursue," citing Pepperdine's responses to Defendants' Interrogatories. (*E.g.*, Mot. at 7, 12.) Notably absent from Defendants' accusation, however, is a citation to any specific interrogatory asking for such information. *Id.* That is because it was not asked. Instead, Defendants asked Pepperdine to identify, for various possible confusion theories, "all witnesses [it] intend[s] to rely upon" and the Bates number of all documents it "intend[s] to rely upon" to prove that theory. (*E.g.*, Exs. 7, 12, at Interrogatory Nos. 10-13.) And despite alleging both forward and reverse confusion in its First Amended Complaint (*see* FAC ¶¶ 57-60, 64, 70, 88, 94, 123, 137, 166, 173), Pepperdine voluntarily clarified that it is pursuing both forward and reverse confusion theories, even though Pepperdine is not required to commit to its ultimate trial theories at this stage. That transparency is the opposite of the obstruction Defendants invent. Defendants' accusation that Pepperdine is the "recalcitrant" party is plainly incorrect.

*Fourth*, Defendants contend that Pepperdine has refused to identify custodians. This, too, is plainly wrong. Pepperdine identified its custodians in its Rule 26(a)(1) initial disclosures and again in interrogatory responses and conferences of counsel. Defendants' mischaracterizations of the record do not create good cause; they just underscore that Defendants' motion is built on rhetoric rather than fact.

**D.** **Defendants Proposed the Very Schedule They Now Claim Is Unworkable**

Even if Defendants could show diligence, their motion would fail for an independent reason: Defendants themselves drafted the schedule they now claim is "unworkable"—including the expert rebuttal deadlines.

In the Rule 26(f) report, Defendants proposed the specific fact discovery cutoff, expert disclosure deadlines, rebuttal deadlines, expert discovery cutoff, and summary judgment briefing schedule, which the Court adopted verbatim. Now, Defendants claim that the time period they allotted themselves is not enough. That argument lacks credibility.

As Defendants are aware, parties must "participate from the outset in creating a workable Rule 16 scheduling order" and must "diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson*, 186 F.R.D. at 607. Defendants have not done that here.

### E. Pepperdine Nevertheless Is Willing to Agree to a Reasonable Amended Schedule

Pepperdine—which *has* acted diligently and has been prejudiced by Defendants' many delays—is willing to agree to an amended schedule, provided it also includes concrete discovery deadlines. Pepperdine's proposed schedule reflects a narrow, good-faith effort to accommodate reasonable timing concerns without derailing the case. As discussed, discovery is already underway: the parties have begun producing documents, served requests for production and interrogatories, and agreed to a protective order governing discovery. With approximately three months of fact discovery remaining under Pepperdine's proposal, that time is sufficient to complete additional document production, written discovery responses, and depositions. Unlike Defendants' proposal, which seeks an across-the-board six-month extension, Pepperdine's proposal maintains and otherwise tracks the existing schedule and the Court's deadlines, with only limited, targeted adjustments. Defendants have not shown that an additional six months is necessary, and granting such an extension would merely prolong the case without advancing its resolution.

Accordingly, Pepperdine proposes the following schedule to allow the parties to complete discovery.

| Deadline | Current | Defs' Proposal | Plf's Proposal |
|---|---|---|---|
| Fact Discovery Cut-Off | 2/27/26 | 7/17/26 | 3/27/26 |
| Expert Disclosure (Initial) | 3/6/26 | 7/2/26 | 4/6/26 |
| Expert Disclosure (Rebuttal) | 3/20/26 | 8/14/26 | 4/27/26 |
| Expert Discovery Cut-Off | 4/3/26 | 9/8/26 | 5/8/26 |
| Meet and Confer re MSJ | 4/3/26 | 9/22/26 | 5/4/26 |
| Deadline to File Joint MSJ | 4/6/26 | 9/29/26 | 5/11/26 |
| Deadline to Oppose MSJ | 4/20/26 | 10/13/26 | 5/26/26 |
| Last Day to Hear MSJs <br> *(9 weeks before FPTC)* | 5/22/26 | 11/20/26 | 6/26/26 |
| Last Day for Settlement Conference <br> *(5 weeks before FPTC)* | 6/19/26 | 11/27/26 | 7/24/26 |
| First Round Trial Filings <br> *(MILs, Witness Lists, Jt. Exhibit List, Jt. Status Report re Settlement, Memoranda of Contentions of Fact and Law)* <br> *(4 weeks before FPTC)* | 6/26/26 | 12/4/26 | 7/31/26 |
| Second Round Trial Filings <br> *(Opps to MILs, Jt. Proposed FPTC Order, Jt. Proposed Jury Instructions, Jt. Proposed Verdict Forms, Jt. Proposed Statement of Case, Proposed Voir Dire)* <br> *(2 weeks before FPTC)* | 7/10/26 | 12/18/26 | 8/14/26 |
| Final PTC <br> *(At least 17 days before Trial – on a Friday)* | 7/24/26 | On or after 1/22/27 | 8/28/26 |
| Trial | 8/11/26 | On or after 2/9/27 | 9/15/26 |

## V.    CONCLUSION

Defendants have not acted diligently.  They have engaged in sustained gamesmanship, refused to comply with basic discovery obligations, misrepresented the factual record, and now seek to rewrite a schedule they drafted themselves—all to delay this case long enough to complete Season 2 of *Running Point* without consequence. Pepperdine, on the other hand, has been diligent, transparent, and reasonable.  To the extent this Court orders any modification of schedule, it should adopt Pepperdine's proposal.

-17-

Dated:        December 19, 2025

/s/Aviv S. Halpern
Andrei Iancu (SBN 184973)
iancua@sullcrom.com
Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Amy E. Proctor (SBN 283845)
proctora@sullcrom.com
Emily Olsen (SBN 353281)
olsenem@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Aviv S. Halpern (SBN 327100)
halperna@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:   (650) 461-5600
Facsimile:   (650) 461-5700

Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Ste. 1700
Los Angeles, CA 90025
Telephone: (310) 979-9190


*Attorneys for Plaintiff Pepperdine University*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Pepperdine University, certifies that this brief contains 17 pages, which complies with the page limit of the Court's Standing Order.

Dated:  December 19, 2025

/s/Aviv S. Halpern
Aviv S. Halpern

PLAINTIFF'S OPP. TO DEFENDANTS' MOT. TO AMEND CASE MANAGEMENT SCHEDULE