UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEPPERDINE UNIVERSITY,<br><br>                Plaintiff,<br><br>        v.<br><br>NETFLIX, INC., *et al.*,<br><br>                Defendants. | Case No. 2:25-cv-01429-CV (ADSx)<br><br>**ORDER GRANTING MOTION TO DISMISS [40]** |

On April 18, 2025, Defendants Netflix, Inc., Warner Bros. Entertainment Inc., and Kaling International, Inc. filed a Motion to Dismiss First Amended Complaint ("Motion"). Doc. # 40 ("Mot."). Having reviewed and considered all the briefing filed with respect to the Motion, the Court finds that oral argument is not necessary to resolve the Motion, *see* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

I.      **INTRODUCTION**

This action arises out of Defendants' television show, Running Point, which Plaintiff claims infringes upon Plaintiff's trademarks.

Plaintiff Pepperdine University filed this action on February 20, 2025. Doc. # 1. The action was brought in Federal Court on the basis of federal question jurisdiction. On March

1

28, 2025, Plaintiff filed the operative First Amended Complaint ("FAC") asserting claims for (1) Trademark Infringement (15 U.S.C. § 1114); (2) Contributory Trademark Infringement (15 U.S.C. § 1114); (3) False Designation Of Origin (15 U.S.C. § 1125); (4) False Advertising (15 U.S.C. § 1125); (5) Violation of Cal. Bus. & Prof. Code § 14247; (6) Violation of Cal. Bus. & Prof. Code § 17200; (7) Violation of Cal. Bus. & Prof. Code § 17500; and (8) Common Law Unfair Competition. FAC. Plaintiff seeks injunctive relief, actual damages, treble damages, an order directing Defendants to account to and pay to Pepperdine all profits derived from its allegedly infringing use of its trademarks, an order directing Defendants to engage in corrective advertising, attorney fees and costs, and prejudgment interest. *See id.* at Prayer.

Along with its original Complaint, on February 20, 2025, Pepperdine filed a Motion for a Temporary Restraining Order, seeking an order barring Defendants from releasing the Running Point series. Doc. # 2. On February 26, 2025, this Court denied Pepperdine's Motion for a Temporary Restraining Order, finding that Pepperdine had not shown a likelihood of success on the merits. Doc. # 26.

## II.    FACTUAL BACKGROUND[1]

### A.    Parties

Plaintiff Pepperdine University ("Pepperdine") is a not-for-profit Christian university located in Malibu, California. FAC ¶ 17. Pepperdine's athletic teams have been called the "Waves" since the University's founding in 1937. *Id.* ¶ 24. Pepperdine also adopted its distinctive school colors in 1937, primarily "Pepperdine Blue" and "Pepperdine Orange," with white as a secondary color. *Id.* ¶ 25. Pepperdine gives the number 37 special prominence in its athletic materials, to commemorate the year of its founding. *Id.* ¶ 26.

---

[1] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016). Accordingly, the court accepts as true the allegations from the FAC.

Defendant Netflix, Inc. ("Netflix") is a Delaware corporation, and is "one of the world's leading entertainment services providing streaming services for television series, films, and games across a wide variety of genres and languages." *Id.* ¶ 18. Netflix began hosting and streaming Running Point on its platform on February 27, 2025. It released the trailer for Running Point on or about January 30, 2025. *Id.*

Warner Bros. Entertainment Inc. ("Warner Bros.") is a Delaware corporation with its principal place of business in Burbank, California. *Id.* ¶ 19. Warner Bros. is a "fully integrated entertainment company and has operations including creation, production, distribution, licensing and marketing of all forms of entertainment." *Id.* Warner Bros. is one of the production companies involved with Running Point, and has promoted Running Point on its social media platforms and website. *Id.*

Defendant Kaling International, Inc. ("Kaling International") is a production company, and was one of the producers of Running Point. *Id.* ¶ 20.

**B. Relevant Trademarks**

Pepperdine has three relevant trademarks registered with the United States Patent and Trademark Office: U.S. Reg. No. 2,668,597, which was issued on December 31, 2002; U.S. Reg. No. 2,967,811, which was issued on July 12, 2005; and U.S. Reg. No. 2,903,783, which was issued on November 16, 2004. *Id.* ¶ 22. Each of these three trademarks relates to the Pepperdine "WAVES" marks. *See* FAC, Exs. A, B, C.

Pepperdine also owns common law trademark rights in at least (1) the use of the "Waves" name, as well as (2) the use of its distinctive school colors, especially in conjunction with athletic programs and athletic merchandise, and/or in conjunction with other symbols that are associated with and identify the university—including the "Waves" team name and the number "37." *Id.* ¶ 23.

Pepperdine has used the Waves mark in commerce throughout the United States continuously since 1937 in connection with, among other things, its recruitment, marketing, and athletics programs, including its basketball program. *Id.* ¶ 34.

## C.  Running Point TV Show

Defendants have promoted Running Point as a series about a woman who is unexpectedly appointed president of a basketball franchise named the Los Angeles Waves. *Id.* ¶ 42. The series is purportedly based on the Los Angeles Lakers and its owner. ¶ 43. The story revolves around the Waves, its management, and its players. ¶ 42. The story also includes themes of "alcohol and substance use, sexual innuendo and imagery, foul language, as well as other offensive themes." *Id.*

The team depicted in the show, the "Los Angeles Waves", uses a mark similar to Pepperdine's Waves trademark, similar colors to Pepperdine's colors, and other of Pepperdine's identifying characteristics[2]. *Id.* ¶¶ 42–43. Specifically, the mark used by Defendants uses a similar font, the color orange for the lettering, white outlining, a blue border, and the use of the word "Waves" in a similar context—on athletic-style clothing. *Id.* ¶ 44.

The use of the Waves marks is pervasive in the series, and appears throughout the series—on jerseys, shirts, stadiums, etc.. *Id.* ¶¶ 47, 73. Defendants also use a logo that is similar to Pepperdine's Waves mark, with a blue and white wave next to the orange "WAVES" text. *Id.* ¶ 49. The show also includes a framed jersey in a conference room with the number 37 on it. *Id.* ¶ 53.

## D.  Promotion of Running Point

Actors have posted pictures of themselves in "Waves" jerseys, with the caption "SIGNED to the Los Angeles Waves! . . . Check out my dunks on Running Point now on Netflix." *Id.* ¶ 77. Another actor posted an image which prominently states "Los Angeles WAVES." *Id.* ¶ 78. These posts, and other advertisements promoted by Defendants,

---

[2] Although Plaintiff alleges that the mark and colors used by Defendants are "identical" or "nearly identical" to Plaintiff's, the attached photographs make clear that the mark and colors are *similar* rather than *identical*. *See* FAC ¶¶ 44–49. *See Produce Pay, Inc. v. Izguerra Produce, Inc.,* 39 F.4th 1158, 1161 (9th Cir. 2022) (noting that the court need not accept as true allegations that are contradicted by exhibits to the complaint).

4

demonstrate that the team name is "essentially synonymous with the show's identity and its source." *Id.* ¶ 80.

Kaling International's official Instagram profile previously showed its founder, Mindy Kaling, wearing a "WAVES" shirt, and included a biography reading "Home of the Los Angeles WAVES." *Id.* ¶ 82.

Third parties are now selling variations of Waves-branded merchandise under the description "Running Point." *Id.* ¶¶ 87, 89, 90.

## III.    **LEGAL STANDARD**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." "The purpose of [Rule 12(b)(6)] is to enable defendants to challenge the legal sufficiency" of claims asserted in a complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted). When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

5

## IV.    DISCUSSION

Defendants move to dismiss the Complaint, primarily based on an argument that Plaintiff's claims are barred by *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir. 1989).

### A.    Overview of the *Rogers* Test

The Lanham Act, 15 U.S.C. § 1051, *et seq.*, "creates a comprehensive framework for regulating the use of trademarks and protecting them against infringement, dilution, and unfair competition." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024).

Under *Rogers*, courts have held that "First Amendment concerns sometimes require a heightened showing for a trademark infringement claim to proceed." *Id.* at 1027. *Rogers* applies in cases where the allegedly infringing use of a trademark is part of an expressive work protected by the First Amendment. *Id.* at 1028. "If the defendant meets this burden, the Lanham Act does not apply unless the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source of the content of the work." *Id.* (quotations omitted).

However, as the Supreme Court made clear in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 152 (2023), the *Rogers* test does not apply where "an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." 599 U.S. at 153.

In *Jack Daniel's*, the Supreme Court found that the *Rogers* test did not apply to a trademark dispute between the maker of Jack Daniel's whiskey and the maker of a dog toy named "Bad Spaniels" which resembled a bottle of Jack Daniel's whiskey and allegedly infringed upon Jack Daniel's trademarks. *Jack Daniel's*, 599 U.S. at 140. The Supreme Court found that although the "Bad Spaniels" product included "expressive content," and used the marks at issue to "parody" or "make fun" of Jack Daniel's, it still used the marks as a designation of the source of the good. *Id.* at 153–58.

Additional case law highlights the distinction made by the *Jack Daniel's* Court.

i.      Cases Applying *Rogers*

As explained in *Jack Daniel's*, the Ninth Circuit properly applied the *Rogers* test when Mattel sued a band over the song "Barbie Girl," finding that the band did not use the Barbie name as a "source identifier," as it did not speak to the song's origin. *Id.* at 154 (citing *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900–02 (2002).

The *Jack Daniel's* Court also highlighted *University of Alabama Board of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (2012) and *Louis Vuitton Malletier S. A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) as cases which properly applied *Rogers*. *Id.* In *University of Alabama*, the court dismissed a case pursuant to *Rogers* when a sports artist painted a football scene which depicted the Crimson Tide's trademarked football uniforms to "memorialize" a notable event in "football history." In *Louis Vuitton*, the court dismissed a case pursuant to *Rogers* where a character in the film The Hangover: Part II carried a Louis Vuitton bag and verbally described his luggage as a "Lewis Vuitton."

The *Jack Daniel's* Court found that all three cases used a trademark "not to designate a work's source, but solely to perform some other expressive function." 599 U.S. at 154.

Recently, in this district, the court applied the *Rogers* test in a lawsuit involving the use of the plaintiff's marks on the defendant's book. *Haas Automation, Inc. v. Steiner*, No. 24-CV-03682-AB-JC, 2024 WL 4440914, at *6 (C.D. Cal. Sept. 25, 2024). The court found that although the book included the mark on its front cover, back cover, and on several pages, the mark was "not used to tell the consumer who published the book or the source of the book." *Id.* at *1, *6. Rather, the mark told the consumer what the book was about and who the author worked for. *Id.* at *6.

A New York court similarly applied *Rogers* in a case involving a television series' alleged trademark infringement. *JTH Tax LLC d/b/a Liberty Tax v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 330–40 (S.D.N.Y. 2023). In *JTH Tax*, the plaintiff was a tax preparation service doing business under the name Liberty Tax Service. *Id.* at 323. The defendants produced and distributed the television show, *Better Call Saul*, which depicted

7

a fictional tax preparation business called "Sweet Liberty Tax Services." *Id.* The Court found that the mark was not used "to identify the source" of the television show or any of the defendants' products, and therefore found that the defendants had not used the marks "as their own identifying trademark." *Id.* at 332–33.

ii. Cases Not Applying *Rogers*

On the other hand, the court in *Punchbowl* found that *Rogers* did not apply when two companies—Punchbowl, Inc., a technology company that developed "online communication solutions," and Punchbowl News, "a subscription-based online news publication"—both used the word "Punchbowl" in their business names. 90 F.4th 1022. The Ninth Circuit reasoned that although the companies operated in different industries, the second company, which had news products titled Punchbowl News and Punchbowl Press, used the trademarked term, "Punchbowl," to "identify and distinguish" their news products, and therefore used the mark as a mark. *Id.* at 1031–32. Because the mark was used to "identify their brand," *Rogers* does not apply. *Id.*

Similarly, in *Mar Vista Entertainment, LLC v. THQ Nordic AB*, No. 2:23-cv-06924-MEMF (SSC), 2024 WL 3468933 (C.D. Cal. July 8, 2024), the court found that *Rogers* was inapplicable in a dispute between the owner of the rights to the *Alone in the Dark* videogame franchise, and entities who released a horror film titled *Alone in the Dark*. The court found that the owners of the horror film selected the name *Alone in the Dark* to mislead consumers about the source of the film. *Id.* at *4.

**B.    *Rogers* Applies Here**

As described above, *Rogers* applies in cases where the allegedly infringing use of a trademark is part of an expressive work protected by the first amendment, and where the use is not source-identifying. The parties do not seem to dispute that Running Point is an expressive work, and the Court finds that it is. *See Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017) (finding that a television show itself "is clearly an expressive work"). Therefore, whether *Rogers* applies comes down to whether the use of the Waves mark is source-identifying.

Defendants argue that the use of the Waves mark was not source-identifying, because it is solely used as a plot device within the television series to tell the story of a fictional basketball team, and no reasonable consumer would conclude upon seeing the Waves name or logo that Pepperdine sponsored the series or is otherwise the source of the series. Rather, Defendants argue that they are clearly the source of the series.

Plaintiff argues that its allegations in the FAC show that Defendants have used the Waves mark to identify the source of the series. Specifically, Plaintiff points to its allegations that Defendants make extensive use of the Waves mark in the show, Defendants use of the Waves mark to market the show, consumers connection of the Waves mark with the show, and Defendants' previous pattern of obtaining trademarks for fictional entities within their television series.

As Plaintiff correctly notes, the question at issue is whether Defendants have used the Waves mark as a designation of source for their own product—Running Point. The Court finds that Defendants have not used the Waves mark as a designation of the source of Running Point.

Although the use of the Waves mark is pervasive throughout the show, it "does not explicitly mislead as to the source of the work," and does not "explicitly or otherwise, suggest that it was produced by [Pepperdine]." *Mattel, Inc.*, 296 F.3d at 902. Instructively, the Ninth Circuit found that a song titled "Barbie girl," which included an impersonation of Barbie and repeated use of the Barbie name, did not use the Barbie mark as a source identifier because it did not mislead as to the source of the work. *See generally*, *id.* The *Jack Daniel's* Court cited *Mattel* approvingly, noting that the court appropriately applied *Rogers* in a case where the trademark was "not to designate a work's source, but solely to perform some other expressive function." 599 U.S. at 153. *Jack Daniel's* distinguished *Mattel* and similar cases from those in which the trademark was used for source identification, such that the "defendant may be 'trading on the good will of the trademark owner to market its own goods.'" *Id.* at 156 (citing *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 414 (S.D.N.Y. 2002)).

The allegations that the use of the Waves mark was so pervasive as to be "essentially synonymous with the show's identity," is still not sufficient under the *Mattel* and *Jack Daniel's* precedent. *See* FAC ¶ 80. Nor are conclusory allegations that the use is source identifying. *See Iqbal*, 556 U.S. at 679.

Further, the post-*Jack Daniel's* cases cited by Plaintiff are distinguishable. First, in *Davis. v. Blue Tongue Films*, No. 23-3968, 2024 WL 5182630 (9th Cir., Dec. 20, 2024), the Ninth Circuit found that *Rogers* did not apply where the defendant created a movie titled Gringo, which the plaintiffs alleged infringed on their book of the same title. 2024 WL 5182630, at *1. The court found that the complaint plausibly alleged that the title suggested an association between the book and the movie, and was used to exploit the goodwill, public recognition and commercial success of the book. *Id.* at *2.

Here, Plaintiff fails to allege that the Waves mark was used by Defendants to exploit the success of Plaintiff's sports teams or to create an association between the Running Point series and Pepperdine's teams. Rather, at most, the FAC shows that the Waves mark is "immediately recognized" to identify the Running Point series, and that its use is synonymous with the series. *See, e.g.*, FAC ¶¶ 74–77. These allegations, which Plaintiff concludes show that the Waves mark is used to "identify the show" are still not sufficient to show that the Waves mark was used as a *designation of source* for the series. Plaintiff's repeated use of the words "identify" and "source-identification" do not actually show how the Waves mark was used to identify the *source* of the series. Rather, here, Defendants clearly claim to be the source of the series. *See* FAC ¶ 77 (alleging an actor posted themselves in a "Waves" jersey saying "Check out my dunks on Running Point now on Netflix"), ¶ 83 (alleging the series can only be viewed on Netflix), ¶ 84 (alleging when a viewer accesses an episode of Running Point they are first greeted by the Netflix logo, and then the Warner Bros. logo, followed by the words "A Netflix Series" and "A Warner Bros. Television Production").

Second, in *Belin v. Starz Ent., LLC*, No.: 2:21-cv-09586-FWS-PLA, 2024 WL 4720795 (C.D. Cal. Sept. 20, 2024), the court found that *Rogers* did not apply where the

defendants sought to produce a television show titled "BMF," which plaintiff used as a trademark in connection with a YouTube series and other business ventures. 2024 WL 4720795, at *1, *4–5. However, the court in *Belin* focused on the fact that the mark was being used as the title of the show, and therefore could plausibly be used to identify the source of the series.

Finally, the Court is not persuaded by Plaintiff's arguments regarding the marketing of the show or Defendants' behavior in similar uses. Although Plaintiff alleges that Defendants' used the Waves mark in marketing the Running Point series, this does not alter the Court's above analysis that the Waves mark is not used to identify the *source of the series*. And the fact that Defendants have obtained trademarks in fictional businesses central to their shows in the past again does not show that Defendants have used the Waves mark to identify the source of Running Point here.

**C.    Pursuant to Rogers, the Lanham Act does not apply.**

Because the Court finds that *Rogers* applies, the next question is whether the Lanham Act applies. The Lanham Act does not apply unless Defendants' use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source of the content of the work. *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th at 1028.

Plaintiff does not seem to dispute that Defendants' use of the Waves mark is artistically relevant, and the Court finds that it is.

Further, for the same reasons discussed above, the Court finds that Defendants' use of the Waves mark does not explicitly mislead consumers as to the source of the content of the work. Plaintiff focuses on the fact that Defendants' use the Waves mark for the same purpose as Plaintiff—sports-related entertainment. Opp. at 20. However, the FAC makes clear that this is not true. Rather, Plaintiff uses the Waves mark to identify its collegiate sports teams, and Defendants use it within a television series in relation to a *fictional* sports team. Defendants are not alleged to be in the business of college sports and are not alleged

11

to be selling merchandise with the Waves mark. [3] Rather, Defendants' sole actual product at issue is a television show.

Plaintiff goes on to argue that Defendants have proclaimed themselves as the "home of the Los Angeles WAVES," and likens the statement to "'Nimmer on Copyright,' 'Jane Fonda's Workout Book,' or 'an authorized biography'" as a statement that misstates who authored or endorsed the series. Opp. at 20 (citing *Dr. Seuss Enter., L.P.* v. *ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020)). However, again, Plaintiff confuses the question at issue, which is whether Defendants are misleading consumers as to the source of the Running Point series. Here, Defendants are explicitly claiming to be the source of the series, by claiming to be the "home" of the fictional team depicted in the series. The examples Plaintiff pulls from the *Dr. Seuss* case are statements that explicitly tell a consumer that someone other than the actual creator of a work is the creator, such as if here Defendants proclaimed that the Running Point series was "brought to you by Pepperdine," or even that the series was "brought to you by the WAVES." However, Plaintiff makes no such allegation. Rather, Defendants solely make general references to the "**Los Angeles** Waves"—a **fictional professional** sports team—which can clearly be distinguished by consumers from the **Pepperdine** Waves—**a real collegiate** sports team.

Finally, the Court will not entertain Plaintiff's argument that the *Rogers* test should be abandoned. *Jack Daniel's* and *Punchbowl* both instruct this Court that *Rogers* has not in fact been abandoned, and this Court is bound by those decisions.

In conclusion, the Court finds that *Rogers* bars all of Plaintiff's claims. *See E.S.S. Ent. 2000, Inc.* v. *Rock Star Videos, Inc.*, 547 F.3d 1095, 1098 (9th Cir. 2008) (finding that *Rogers* applies to claims under the Lanham Act, as well as state law claims for trademark infringement and unfair competition, and a common law unfair competition claim).

---

[3] Plaintiff alleges that third-parties are selling merchandise with the Waves mark (*see* FAC ¶¶ 87–90), but does not assert any theory as to how Defendants can be liable for the acts of these third parties.

## C.    Leave to Amend

In light of the Ninth Circuit's guidance that leave to amend should be given with extreme liberality, the Court grants the motion with leave to amend. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

## V.    CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

1.    Defendants' Motion to Dismiss is GRANTED.

2.    The First Amended Complaint is DISMISSED with leave to amend.

3.    Plaintiff shall file a second amended complaint, attempting to cure the deficiencies set forth above, or a Notice of Intent to Stand on First Amended Complaint ("Notice of Intent"), no later than April 14, 2026. *See WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1135–36 (9th Cir. 1997) ("Unless a plaintiff files in writing a notice of intent not to file an amended complaint, such dismissal order is not an appealable final decision. In a typical case, filing of such notice gives the district court an opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the action, one that is clearly appealable.").

4.    Defendants shall file their answer to the second amended complaint or a motion pursuant to Fed. R. Civ. P. 12 no later than May 5, 2026. In the event Defendants wish to file another motion to dismiss, the parties shall meet and confer in person, via video, or telephonically to discuss defendants' motion to dismiss.

**IT IS SO ORDERED**.

Dated: 3/31/26

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE

13